**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (216752)
tfriedman@toddflaw.com
Adrian R. Bacon, Esq. (280332)
abacon@toddflaw.com
21550 Oxnard Street, Suite 780
Woodland Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228

**[ADDITIONAL PLAINTIFFS' COUNSEL ON SIGNATORY LINE]**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**JOHN MCCURLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

Plaintiff,

v.

**ROYAL SEAS CRUISES, INC.,**

Defendant.

**DAN DEFOREST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

Plaintiff,

v.

**ROYAL SEAS CRUISES, INC.,**

Defendant.

**Case No.:** 17-cv-986 BAS (AGS)
*consolidated with*
17-cv-1988 AJB (AGS)

**PLAINTIFFS JOHN MCCURLEY; AND, DAN DEFOREST'S OPPOSITION TO DEFENDANT ROYAL SEAS CRUISES, INC.'S MOTION TO EXCLUDE TESTIMONY AND REPORTS OF WESLEY WEEKS**

**HON. CYNTHIA A BASHANT**

**NO ORAL ARGUMENT UNLESS REQUESTED BY COURT**

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. ARGUMENT ........ 3

A. Royal Seas Cruises Motion Should Be Denied Because Weeks Is Qualified To Serve As An Expert In This Matter ........ 3

1. Weeks' lack of college degree does not preclude Weeks from being an expert ........ 3

2. Weeks earned Weeks' specialized knowledge through decades of experience in this field ........ 5

B. ROYAL SEAS CRUISES' MOTION SHOULD BE DENIED BECAUSE WEEKS' OPINIONS ARE RELIABLE AND ADMISSIBLE ........ 6

1. Weeks' "mistaken" assumptions were based upon information provided during the course of discovery ........ 7

2. Royal Seas Cruises' disagreement with Weeks' methodology does not warrant striking Weeks' Expert Report ........ 7

3. Royal Seas Cruises misleadingly represents to this Court that Weeks solely relied upon Alexa rankings in conducing Weeks' analysis ........ 9

C. ROYAL SEAS CRUISES' MOTION SHOULD BE DENIED BECAUSE WEEKS' OPINIONS ARE RELEVANT ........ 11

D. ROYAL SEAS CRUISES' MOTION SHOULD BE DENIED BECAUSE THE REQUESTED EXCLUSION OF WEEKS' TESTIMONY IS NOT THE PROPER REMEDY AT THIS TIME_ ........ 12

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.*,
121 F.R.D. 402 (N.D. Cal. 1988) .................................................... 8

*Chromatic Commc'ns Enters., Inc. v. Bus. Guides, Inc.*,
1993 U.S. Dist. LEXIS 11388, (N.D. Cal. 1993) .................................... 8

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .................................................... 2, 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................... 2

*Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996) .................................................... 2

*Medlock v. Taco Bell Corp.*,
2015 U.S. Dist. LEXIS 167128, (E.D. Cal. 2015) .................................... 4, 12

*Primiano v. Cook*,
598 F.3d 558, (9th Cir. 2010) .................................................... 12

*Thomas v. Newton Int'l Enterprises*,
42 F.3d 1266 (9th Cir. 1994) .................................................... 4

*United States v. Hankey*,
203 F.3d 1160, 1167-68 (9th Cir. 2000) .................................................... 2

*United States v. Sandoval-Mendoza*,
472 F.3d 645 (9th Cir. 2006) .................................................... 2, 12

**STATUTES, MISC.** **PAGE(S)**

Federal Rule of Evidence 702 .................................................... *passim*

## I. INTRODUCTION

On October 22, 2018, Defendant ROYAL SEAS CRUISES, INC. ("Royal Seas Cruises") filed a Motion to Exclude the Testimony of Wesley Weeks ("Weeks"). [ECF No. 56]. Following review of Royal Seas Cruises' Motion in conjunction with applicable legal authority, it is apparent that Royal Seas Cruises' Motion should be denied. In fact, Royal Seas Cruises merely serves to make clear that Royal Seas Cruises' counsel disagrees with Weeks' conclusions; however, Royal Seas Cruises has failed to provide any witness or evidence that directly contradicts Weeks' conclusions. This lack of evidence and/or witness(es) to directly contradict Weeks is telling and should not be ignored. Even more troubling, Royal Seas Cruises attempts to cover this glaring omission by attacking Weeks personally for Weeks' lack of formal education when none is required and also attacks Weeks for relying upon the information produced by Prospects DM in response to Plaintiffs JOHN MCCURLEY; and, DAN DEFOREST's ("Plaintiffs") subpoena. After sifting through the rhetoric, it is apparent that Weeks' uncontradicted conclusions are reliable, will assist the ultimate trier of fact in understanding complicated data outside the general realm of every day knowledge, and should not be struck as a result. Thus, Royal Seas Cruises' Motion should be denied.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data**;**

(c) the testimony is the product or reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. E. 702. The District Court serves as the gatekeeper to ensure that expert testimony is relevant and reliable, and has broad discretion when exercising this function. *United States v. Hankey*, 203 F.3d 1160, 1167-68 (9th Cir. 2000). When considering the admissibility of expert testimony based upon specialized knowledge, Rule 702 is "construed liberally." *Id*. at 1168. Expert testimony is relevant when it has a "valid connection to the pertinent inquiry," and reliable when "it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) citing to *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). The District Court also considers whether probative value of the proffered testimony "is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time." *Hankey*, 203 F.3d at 1168. The proponent of the expert has the burden of proving admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

An expert may be qualified because of specialized knowledge, skill, experience, training or education. In addition, the basis for expert testimony may focus on personal knowledge or experience. *Kumho Tire Company*, 526 U.S. at 150. The Rule 702 inquiry is flexible because there are many different kinds of experts, and many different kinds of expertise. *Id*. citing to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *See* Fed. R. E. 702 Committee Notes.

Based upon the actual standards that govern here, Royal Seas Cruises' Motion should be denied in its entirety.

## III. ARGUMENT

Royal Seas Cruises selectively cites to out of context, and incomplete, excerpts from Weeks' deposition in an effort to have this Court preclude a qualified expert from providing damning testimony against Royal Seas Cruises. Weeks' Opinion is based upon specialized knowledge that Weeks obtained after decades of analyzing web traffic data and will undoubtedly assist the trier of fact in understanding the evidence presented herein. Contrary to the arguments of Royal Seas Cruises' counsel, (A) Weeks is qualified to serve as an expert in this matter; (B) Weeks' opinions are reliable and admissible; (C) Weeks' opinions are relevant; and, (D) exclusion of Weeks' opinion is not the appropriate remedy at this time. Thus, Royal Seas Cruises' Motion should be denied in its entirety for the reasons discussed herein.

### A. ROYAL SEAS CRUISES MOTION SHOULD BE DENIED BECAUSE WEEKS IS QUALIFIED TO SERVE AS AN EXPERT IN THIS MATTER.

Royal Seas Cruises unilaterally concludes that Weeks is not qualified as an expert because (1) Weeks does not have a college degree; and, (2) Weeks' admitted specialized knowledge somehow did not assist Weeks in providing an opinion herein. Each of these conclusions are inaccurate and should be disregarded by this Court.

#### 1. Weeks' lack of college degree does not preclude Weeks from being an expert.

Royal Seas Cruises launches unsavory personal attacks against Weeks due to Weeks' lack of college degree. [*See e.g.,* Motion, 1:14-2:2; and, 9:8-10]. Such attacks ignore that Weeks' qualifications to serve as an expert herein are based solely on the specialized knowledge that Weeks obtained through Weeks' decades

of exposure working within this field.

As noted above, "[a]n expert may testify regarding scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Medlock v. Taco Bell Corp.*, No. 07-cv-1314-SAB, 2015 U.S. Dist. LEXIS 167128, at *5 (E.D. Cal. 2015) citing to *Daubert*, 509 U.S. at 589. "The Ninth Circuit has recognized that 'the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Id*. at *7-8 citing to *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994). Thus, "…whether one has a college degree or not is not always dispositive of expert qualification" [since] "[s]ome experts would require such secondary education while others do not." *Medlock*, 2015 U.S. Dist. LEXIS 167128, at *8 n.1.

Here, Weeks never asserts that Weeks' obtained Weeks' admitted specialized knowledge through formal education. Weeks also explained that such formal education was not possible since "the Internet was in its infancy" when Weeks was attending college. [Weeks Transcript, 79:20-25]. As a result, such classes that Royal Seas Cruises penalizes Weeks for not taking were not generally available at the time. [*Id*, 79:25-80:2]. Weeks then actively sought to obtain Weeks' expertise through "self-study" and eventually actual experience in the field instead of the classroom. [*Id*., 80:2-17].

As such, Plaintiffs request this Court disregard Royal Seas Cruises' unfair attacks against Weeks due to Weeks' lack of formal education. These attempts to prejudice this Court against Weeks wholly ignore that Weeks' education is not the relevant area of inquiry in determining whether Weeks is qualified to serve as an expert. This question should be focused on Weeks' admitted experience in the field through which Weeks obtained Weeks' specialized knowledge. This specialized knowledge is what permitted Weeks to opine as Weeks did in Weeks' Reports.

Thus, Royal Seas Cruises' Motion should be denied.

**2. <u>Weeks earned Weeks' specialized knowledge through decades of experience in this field.</u>**

Royal Seas Cruises admits that Weeks has specialized knowledge about CRMs[1] as well as analyzing internal data about website traffic. [Motion, 10:10-12]. Weeks explained that "in [Weeks'] day-to-day work, [Weeks] work[s] extensively with websites, Internet and those types of things regularly. Usually [Weeks is] analyzing that for clients and analyzing their traffic patterns: Where sites are coming from; where their leads are coming from; [how] people are landing on a page; how long they're staying on the page; this type of information is pretty typical, and analyzing that for clients for their websites is something that [Weeks has] done multiple times." [Weeks Transcript 31:24-32:8]. In other words, Weeks has been repeatedly retained by businesses to analyze "their online presence, what they were doing, the types of data and traffic that they had in there…" [*Id*. at 34:22-23].

Despite this experience, Royal Seas Cruises contends that Weeks' admitted specialized knowledge somehow does not apply here. [Motion, 10:12-13]. Royal Seas Cruises fails to explain why Weeks' "day-to-day" experience for nearly three decades is insufficient. Royal Seas Cruises concludes with no support that Weeks' review of a company's web traffic data will vary based upon whether Weeks is employed by that company or not. To the contrary, Weeks applied Weeks'

---

[1] As explained by Weeks, "CRM stands for Contact Relational Management system which is a system that "keep[s] track of individuals that you're working with at a company, businesses, activities, phone calls, logs, records, and other types of things that may go in there." [*See* Transcript re: Wesley C. Weeks attached as Exhibit 2 to the Declaration of Matthew M. Loker ("Loker Decl."), 22:12-18]. Weeks continued to explain that his job is to "give [businesses] visibility into the data, generate reports, set it up, data analysis and other types of things that might go along with the data that's captured in there." [*Id*. at 23:1-4].

specialized knowledge to analyze the data provided by Prospects DM in response to a subpoena issued by Plaintiffs' counsel. By applying Weeks' decades of experience in this field, Weeks rendered an opinion. While Royal Seas Cruises is free to disagree with Weeks' Opinion, and would be expected to do so, Royal Seas Cruises cannot seek to exclude said conclusions based merely upon this disagreement.[2] Review of Weeks' full Report as well as Weeks' Deposition testimony establishes that Weeks actually applied Weeks' specialized knowledge to reach the conclusions at issue herein. Thus, Royal Seas Cruises' Motion should be denied.

**B. ROYAL SEAS CRUISES' MOTION SHOULD BE DENIED BECAUSE WEEKS' OPINIONS ARE RELIABLE AND ADMISSIBLE.**

Royal Seas Cruises argues that Weeks' Opinions are unreliable and inadmissible without acknowledging that Weeks' Opinions were based upon Royal Seas Cruises' discovery responses and Prospects DM's response to Plaintiffs' subpoena. If Weeks reached inaccurate conclusions, these inaccuracies would be attributed to misrepresentations associated with the data. Neither Royal Seas Cruises nor Prospects DM should be permitted rewrite the responses previously made in an effort to discredit Plaintiffs' witnesses. To the contrary, Royal Seas

---

[2] Royal Seas Cruises objection to Weeks' experience is all the more dubious since their own expert, Daley, also considers herself an expert in web traffic analysis for the same reason:

Q: Do you consider yourself an expert in the area of web traffic analysis?

A: I consider myself an expert in data analytics, and web traffic analytics is really no different. You're really just looking at information which is maintained in a structured database, and so I don't consider web traffic analytics [to be] anything so unique when – if what you're looking at is just assessing and determining whether or not a particular data is reliable. [Exhibit 3, Daley Transcript, 20:14-23].

Cruises is bound by these responses and Weeks validly relied upon them. Thus, Royal Seas Cruises' Motion should be denied because Weeks' Opinions are reliable and admissible.

1. **Weeks' "mistaken" assumptions were based upon information provided during the course of discovery.**

Royal Seas Cruises mocks Weeks for the manner in which Weeks interpreted the data that Weeks reviewed in rendering Weeks' Opinion. [*See e.g.,* Motion, 12:10-13]. According to Royal Seas Cruises, the "most significant [error] is Week's unsupported supposition that a particular timestamp in the 'Lead Data' represents 'lead creation time,' i.e, the date and time when the consumer for the corresponding call purportedly gave consent to be called." [*Id*.]. However, Royal Seas Cruises conceals from this Court that Weeks' interpretation of "lead creation time" was based upon the information provided by Prospects DM in response to Plaintiffs' Subpoena. During a meet and confer with Prospects DM, Plaintiffs' counsel explained that Plaintiffs' counsel sought, in part, a "[t]ime and date stamp of when [a consumer] supposedly went to the site and put in their info[rmation]." [*See* Exhibit 1 attached to the Declaration of Tom Wheeler ("Wheeler Decl.")]. Prospects DM then produced the information reviewed by Weeks in response to Plaintiffs' subpoena containing a corresponding heading for the applicable column. Prospects DM cannot now change the meaning of this column. To permit Prospects DM to do so would render the discovery process meaningless as it would allow persons responding to discovery to continually change the meaning of said discovery responses to the detriment of the persons relying upon the previous representations. As such, Plaintiffs request this Court disregard this newly created theory in ruling upon Royal Seas Cruises' Motion.

**2. <u>Royal Seas Cruises' disagreement with Weeks' methodology does not warrant striking Weeks' Expert Report.</u>**

Royal Seas Cruises next expends a significant portion of its Motion providing general statements of law followed by arguments of counsel voicing disagreement with one aspect of Weeks' methodology. [Motion, 14:9-21:19]. Namely, Royal Seas Cruises disagrees with Weeks' reference to Alexa rankings as one piece of Weeks' conclusion while pretending the other pieces just do not exist. The fact that Royal Seas Cruises was able to find an expert to contradict Weeks on this point is unremarkable. What is more telling is that Royal Seas Cruises chose not to attack these other pieces in moving to strike Weeks. This lack of attack ought to be deemed a tacit admission that the other pieces to Weeks' Opinions are valid. *See Chromatic Commc'ns Enters., Inc. v. Bus. Guides, Inc.*, 1993 U.S. Dist. LEXIS 11388, at *6 (N.D. Cal. 1993) citing to *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 121 F.R.D. 402, 404 (N.D. Cal. 1988) ("silence amount[s] to a 'tacit admission.'").

Moreover, any evidence that Weeks' conclusions are incorrect is notably absent from Royal Seas Cruises' Motion. At no point in the approximately four months that have passed since Royal Seas Cruises obtained Weeks' Expert Reports have the owners of these websites produced any evidence that the respective websites did in fact generate the volume necessary to cause the significant number of leads required to obtain the alleged consent opt ins despite approximately four months to come forth with such evidence. Instead these owners simply rely upon vague references to other previously unknown entities that allegedly generated the lead that was forwarded to Royal Seas Cruises. [*See, e.g.,* Declaration of Joshua Grant, ECF No. 58-3, ¶¶ 4-7]. In addition to being hearsay, this testimony raises more questions than it answers and continually has Plaintiffs chasing a moving target. Without direct answers, Weeks sought and obtained the information

available then rendered an opinion based upon Weeks' experience in this field.

Furthermore, Royal Seas Cruises has simply relied upon the arguments of counsel and personal attacks against Weeks in lieu of producing actual evidence to contradict Weeks' conclusion. Plaintiffs' contend that the absence of this actual evidence is telling since its production in the event that said evidence existed would resolve this current dispute. Regardless, Weeks reviewed the documents provided to Weeks following receipt of said information in response to Plaintiffs' subpoena. Weeks thereafter utilized Weeks' specialized knowledge acquired through nearly thirty years in the industry to reach a conclusion. While Royal Seas Cruises is free to disagree with Weeks' conclusions, said disagreement is not enough to warrant striking Weeks' Opinions, especially in light of the lack of evidence to contradict Weeks' ultimate conclusions. Thus, Royal Seas Cruises' Motion should be denied in its entirety.

### 3. Royal Seas Cruises misleadingly represents to this Court that Weeks solely relied upon Alexa rankings in conducting Weeks' analysis.

Much of Royal Seas Cruises' gripes regarding Weeks focuses on Weeks reliance upon current Alexa rankings. As an initial matter, Plaintiffs do not believe this reliance was unreliable nor has Royal Seas Cruises come forth with any evidence to establish that the applicable vendors received a differing amount of web traffic in the past.[3]

[3] Royal Seas Cruises also ignores that Weeks utilized other sources but "they always came back with no data available…" [Weeks Transcript, 98:2-3]. Thereafter, Weeks explained that the "data result" occurred because the sites were "not generating the traffic, any significant traffic, for them to be able to capture information that allows them to do any kind of, or write any kind of analytics.". [*Id.*, 100:2-13].

Moreover, this narrow interpretation of Weeks' Reports also ignores the additional criteria used by Weeks to conclude herein. For example, Weeks also questioned the purported website based upon Weeks' review of the websites in general. Weeks explained that "[t]hese sites are other there and they are…nothing more than a placeholder…they're not sites that are going to generate significant amounts of traffic, if any, they're going to be difficult to find, and they're not very useful, they don't provide any information that's really any benefit to anybody." [Weeks Transcript, 82:14-21]. Weeks further explained that Weeks' analysis was not solely based upon extrapolating from Alexa rankings:

> Well, I go further than that, but that's because I'm analyzing this from several different angles that they're not generating the traffic that they've got on here. I mean, Alexa rankings and SEMRush were certainly parts of the puzzle that we were looking [at] here as part of the analysis. But the other things are…is anybody linking to the sites? That's one of the primary ways people get to it. Are there ad campaigns that are driving traffic to these sites? Does the site pull up in searches? Are people able to go in there and find these sites? There's no indication in anything that I was able to find that any of those are true. And I'm not sure how somebody would even stumble upon that site. I gave them the benefit of the doubt that maybe a few will somehow, but there's no way that I…could have found this site without having been told ahead of time these are the sites to analyze.

[*Id*., 88:2-21].[4]

Here, nearly fourth months after receipt of Weeks report, neither Royal Seas Cruises nor their vendors have shown that the applicable websites contained linking; benefitted from ad campaigns; are available in search engines. In addition,

[4] Daley agrees with these methods of how consumers find websites. [Daley Report, ¶ 22]. However, Daley's Report omits any statement that Daley actually conducted a personal analysis on the websites at issue herein to determine if these websites were optimized in any way to generate leads.

Daley, Royal Seas Cruises' own expert, did not contradict Weeks on these points either.[5] Instead Royal Seas Cruises attempt to convince this Court to strike the entirety of Weeks' Report based upon one disagreement with one aspect of Weeks' Report. This contention ignores the Rule 702 requirements and applies a non-existing requirement that is unlikely to be met by any expert of any kind. Thus, Royal Seas Cruises' Motion should be denied.

### C. Royal Seas Cruises' Motion Should Be Denied Because Weeks' Opinions Are Relevant.

Royal Seas Cruises also posits that Weeks' conclusions are irrelevant and should be struck because Weeks misinterpreted Prospects DM's data; and, Weeks only reviewed a small number of the websites identified in Prospects DM's data.

First, Weeks' interpretation of the timestamps in Prospects DM's data was based upon the requested information by Plaintiffs' counsel. As noted above, Plaintiffs' counsel sought a "[t]ime and date stamp of when [a consumer] supposedly went to the [web] site and put in the info[rmation]." [*See* Exhibit 1]. In response, Prospects DM produced records that contained a time and date stamp which caused Plaintiffs to believe the information in that column was responsive to Plaintiffs' request. Neither Plaintiffs nor Weeks had any reason to believe that Prospects DM would produce non-responsive and misleading information while under the penalty of perjury. Thus, neither Prospects DM nor Royal Seas Cruises can now rewrite what this column means in an attempt to avoid liability.

Second, Royal Seas Cruises contention that the entirety of Weeks' conclusions

---

[5] Interestingly, Daley faults Weeks for relying, in part, upon various websites to conclude in part. However, Daley also relied upon similar websites to form the basis for a portion of Daley's Opinions. [*See e.g.,* Daley Report, ¶ 75]. In asserting this argument, Daley either needs to admit the reliance upon such "publicly available information" is appropriate or strike these contradictory paragraphs from Daley's Report.

should be disregarded by this Court because Weeks did not examine every single website mentioned in the data is incorrect. [Motion, 22:4-28]. Weeks' investigation was limited to the websites associated with Plaintiffs' respective identifiers since this is how Royal Seas Cruises' allegedly obtained Plaintiffs' respective prior express consent. For this reason, alleged consent allegedly obtained from other websites is unrelated to the class Plaintiffs seek to represent and unrelated to Weeks' analysis as a result. Thus, this argument ignores the scope of Plaintiffs' class and does not justify striking Weeks' Opinions.

**D. Royal Seas Cruises' Motion Should Be Denied Because The Requested Exclusion Of Weeks' Testimony Is Not The Proper Remedy At This Time.**

"When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Medlock*, 2015 U.S. Dist. LEXIS 161728, at *5 citing to *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010); and, *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). "The inquiry into whether an expert opinion is admissible is a 'flexible one' where shaky 'but admissible evidence is to be attacked on cross examination, contrary evidence, and attention to the burden of proof, not exclusion.'" *Id*. at *6.

Here, Plaintiffs vehemently deny that Weeks' conclusions are unsound. Regardless, Plaintiffs request this Court deny Royal Seas Cruises' Motion to Exclude Weeks and instead let the jury decide which of the conflict experts to follow. To exclude Weeks now unfairly prejudices Plaintiffs by precluding Plaintiffs from providing testimony that will assist the Court and/or the jury to understand Royal Seas Cruises' voluminous records regarding the communications at issue herein. Weeks thoroughly examined this information and has now offered an opinion based directly upon Weeks' specialized knowledge that the alleged

evidence relied upon for Royal Seas Cruises' prior express consent affirmative defense is not what it seems. While Royal Seas Cruises understandably seeks to exclude this damning testimony, Rule 702 was not designed to silence opinions that may expose faulty business practices. To the contrary, Weeks' Opinion, which is based upon Weeks' specialized knowledge, should be considered by this Court and the jury, since said opinion will assist the applicable trier of fact to understand the evidence herein. Thus, Royal Seas Cruises' Motion should be denied.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs request this Court deny Royal Seas Cruises' Motion. Said Motion rests on nothing more than rhetoric and requests this Court to ignore Weeks' nearly three decades of experience. Moreover, it is not remarkable that Royal Seas Cruises was able to find an expert that would contradict Weeks and opine that Weeks' methodology was flawed. Notably absent in this rebuttal report as well as any filing lodged with this Court to date is any evidence that actually contradicts Weeks' conclusion. In this battle of the experts, Plaintiffs requests this Court permit the jury to decide which expert ought to be believed.

DATED: November 19, 2018

**KAZEROUNI LAW GROUP, APC**

By: /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFFS