1

**GREENSPOON MARDER LLP**

2   Richard W. Epstein, Esq. (Admitted *Pro Hac Vice*)
    richard.epstein@gmlaw.com

3   Jeffrey A. Backman, Esq. (Admitted *Pro Hac Vice*)

4   jeffrey.backman@gmlaw.com
    200 E. Broward Boulevard, Suite 1800

5   Fort Lauderdale, FL 33301

6   Tel: 954.527.2427
    Fax: 954.333.4027

7
    Attorneys for Defendant Royal Seas Cruises, Inc.

8   [additional Defendant's counsel on signatory line]

9
                   **UNITED STATES DISTRICT COURT**
10                **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   John McCurley, Individually and
     and on Behalf of All Others Similarly

13   Situated,

14           Plaintiff,

15       v.

16   Royal Seas Cruises, Inc.,

17           Defendant.

18   ---------------------------------------------

19   Dan DeForest, Individually and
     and on Behalf of All Others Similarly

20   Situated,

21           Plaintiff,

22       v.

23   Royal Seas Cruises, Inc.,

24           Defendant.

25

26

27

28

|  |  |
|---|---|
| Case No.:  3:17-cv-01988-AJB-AGS | |
| *consolidated with* | |
| Case No.:  3:17-cv-00986-BAS-AGS | |

**DEFENDANT ROYAL SEAS CRUISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF NOTICE OF PLAINTIFFS' CERTIFIED CLASS ACTION**

**NO ORAL ARGUMENT REQUESTED**

**HON. CYNTHIA A. BASHANT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ....................................................................ii

I.  INTRODUCTION ..........................................................................1

II. ARGUMENT ...................................................................................3

   A. Class Members Who Can Be Identified Through
      Reasonable Effort Must Be Mailed An Individual
      Notice ......................................................................................3

   B. Plaintiffs Cannot Show that Publication Notice Would
      Be a Manageable and Reasonable Means of Notifying
      the Classes. ..............................................................................5

   C. Notice Should not Be Given until after Plaintiffs
      Have Identified Class Members..............................................9

   D. The Class Notice Should Be Modified To Inform
      Class Members That They May Need To
      Testify If Subpoenaed ...........................................................11

   E. Plaintiffs' Proposal to Post Social Media and Internet
      "Banner Ads" and Place an "Article" in ESPN
      Magazine Will Result in Notice to an Over-Inclusive
      Group of People Who Are Not Class Members ...................13

Conclusion ..............................................................................................16

Certificate of Service ............................................................................17

40513412.1

# TABLE OF AUTHORITIES

## Cases

*Carlough* v. *Amchem Prods., Inc.*,
     158 F.R.D. 314 (E.D. Pa. 1993) ....................................................... 4, 12

*Carrera v. Bayer Corp.*,
     727 F.3d 300 (3d Cir. 2013) ........................................................... 7

*Creten-Miller v. Westlake Hardware, Inc.*,
     2009 WL 2058734  (D. Kan. 2009) ................................................ 11

*Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974) ....................................................... 2, 4-5

*Gilbert v. Moneymutual, LLC*,
     2016 WL 7826656 (N.D. Cal. June 23, 2016) ............................... 7

*In re AT & T Mobility Wireless Data Services Sales Litig.*,
     270 F.R.D. 330 (N.D. Ill. 2010) ..................................................... 7

*In re HydrogenPeroxide Antitrust Litig.*,
     552 F.3d 305 (3rd Cir. 2008) ........................................................ 7

*In re Nissan Motor Corp. Antitrust Litigation*,
     552 F.2d 1088 (5th Cir. 1977) ....................................................... 6,11-12, 15

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*,
     148 F.3d 283 (3d Cir.1998) ........................................................... 4

*Macarz v. Transworld Sys., Inc.*,
     201 F.R.D. 54 (D. Conn. 2001) ..................................................... 11

*Oppenheimer Fund, Inc. v. Sanders*,
     437 U.S. 340 (1978) ....................................................... 7

*Reab v. Electronic Arts, Inc.*,
     214 F.R.D. 623 (D. Colo. 2002) .................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodney v. Piper Capital Management*,
    71 F.3d 298 (8th Cir. 1995)..............................................................4

*Rossin v. Southern Union Gas Company*,
    472 F.2d 707 (10th Cir. 1973)..........................................................7

*Schaefer v.  Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996)....................................................12

*Shin v. Plantronics, Inc.*,
    2019 WL 2515827 (N.D. Cal. June 17, 2019) ................................5

*Tylka v. Gerber Products Co.*,
    182 F.R.D. 573 (N.D. Ill. 1998) ..............................................11, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................. 12

**Statutes/Other Authorities**

Telephone Consumer Protection Act, 47 U.S.C. §227..............................*passim*

Fed. R. Civ. 23 ......................................................................................*passim*

Fed. Jud. Ctr., Judges' Class Action Notice and Claims Process
Checklist and Plain Language Guide (2010)............................................2-3, 13

C. Wright, A. Miller, & M. Kane, 7B Federal Practice and
Procedure at 189 (1986)............................................................................. 4

40513412.1

Defendant Royal Seas Cruises, Inc. ("Royal") files its Opposition to Plaintiffs' Motion for Approval of Notice of Plaintiffs' Certified Class Action (the "Motion") to the extent the Motion proposes publication notice to the certified classes through social media, magazine, and banner ads, and offers direct notice only as an "alternative" through an insufficient post-card form of notice.

## I.   INTRODUCTION

Federal Rule of Civil Procedure 23 requires an individually mailed notice to "all members" of the class "who can be identified through reasonable effort."[1]  In briefing class certification, Plaintiffs repeatedly represented that they could (and would) easily identify individuals associated with the telephone numbers in the records of the lead generator and calling party at issue in this case, Prospects DM, Inc. ("Prospects").[2]  They offered Christina Peters-Stasiewicz as an expert who opined that she can identify class members through reasonable effort, using cellular telephone records, and provide direct individual notice to those persons.[3] In overruling Royal's objections to this expert and granting certification, this Court noted that other courts had approved the expert's methodologies for identifying class members.[4]  And in their Motion, Plaintiffs concede that direct mail notice using these same methodologies can be accomplished through their claims administrator, but "Plaintiffs *prefer* publication notice as the more efficient and cost effective notice."[5]

Plaintiffs' preference for publication notice to save costs, at the expense of due process, must be rejected by the Court, which the Federal Judicial Center

---

[1]  Fed. R. Civ. P. 23(c)(2)(B).
[2]  Mot. for Class Cert. (DE 49-1) at pp. 15, 23-24, n. 14; Reply Brief (DE 76), at p. 4, 16.
[3] Report of Christina Peters-Stasiewicz (DE 49-8), at ¶¶26-33
[4] Order (DE 87), at p. 21.
[5] Motion, at p. 11 [emphasis added].  Nowhere in their Motion, or its exhibits, do Plaintiffs provide costs estimates for providing notice, by mail or by publication.

advises to "[b]e careful to look closely at assertions that mailings are not feasible."[6] Indeed, federal courts are urged to be skeptical of claims that mailings are impracticable, and to require direct notice notwithstanding the cost if it is not unreasonably burdensome.[7] The Supreme Court of the United States has held that determining if class members can be identified through "reasonable effort" turns on whether identification is feasible, not on how much it costs:

> Individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23… . There is nothing in Rule 23 to suggest that the notice requirement can be tailored to fit the pocketbooks of particular plaintiffs.[8]

Plaintiffs' Motion makes no effort to show that direct notice is not feasible, or unreasonably costly. In fact, the Motion proposes direct notice as a second choice to publication notice. Rather, to argue for approval of a class notice plan of publication through social media and banner ads, Plaintiffs attempt to attack the reliability of the very records they relied upon to define the narrowed classes[9] certified by this Court: persons whose cellular telephone numbers are associated in Prospects DM, Inc.'s records with either diabeteshealth.info or www.yourautohealthlifeinsurance.com.[10] But the narrowed classes are specifically defined as a finite group of persons whose cellular telephone numbers reside in these records, regardless of Plaintiffs' disputes about the consent data associated

---

[6] Fed. Jud. Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), at p. 2.

[7] *Id.*, at p. 3.

[8] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (holding that asking third parties for name and address information is just the sort of "reasonable effort" that Rule 23 demands).

[9] Motion, at 9 ("Given the suspicious 'consent' data provided by Royal, Plaintiffs contend that publication notice is the best practical notice").

[10] Order (DE 87), at p. 64.

with those records.[11]   Under these circumstances, where the class includes only those individuals with cellular telephone numbers actually identified in Prospects' records, there should be no need for any "publication" notice at all.

At this juncture, there is no basis to propose any form of notice by publication, or to represent to the Court that there is a Class of 2.1 million members.[12]   Plaintiffs are aware of these defects with publication notice, and have therefore proposed direct notice as an alternative, albeit through a limited notice post-card form.   Plaintiffs, in their attempt to save a few dollars, ignore Rule 23, ignore the guidance provided by the Federal Judicial Center, ignore the case law interpreting Rule 23, ignore the representations they made to this Court in their class certification briefs, and ask this Court to approve a notice plan that has no basis in law.   Direct notice using the long-form is required to ensure all of the information described in the Federal Judicial Center checklist (including the elements of Rule 23) as required by Rule 23(c)(2) are conveyed to class members.

**II. ARGUMENT**

**A. Class Members Can Be Identified Through Reasonable Effort and Must Be Mailed An Individual Notice.**

The notice provided to a class certified under Rule 23(b)(3) must satisfy Rule 23(c)(2), which requires "the best notice that is practicable under the circumstances."  This notice requirement is grounded in the due process guarantees

---

[11] Indeed, while Plaintiffs say they dispute the "veracity" of names and addresses in the consent data, they admit that "the telephone numbers dialed appeared to be associated with actual consumers." Motion, at 9.

[12] Plaintiffs represent that the Class is comprised of some 2.1 million consumers – a claim they make based on pure speculation, citing a reference in the Court's Order granting class certification to 2.1 million consent records produced by Royal *for more than 1,100 websites* (Motion, at p.1 citing DE 87, at 39:7-14).   There is no logical connection between the number of consent records from more than 1,100 websites – the scope of their original alleged class – and the number of persons called by Prospects whose consent records were associated with only two websites, the narrowed definition of the classes certified by this Court.

3

of the U.S. Constitution.[13]  "The requirements of Rule 23(c)(2) are stricter than the requirements of Rule 23(e) and arguably stricter than the due process clause."[14] This is because personal jurisdiction over absent class members only attaches upon the satisfaction of FRCP 23(c)(2)'s notice requirements.[15]  These requirements are designed to ensure that class notice procedures satisfy due process, and the best practicable notice requires individual notice "to all class members whose names and addresses may be ascertained through reasonable effort."[16]

Plaintiffs offer no argument in their Motion that class members' names and addresses cannot be ascertained through reasonable effort, and they have no basis to assert that notice through publication satisfies the demands of due process.  In fact, they offer a declaration from an officer of their claims administrator who attested to the reasonable efforts her company could perform to effect direct notice[17] – exactly what Plaintiffs repeatedly argued could be done in briefing class certification.[18]  Thus, Plaintiffs concede that direct notice is feasible, but they ask this Court to approve a publication notice plan only.  While Plaintiffs speak in

---

[13]  C. Wright, A. Miller, & M. Kane, 7B Federal Practice and Procedure at 189 (1986); *Rodney v. Piper Capital Management*, 71 F.3d 298, 303 (8th Cir. 1995).

[14]  *Carlough v. Amchem Products, Inc.,* 158 F.R.D. 314, 324–25 (E.D.Pa.1993).

[15]  *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 148 F.3d 283, 306 (3d Cir.1998).

[16]  *Eisen*, 417 U.S. at 174.

[17]  *See* Decl. Carla A. Peak (June 10, 2019) (DE 101-1), at ¶¶13-18.

[18]  *See* Mot. for Class Cert. (DE 49-1) at p. 15 ("Plaintiffs are already in possession of the full outbound dial list data from Prospects DM, which includes name address and phone number of every member of the broad class"); at n. 14 (Christina Peters-Stasiewicz can identify class members through cellular telephones records); at 23-24 ("The only individual issue here is the identification of the Class members, which will be accomplished by a review of records already in possession of Plaintiffs"); Reply Brief (DE 76), at 4 (offering the narrowed class definitions based upon records of Prospects); at 16 (Plaintiffs are typical of members of the narrowed class "because…the data shows they received calls and their numbers are associated with these websites like other class members.").

4

generalities about reaching 70% of individual class members through publication notice (and the same for direct notice), and they offer complex demographic analysis from their proposed claims administrator on targeting likely class members through ads in ESPN magazine, social media, and the internet, they gloss over the fact that 100% of the class members can be targeted by direct notice using the records specifically described in the class definition. Plaintiffs should not be allowed to ignore these records simply because mailing costs might be costly. There is no basis for the general reference to a 70% reach, or explanation of how anyone could know that people who went a diabetes website to sign up to receive telephone calls would purchase and read ESPN Magazine.

In *Eisen*, the Supreme Court of the United States held that Rule 23 mandated individual notice to the 2,250,000 class members whose names could be "identified with reasonable effort" by comparing records of the defendants to the records of third parties that maintain names and addresses to match to the telephone numbers.[19] Likewise, in *Shin v. Plantronics, Inc.*, the district court rejected a plan that was agreed-to by the parties that required publication notice in addition to individual notice by mail and email to members of a certified class.[20] The court, noting that a "large majority" of class members could not be notified through the defendant's records, held that "the prudent course of action would be to secure third-party cooperation" to provide effective direct notice, "but the parties have not done so."[21] As such, the Court was "not convinced that this plan would provide 'the best notice that is practicable under the circumstances'."[22]

---

[19]  *Eisen*, 417 U.S. at 166-67.
[20] 2019 WL 2515827 at *6 (N.D. Cal. June 17, 2019).
[21] *Id.*
[22] *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).

A similar result occurred in *In re Nissan Motor Corp. Antitrust Litigation*.[23] There, the district court certified a class of original car purchasers but the available list of purchasers was only of current owners, not the original purchasers. Nonetheless, the district court found it sufficient to limit the mailed notice to only the people appearing on the defendant's list; it did not require the plaintiffs to go through the 1,700,000 paper records which did in fact show the original purchasers, because, according to the court, that would be a "herculean task" that is "unnecessarily time consuming and burdensome."[24]   The fifth circuit, however, disagreed, concluding that "a large class requires a large effort."[25]

Here, Plaintiffs simply do not want to make the effort, let alone a "large effort," that is required under Rule 23(c)(2) using records referenced in their class definition from which class members can presumably be identified with reasonable effort.  And they do not want to pay for it.  In reality, Plaintiffs have no idea how many persons were called by Prospects after those individuals signed up on one of the two websites at issue, and thus may (or may not) fall within the Class definition.[26]   While they claim publication notice is preferable as more "cost-effective,"  Plaintiffs provide no monetary estimate for the costs of effecting direct notice, or publication notice, in the alternative plans outlined by their claims

---

[23]  552 F.2d 1088 (5th Cir. 1977).

[24]  *In re Nissan* at 1096.

[25]  *In re Nissan* at 1100.

[26] Plaintiffs' counsel previously obtained a quote from their claims administrator for direct notice to 2.2 million persons and circulated it to Royal as their "plan." *See* Decl. Brian Cummings (July 1, 2019) (**Exhibit "1"**), at ¶8, Exh. A.  When questioned on the source for the estimate of 2.2 million class members, Plaintiffs' counsel denied that it was based on the 2.1 million leads produced by Royal for 1,100 websites. *Id.*, at ¶¶8-9.  Rather, they offered several illogical, contradictory explanations, while admitting that they still had not obtained the records from Prospects. *Id.*, at ¶¶10-12.  Now, they reverse course and assert that the calling Class is composed of 2.1 million persons, citing this Court's Order granting certification in which the Court was referring to the 2.1 million consent leads produced by Royal for 1,100 websites.  Motion, at p.1 (citing DE 87, at 39:7-14).

administrator.  Instead, Plaintiffs just claim that direct notice will be too expensive, which, as the Supreme Court has held, is insufficient grounds to dispense with the requirement of direct notice and due process.

Accordingly, Plaintiffs must obtain the names and addresses of the putative class members whose identities can be obtained, and provide direct notice.  Their assertion that publication notice is a viable alternative to individual notification ignores the facts of this case, the requirements of Rule 23(c)(2), and what they have been arguing all along.

## B. Plaintiffs Cannot Show that Publication Notice Would Be a Manageable and Reasonable Means of Notifying the Classes

It is Plaintiffs' burden to show by a preponderance of the evidence that there is a manageable and reasonable way of notifying the class.[27]  Within this prerequisite, a class action is considered superior only if reasonable notice can be given to class members, class members can opt out of the class, and a compilation of the class members is present.[28]  Under Rule 23, the Plaintiffs have the responsibility for planning the class notification process.[29]  A plaintiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23, which includes the notice requirements.[30]

---

[27] *In re HydrogenPeroxide Antitrust Litig.*, 552 F.3d 305, 307, 320 (3rd Cir. 2008).
[28] *See In re AT & T Mobility Wireless Data Services Sales Litig.,* 270 F.R.D. 330, 350 (N.D. Ill. 2010) ("When no prior notice of the pendency of the Rule 23(b)(3) class action is given, the rights of absent class members to exclude themselves from the action under Rule 23(c)(2) are preserved by combining the notice of settlement hearing with notice of opportunity for exclusion from the action.").
[29] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 347 (1978); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013).
[30] *See Rossin v. Southern Union Gas Company*, 472 F.2d 707, 712 (10th Cir. 1973) (plaintiff has "the burden of proving that the action is appropriately a class action" and fulfilling all of the requirements of Rule 23; *see also Gilbert v. Moneymutual, LLC*, 2016 WL 7826656, at *2 (N.D. Cal. June 23, 2016)

40513412.1

In this case, it seems Plaintiffs do not have the records they represented to this Court they either had or could obtain; thus, at present, they cannot identify any class members.  It is unclear whether appropriate efforts have been made to obtain the information now, which Plaintiffs do not discuss in their Motion, supporting declaration of counsel, or other exhibits.  In addition to apparently not taking the necessary steps to provide notice in accordance with Rule 23, Plaintiffs propose a publication notice plan that fails to take into account the actual "classes" certified by the Court that the Plaintiffs drastically narrowed in briefing class certification.  The class definitions very specifically identify class members as persons whose cellular telephone numbers are associated with two websites.  Now Plaintiffs want to broadcast notice to the world through advertising on ESPN Magazine, social media and the internet, ignoring the actual classes they represent.  Any individual viewing Plaintiffs' proposed publication notice will no doubt believe that he or she is in fact a "class member" simply because he or she believes that they received a telephone call marketing a cruise offer during the relevant time period.  But that is not the case since, without the proof required by the class definition itself – that their cellular telephone numbers are associated in Prospects records with one of two websites – nobody will be a "class member."

Here, although the classes have been certified, it has now become apparent that Plaintiffs have yet to identify any actual "members" of either class.  Instead, Plaintiffs seek broad "publication" to (all) unidentifiable "class members."  Even if this notice reaches individuals who may have received an "automated" call marketing a cruise from November 2016 to December 2017, it does not mean that any such individuals are "class members."  Indeed, it means nothing at all, unless

---

(concluding "that Plaintiffs have not met their burden to show that email notice and publication on Class Counsel's website alone are sufficient methods to provide notice to the class").

their cellular telephone numbers are crossed-checked with Prospects' records and found to be associated with one of the two websites. Plaintiffs' proposal to give notice by publication is simply backward. Notice should *start* with Prospects' records, not rely on them to test class membership of persons who viewed ads on the internet, Facebook, or ESPN Magazine and think they might be class members because they got "automated" calls offering a cruise promotion during this time period.

The problem is that Plaintiffs' preferred plan of notice through publication is likely to cause substantial confusion among millions of individuals who view publication notices. It is likely to result in countless issues should it ultimately be determined that any such individuals are not, in fact, "class members" because of lack of required proof that their cellular numbers are associated with records of Prospects with one of the two websites. Any such individual, having not opted out upon receipt of Plaintiffs' notice, will have lost any rights to pursue a separate action against Royal, regardless of whether or not the Court or an administrator make the ultimate determination of class membership.

## C. Notice Should not Be Given until after Plaintiff Has Identified Class Members

Plaintiffs' proposed Class Certification Notice Plan ("Notice Plan")[31] is untimely. Although it is often common place to send notice as soon as practicable after an order certifying the class is entered, it is not appropriate under the circumstances of this case. This Court's certification order defined specific classes, both of which require an affirmative showing by any putative class member wishing to be a "member" and potentially share in any recovery, in the event Plaintiffs prevail on the merits. Specifically, both classes are expressly

---

[31] Motion, at Exh. 7 (DE 100-10).

limited to persons whose cellular telephone numbers are listed in records of Prospects as associated with one of two websites. Plaintiffs' proposed notice will not determine "membership" in either class. Nor is anyone who claims to have received an "automated" call marketing a cruise wishing to remain in the lawsuit required to respond in any way. Thus, Plaintiffs will be required to send a virtually identical notice to the same unknown universe of putative class members upon entry of a settlement or judgment of liability. Although Plaintiffs' proposal does not even provide an estimate for the cost of publication notice, the second notice will cost, at a minimum, the same as the first notice. Only with the second notice, a more specific "plan" will be necessary in order to implement a procedure by which class membership will be determined.

In addition to the potentially unnecessary costs, which Plaintiffs are certainly likely to try to shift to Royal, the lack of determining actual "membership" in advance of a trial will be prejudicial to Royal. What is this trial going to look like? How do Plaintiffs intend to prove damages and the number of telephone calls at issue? The "records" of Prospects is not evidence of the making of any telephone calls in violation of the TCPA. Plaintiffs are going to have to prove the number of violations. Without conclusively determining membership prior to trial, Royal could conceivably be subject to an astronomical judgment. However, upon a determination of actual membership in the classes, there could be far fewer actual class members with proof of any telephone calls, assuming the calls are found to be violative of the TCPA. This would violate Royal's due process rights in that the ultimate proof submitted by class members would pale in comparison to the judgment rendered by the Court.

As a result, the practical and common sense approach to the classes certified in this case is to prepare a notice plan which would allow membership to be determined now, in advance of trial. Courts have concluded that, without evidence

40513412.1

of actual class membership, the effectiveness of Plaintiff's notice plan could be compared to that of sending notice to everyone listed in any "metropolitan telephone book."[32]

### D. The Class Notice Should Be Modified To Inform Class Members That They May Need To Testify If Subpoenaed

Plaintiffs' assertion that no class members will need to attend the trial is factually inaccurate.[33]  Class members who may be subject to the Court's subpoena power could be compelled to appear at trial for the purpose of testifying.   In addition, in light of the affirmative proof obligation required to demonstrate membership in the classes, testimony of putative class members may be warranted and, indeed, necessary.   The proposed Notice Plan does not alert class members that, in connection with the adjudication of Royal's anticipated Affirmative Defenses, they may be required to: (1) be deposed; (2) submit to written discovery; and (3) appear or otherwise travel to San Diego.[34]

### E. Defendants Object to Plaintiffs' Abbreviated Form of Direct Notice.

A proper class notice is vital in that it "serves as the class members' primary, if not exclusive, source of information for deciding how to exercise their rights

---

[32]  *In re Nissan* at 1099; *see also Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573 (N.D. Ill. 1998) ("To require notice throughout the nation to corral these relatively few individuals, wherever they may be, could mislead millions of ineligible individuals, generate considerable confusion, and unreasonably harm [the Defendant]."); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54 (D. Conn. 2001) (finding that "sending notice to the admittedly over-inclusive group here would most likely confuse the recipients and encourage [responses] by non-class members").

[33]  *See* Motion, at Exh. 6 (DE 100-9), at 4 (No. 17) ("You do not have to come to Court unless you choose to do so.").

[34]   *See Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002); *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734 at *5 (D. Kan. 2009).

under FRCP 23."[35]   The notice, therefore, must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt-out or remain a member of the class."[36]  And it "should be neutral and objective in tone, and should neither promote nor discourage the assertion of claims."[37]   Under Rule 23(c)(2)(B), a class notice "must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The abbreviated post-card form of notice[38] proposed by Plaintiffs as an alternative to publication notice fails to clearly and concisely convey all the information required.  Plaintiffs' post-card notice fails to describe the time and manner for requesting exclusion from class membership, stating only "you must submit a request for exclusion by Month xx, 2019."[39]  The notice also does not state clearly that the court will exclude from the class any member who requests

---

[35]  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 115 (2d Cir. 2005) (internal quotation marks omitted).

[36]  *In re Nissan*, 552 F.2d at 1105.

[37]  *Schaefer v.  Overland Express Family of Funds*, 169 F.R.D. 124 (S.D. Cal. 1996); s*ee also Carlough*, 158 F.R.D. at 321.

[38]  Motion, at Exh. 5 (DE 100-8).

[39]  *Id.*

exclusion, and confusingly suggests that class members can be represented in the case by their own lawyer only if they hire one at their own expense.  And Plaintiffs omit disclosure of the primary class issue in the case that was the primary focus of class certification briefing – Plaintiffs' avoidance to Royal's consent defense based on their contention of fabricated consent.

The long-form notice should be used for direct notice, after being revised to clearly and conspicuously advise individuals receiving it that they will be required to submit proof in order to be considered for class membership, that persons residing in California could be called compelled to testify at trial, and to disclose all the issues in this case.  So revised, the long form will fully comply with the prerequisites of Rule 23(c)(2)(B) and convey all of the information that a reasonable person would find material to making an informed decision to join the class or opt-out.  It also comports with the standards for class notices of the Federal Judicial Center Judicial Checklist, using a "Q&A" format addressing key topics in a logical order and spelling out all of the elements of Rule 23 in clear and concise language, including the specific manner in which to submit a request to be excluded from the class.  The abbreviated post-card notice form proposed by Plaintiff lacks sufficient information and should be rejected by the Court as inappropriate to provide direct notice.

**F. Plaintiffs' Proposal to Post Social Media and Internet "Banner Ads" and Place an "Article" in ESPN Magazine Will Result in Notice to an Over-Inclusive Group of People Who Are Not Class Members**

Plaintiffs' proposal for notice by publication appears calculated to reach an over-inclusive group of people without regard to class membership.  There is also a glaring discrepancy between the Motion and the Notice Plan about the expected advertising reach of Facebook and banner advertising.  Plaintiffs propose a "digital media plan" placing generic "banner ads" on unspecified websites and Facebook

advertisements, as well as "an article in ESPN The Magazine."[40]  In both the Motion and the attached declaration of the claims administrator's representative, Plaintiffs represent that "[a]pproximately 242 million digital media advertising impressions will be purchased and distributed over the Google Display Network (GDN) and Facebook over a period of 60 days."[41]  However, the actual Notice Plan attached to the Motion, and prepared by the claims administrator, represents that "[a]pproximately 116 million internet impressions will be purchased and distributed over the Google Display Network (GDN) and Facebook over a period of 60 days."[42]

Putting aside this 100%+ divergence in the estimated reach of the proposed digital media plan, Plaintiffs' Motion fails to provide any rational basis as to how posting "banner ads" on the internet and ads on Facebook will assist in actually locating class members.  In addition to posting "banner ads" to individuals who are either not class members or are more likely than not to opt out, the generic form of "banner ad" proposed by Plaintiffs will only cause confusion and encourage these individuals, already predisposed to enforce their rights, if any, to seek relief from Royal.  This will result in Royal receiving demand letters, telephone calls making claims, and the filing of additional lawsuits – whether or not these individuals have sufficient proof of receiving any such telephone call.

Moreover, the generic form of the "banner ad" and Facebook ad proposed by Plaintiffs do not specifically relate to Royal and the telephone calls actually at issue in this lawsuit.  As the Plaintiffs repeatedly argued in their Motion for Class Certification, this case involved 634 million telephone calls placed by Prospects,[43]

---

[40] *See* Motion, at 6, Exhs. 2 and 3 (DEs 100-5 and 100-6).
[41] *See Id*, at 10; Decl. Peak (DE 101-1) [corrected], ¶21.
[42] *See* Notice Plan (DE 100-10), at 6.
[43] DE 49-1, at 6, 10, 16.

which Royal showed included some calls made for Royal as part of a cruise marketing program involving consent leads created on more than 1,100 websites.[44] But Plaintiffs subsequently drastically narrowed their claimed classes to persons called by Prospects whose records were associated with only two of those websites. As such, the vast majority of persons who received calls from Prospects marketing a cruise offer from Royal will have nothing to do with the classes certified in this case. The Notice Plan utterly fails to address how the proposed digital media plan will weed out the persons called by Prospects whose cellular telephone numbers are associated with the other 1,100 websites, and target actual class members whose numbers are associated with just two websites.

Plaintiffs' Motion also fails to provide any evidence or basis that the supposed "242 million digital media advertising impressions" or the "article" in ESPN Magazine will reach any individual that may actually fit within the class or will even likely be a member of the class.[45] The Plaintiffs provides no evidence that the internet banner ads, social media ads, or "article" in ESPN Magazine will result in some correlated or concomitant notice to class members.[46] Under these circumstances, where constructive notice is neither necessary nor likely to result in effective notice, notice by publication and internet or social media advertisement should not be approved.

---

[44] DE 58, at 2.

[45] *See Tylka,* 182 F.R.D. at 577. Here, as there the Plaintiffs have already stated that the addresses of the class members are attainable, publication and internet banner advertisements are unnecessary.

[46] *See, e.g., In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1099 (deeming defective notice that was sent to "current, registered" owners of Datsun motor vehicles, when there was no evidence that a list of such owners was correlated with the certified class of "original retail Datsun purchasers").

40513412.1

## CONCLUSION

For the above reasons, Plaintiffs' Motion must be denied to the extent it proposes publication notice and proposes direct notice only as an "alternative" using an insufficient post-card form, as direct notice using a revised long-form notice at the appropriate time – after Plaintiffs have obtained the records identified in their class notice – is the best practicable notice in this case, is required by Rule 23, and is consistent with what Plaintiffs have argued all along would be done.

DATED: July 1, 2019

Respectfully Submitted,

**GREENSPOON MARDER LLP**

 /s/ *Jeffrey A, Backman*
JEFFREY A. BACKMAN (Fla. Bar No. 662501)
Jeffrey.Backman@gmlaw.com
RICHARD W. EPSTEIN (Fla Bar No. 229091)
Richard.Epstein@gmlaw.com
200 E. Broward Blvd, Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954.527.2427
Fax: 954.333.4027
*Admitted Pro Hac Vice*

BRIAN R. CUMMINGS (Fla. Bar No. 25854)
Brian.Cummings@gmlaw.com
401 E. Jackson St., Suite 1825
Tampa, Florida 33602
Tel: 813.769.7020
Fax: 813.426.8582
*Admitted Pro Hac Vice*

ANTON N. HANDAL, ESQ. (Bar No. 113812)
Tony.Handel@gmlaw.com
750 B Street, Suite 250

40513412.1

San Diego, CA 92101
Tel: 619.544.6400
Fax: 619.696.0323

Attorneys for Defendant *Royal Seas Cruises, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was has been served electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record set forth on the Service List below who are registered to receive CM/ECF notification as reflected on the Service List on this 1st day of July, 2019.

By:   /s/ *Brian R. Cummings*
Brian R. Cummings, Esq.

## SERVICE LIST

Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
Kevin Lemieux, Esq.
kevin@westcoastlitigation.com
**HYDE & SWIGART**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Abbas Kazerounian, Esq.
ak@kazlg.com
Matthew M. Loker, Esq.
ml@kazlg.com

17

40513412.1

**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff John McCurley*

Todd M. Friedman, Esq.
Adrian R. Bacon, Esq.
Meghan E. George, Esq.
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
(877) 206-4741
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com

*Attorneys for Plaintiff Dan DeForest*

18

40513412.1