# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MCCURLEY, DAN DEFOREST, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br>  v.<br><br>ROYAL SEAS CRUISES, INC.,<br><br>                        Defendant. | Case No. 17-cv-00986-BAS-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR APPROVAL OF PROPOSED CLASS NOTICE PLAN**<br><br>**[ECF No. 100]** |

       Plaintiffs John McCurley and Dan DeForest move for approval of their proposed class notice plan. (ECF Nos. 100, 103.) Plaintiffs' motion presents two separate and alternative notice plans—the proposed Direct Notice Plan and the proposed Publication Notice Plan—for which Plaintiffs seek court approval of only one, preferably publication notice. Defendant Royal Seas Cruises, Inc. ("Royal") principally opposes the proposed Publication Notice Plan and argues that Plaintiffs' proposed notice is otherwise incomplete. (ECF No. 102.) For the reasons herein, the Court grants Plaintiffs' motion for approval of the Direct Notice Plan and denies Plaintiffs' motion for approval of the Publication Notice Plan. Having reviewed the proposed notices, the Court finds that they lack certain information that Rule 23 requires for notice in a Rule 23(b)(3) class action. Thus, the Court orders certain amendments to the notices.

**RELEVANT BACKGROUND**

**1. Class Certification**

Plaintiffs previously moved for certification of nationwide Rule 23(b)(2) and Rule 23(b)(3) TCPA classes. (ECF No. 49.) The Court granted in part and denied in part Plaintiffs' motion. *See McCurley v. Royal Seas Cruises, Inc*., 331 F.R.D. 142 (S.D. Cal. 2019). As a result, the Court has certified nationwide Rule 23(b)(3) TCPA classes as follows:

> Class:
>
> All persons within the United States who received a telephone call (1) from Prospects, DM, Inc. on behalf of Royal Seas Cruises, Inc. (2) on said Class Member's cellular telephone (3) made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, (4) between November 2016 and December 2017, (5) where such calls were placed for the purpose of marketing, (6) to non-customers of Royal Seas Cruises, Inc. at the time of the calls, and (7) whose cellular telephone number is associated in Prospects DM's records with either diabeteshealth.info or www.yourautohealthlifeinsurance.com.
>
> Transfer Subclass:
>
> All members of the Class whose call resulted in a Transfer to Royal Seas Cruises, Inc.

*McCurley*, 331 F.R.D. at 163.

**2. Proposed Alternative Notice Plans**

After receiving two extensions to propose a class notice plan, (ECF Nos. 92, 95), Plaintiffs timely filed the present motion. Class Counsel retained KCC Class Services ("KCC"), a class action administration firm, to design the proposed notice plans, and KCC will conduct whichever notice plan the Court approves. (ECF No.

101-1 Carla A. Peak (Vice President of Legal Notification Services for KCC) Decl. ("Peak Decl") ¶¶ 2, 7; *see also* ECF No. 100-3 Matthew M. Loker (Class Counsel) Decl. ("Loker Decl.") ¶ 20 Ex. 7 (KCC's proposed Dissemination Plan).)

As a general matter, KCC will establish a case website (www.RoyalSeasCruisesTCPAClassAction.com) to allow Class Members to obtain additional information and documents about the litigation, including the Complaints, Class Certification Order, and Detailed Notice. (Peak Decl. ¶ 22; Loker Decl. ¶ 12.) The website address will appear in any notice the Court approves. (Peak Decl. ¶ 22.) KCC will establish a toll-free telephone number to allow Class Members to learn more about the litigation and to request that notice be mailed to them directly. (*Id.* ¶ 23.) The number will appear on the website and any notice the Court approves. (*Id.*) Finally, KCC will establish and monitor a case mailbox where Class Members can submit exclusion requests and other case correspondence. (*Id.* ¶ 24.)

**Proposed Direct Notice Plan.** Under this proposed plan, Class Counsel and/or Royal would provide KCC with all the telephone numbers available in Prospects DM's ("Prospects") records for diabeteshealth.info and www.yourautohealthlifeinsurance.com, which KCC would compile into a single Notice List. (*Id.* ¶ 13.) KCC would de-duplicate telephone numbers in the Notice List so that unique telephone numbers appear once and then KCC would perform a reverse directory search to determine viable postal addresses for each unique telephone number. (*Id.*) After the search, KCC would update the Notice List and de-duplicate to ensure that a single postcard notice is mailed for each unique phone number to the actual user of the phone number, as best as can be determined. (*Id.* ¶ 14.) If the reach of the Direct Notice Plan falls below 70%, then KCC would use digital media advertisements to ensure the Notice Plan reaches at least 70% of likely Class Members. (*Id.* ¶ 15.) KCC proposes to send a postcard notice by U.S. Postal

Service mail for identified physical addresses, with a follow-up address identification plan for any notice initially returned as undeliverable. (*Id*. ¶¶ 16–18.) Class Counsel has submitted a proposed postcard notice. (Loker Decl. ¶ 16 Ex. 5.) Class Counsel "believe[s]" that if direct mail notice is required "it should be accomplished first with the post card notice that directs consumers to the Website." (*Id*. ¶ 17.) Class Counsel submits a separate proposed long form notice, which is presumably the Detailed Notice to which KCC refers in its declaration. (*Id*. ¶ 18 Ex. 6.) Royal believes the long form notice should be sent to consumers instead of the proposed postcard notice. (*Id*. ¶ 19; *see also* ECF No. 102.)

**Proposed Publication Notice Plan.** Under this proposed plan, KCC would cause a "Summary Notice" to appear in *ESPN The Magazine*, which apparently "reaches 7.3% of likely Class Members" with "likely Class members [] 2.2% more likely to be readers of the magazine, as compared to the general adult population." (Peak Decl. ¶ 19.) In addition, KCC would engage in digital media advertising by purchasing either 116 million or 242 million digital media advertising impressions to be distributed via the Google Display Network and Facebook over a period of 60 days, with impressions "targeted to likely Class Members." (*Id*. ¶ 21; Loker Decl. Ex. 7 at 6.)[1] The impressions would appear on desktop and mobile devices and would include an embedded link to the case website. (*Id*.) Class Counsel has submitted the proposed text for *ESPN The Magazine* and three proposed Facebook Ads. (Loker Decl. ¶¶ 11, 14, Ex. 1 (*ESPN The Magazine* and case website text), Ex. 2 (Facebook ads), Ex. 4 (*ESPN The Magazine* formatted text).)

---

[1] Although Peak's declaration proposes that KCC will purchase 242 million digital media advertising impressions, (Peak Decl. ¶ 21), the KCC Dissemination Plan refers only to 116 million impressions, (Loker Decl. Ex. 7 at 6). This discrepancy, while concerning, is ultimately unavailing because the Court rejects the proposed Publication Notice Plan.

**LEGAL STANDARD**

A court must approve the content and form of class notice. Fed. R. Civ. P. 23(d). District courts possess broad discretion to shape class notice to comply with Rule 23. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (holding that it is proper for district courts to "interven[e] in the notice process"). As is relevant here, class notice must satisfy Rule 23(c)(2), which "requires a higher standard of notice for a Rule 23(b)(3) class action." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). For a Rule 23(b)(3) class, a court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(c)(2)(B) requires that class notice contain certain specified information. *Id.*

**DISCUSSION**

**1. Direct Notice is the Best Practicable Notice Under the Circumstances**

Although Plaintiffs propose two alternative plans, a key dispute between the parties concerns the propriety of the Publication Notice Plan. (*Contrast* ECF No. 102 at 3–9 *with* ECF No. 103 at 2–3.) The Court will approve only the Direct Notice Plan.

Class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 628 (1985). Rule 23(c)(2)(B) provides that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Direct individual notice "must be sent to all

class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Plaintiffs propose a Direct Notice Plan that uses the telephone numbers in Prospects' records to perform a reverse directory lookup to ascertain a class member's address, determine the actual user of the telephone number, and provide any approved notice to the class members at the identified address. (ECF No. 100-1 at 11; Peak Decl. ¶¶ 13–18.) Royal conspicuously does not challenge these aspects of the Direct Notice Plan and in fact points to it as a reason to deny approval of the Publication Notice Plan. (ECF No. 102 at 1–3.) Thus, there is no dispute that Plaintiffs are able to identify the names and addresses of class members through reasonable effort, as reflected in the Direct Notice Plan.

Plaintiffs, nevertheless, request that the Court approve the Publication Notice Plan instead of the Direct Notice Plan for two reasons. First, Plaintiffs believe that publication notice is the best form of notice under the circumstances "[g]iven the suspicious 'consent' data provided by Royal[.]" (ECF No. 100-1 at 9.) Plaintiffs draw from their class certification argument that Royal's consent records "containing class members' names and addresses ha[ve] been fabricated while the telephone numbers dialed appear[] to be associated with actual consumers" and thus "reliance upon the addresses therein . . . would be misplaced[.]" (*Id*.) Plaintiffs' argument makes little sense at the class notice stage. The certified classes are defined by the telephone numbers in Prospects' records for calls placed on Royal's behalf and which are associated with two websites. *McCurley*, 331 F.R.D. at 163.[2] These numbers are

---

[2] Royal objects that notice should not be given until Plaintiffs have identified class members, characterizing Plaintiffs' notice plan as "sending notice to everyone listed in any 'metropolitan telephone book.'" (ECF No. 102 at 9–11 (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1099 (5th Cir. 1977)).) Royal's objection rings hollow. Plaintiffs' Direct Notice Plan simply does not call for haphazard divinations about who is and isn't a class member. Although the precise

the most crucial piece of data in this TCPA case. Plaintiffs do not and cannot soundly dispute the validity of the telephone numbers in Prospects' records. Critically, Plaintiffs' proposed Direct Notice Plan does not rely on any "suspicious" address information in the underlying records, but instead relies on KCC ascertaining class members' addresses through the telephone numbers in Prospects' records. Thus, the Court rejects this purported rationale for why the Publication Notice Plan is better than direct notice.

Second, Plaintiffs argue that the Publication Notice Plan is preferable because it "is anticipated to provide notice to at least 70% of the class members in a more cost effective manner." (ECF No. 100-1 at 10.) Royal's counsel has provided the Court with a document Class Counsel sent Royal, in which KCC submitted cost estimates to Class Counsel, which estimates the cost of the proposed Publication Notice Plan to be $222,212.00 and the cost of the proposed Direct Notice Plan to be $776,013.00. (ECF No. 102-1 Brian R. Cummings Decl. ¶ 8 Ex. A at 4.)[3] Plaintiffs do not dispute the veracity of the document, but instead argue that the cost of the Direct Notice Plan "appears to be inequitable" relative to the Publication Notice Plan, particularly when both plans are estimated to have the same 70% reach and Plaintiffs have agreed to cover notice costs. (ECF No. 103 at 4.) The Court is not persuaded by Plaintiffs' assertions.

---

number of class members is not known yet, there is a defined universe of class members and the Direct Notice Plan entails generating a Notice List of class members in order to complete notice. Royal recognizes as much in its own opposition brief. (ECF No. 102 at 2 ("[T]he narrowed classes are specifically defined as a finite group of persons whose telephone numbers reside in [Prospects'] records[.]").)

[3] For reasons unknown to the Court, Plaintiffs did not provide any information regarding the costs of the proposed notice plans with their opening motion. (*See* ECF No. 100.)

"Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). This means that the cost of notice is not the relevant focus of Rule 23 or this Court. *See id.* at 177 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs."); *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *6 (S.D. Cal. Nov. 14, 2011) (noting that it is for the court "to determine what amounts to reasonable efforts under the circumstances of each case, the available information to the parties and possible methods of identification of potential class members," and that "[t]he hallmark of the notice inquiry . . . is reasonableness"); *Kaufman v. Am. Express Travel Related Servs. Co.*, No. 07 C 1707, 2010 WL 3365921, at *3 (N.D. Ill. Aug. 19, 2010) ("[T]he reasonableness requirement pertains to the effort expended to identify class members, not the cost incurred in providing such notification."). It is only when individual notice is not feasible that a court should approve forms of notice that are in combination with or in place of direct individual notice. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication . . . is an acceptable substitute."). Here, the mere fact that Plaintiffs have proposed a Direct Notice Plan means that provision of direct individual notice is not infeasible.[4] Accordingly, the Court concludes that the best notice under the circumstances is direct notice to class members by U.S. mail. Accordingly, the Court will approve only the Direct Notice Plan.

Plaintiffs' motion is silent as to the timing of the Direct Notice Plan. Rule 23

---

[4] It is otherwise readily apparent to the Court that while the Publication Notice Plan may be a more cost-effective method for Class Counsel, the Publication Notice Plan would disseminate notice far beyond the narrow parameters of the class for which Plaintiffs requested class certification.

is similarly silent as to when notice should issue to class members in a certified Rule 23(b)(3) class action. At a minimum, however, class notice "should issue swiftly after class certification[.]" *Pennington v. Fluor Corp.*, Nos. 0:17-cv-02094-JMC, 0:17-cv-02201-JMC, 2019 WL 2537674, at *5 (D.S.C. June 20, 2019). Ultimately, class notice should be completed before dispositive motions are decided. *See Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("The purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated."); *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2016 U.S. Dist. LEXIS 46753, at *2 (N.D. Cal. Apr. 5, 2016) ("Generally, dispositive motions in class actions, which include motions for summary judgment, should be decided after all potential Class Members receive notice."); *see also Brown v. Colegio de Abogados de P.R.*, 613 F.3d 44, 51 (1st Cir. 2010); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000); *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 180 (3d Cir. 1994). Here, the Court granted class certification in March 2019 and the current deadline for filing dispositive motions is November 15, 2019. In the interests of the class receiving notice as swiftly as possible following the Court's March 2019 class certification order and prior to adjudication of any motions for summary judgment, the Court will impose a deadline of November 1, 2019 for Plaintiffs to complete the Direct Notice Plan.

### 2. The Contents of the Proposed Notices

The Court must ensure that any proposed notice satisfies Rule 23's notice requirements. In this action, notice must "concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members

under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs prefer to send a postcard notice to class members. (Loker Decl. ¶ 16 Ex. 5.) Royal objects to the postcard notice and instead requests that the Court require Plaintiffs to send the proposed long form notice Plaintiffs have concurrently submitted to the Court. (*Id.* ¶¶ 18–19 Ex. 6.) According to Royal, the postcard notice "lacks sufficient information." (ECF No. 102 at 13.) The only relevant issue under Rule 23 is whether class notice contains the required information. Having reviewed the proposed notices, Royal raises meritorious notice objections to the postcard notice's lack of required information regarding exclusion. These objections, however, can be addressed through the Court's amendment of the proposed notices, as discussed herein. Royal's remaining objections are otherwise misguided.

      **a.**     **Exclusion - Rule 23(c)(2)(B)(v) and (vi)**

First, Royal objects that the postcard notice does not clearly state that the Court will exclude anyone who requests exclusion. (ECF No. 102 at 12–13.) The Court agrees. Contrary to Plaintiffs' argument in their approval motion, (ECF No. 100-1 at 8), both the postcard and long form notices do not contain this information. (Loker Decl. ¶ 16 Ex. 5 (postcard notice); *id.* ¶ 18 Ex. 6 at 4 (long form notice).) Plaintiffs will be required to add the following language to each proposed notice: "The Court will exclude from the class any member who requests exclusion."

Second, Royal objects that the postcard notice does not identify the time by when class members must request exclusion. (ECF No. 102 at 12.) This objection is accurate. The postcard notice simply states that a class member must request exclusion "by Month XX, 2019." (Loker Decl. ¶ 16 Ex. 5.) The long form notice that Royal prefers similarly uses this placeholder. (*Id.* ¶ 18 Ex. 6 at 4.) The objection is easily resolved because the Court will set the opt-out date as December 2, 2019.

This time period allows for class members to opt out during briefing on any motions for summary judgment under the current schedule and well before the current trial date. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1997) (upholding district court's decision to approve the mailing of class notice when there "were 26 days between the mailing of the notice and the deadline for opting out."); *Huynh*, 2016 U.S. Dist. LEXIS 46753, at *2 (resetting opt-out deadline after the completion of briefing on cross-motions for summary judgment with the deadline set as five days before a hearing on the cross-motions).

Second, Royal objects that the postcard notice does not identify how class members can exclude themselves. (ECF No. 102 at 12.) This objection is accurate. The postcard notice simply informs class members that, "[i]f you do not want to stay in the Class, you must submit a request for exclusion by Month XX, 2019." (Loker Decl. ¶ 16 Ex. 5.) The proposed long form notice does not suffer from this defect because it directs class members to submit exclusion requests to the P.O. Box address that KCC will establish.[5] The proposed postcard notice contemplates providing this P.O. Box address on the front of the postcard. (Loker Decl. ¶ 16 Ex. 5.) Based on

---

[5] The proposed long form notice states that:

To exclude yourself, you must send a letter that states "I want to be excluded from *McCurley v. Royal Seas Cruises, Inc.*, Case No. 3:17-cv-00986". Include your name, address, the cell phone number or numbers that received the calls at issue in this lawsuit, and your signature. You must mail your exclusion request letter so that it is postmarked by Month XX, 2019 to:

McCurley v. Royal Seas TCPA Administrator
P.O. Box XXXX
Louisville, KY 40233-XXX"

(*Id.* ¶ 18 Ex. 6 at 4.) Of course, Plaintiffs will need to update the proposed notices to reflect the opt-out date and the true address.

this, the Court will require Plaintiffs to amend the postcard notices as follows:

> If you do not want to stay in the Class, you must submit a request for exclusion by December 2, 2019 by sending a letter to the P.O. Box address on this postcard. The letter must state that "I want to be excluded from *McCurley v. Royal Seas Cruises, Inc*., Case No. 3:17-cv-00986." Include your name, address, the cell phone number or numbers that received the calls at issue in this lawsuit, and your signature.

This proposed amendment incorporates the exclusion procedure identified in the proposed long form notice. As such, the Court sustains Royal's objections and has addressed them through appropriate amendments.

**b. "The Class Claims, Issues, or Defenses" – Rule 23(c)(2)(B)(iii)**

Royal objects that the postcard notice "omit[s] disclosure of the primary class issue in the case that was the primary focus of class certification briefing — Plaintiffs' avoidance to Royal's consent defense based on their contention of fabricated consent." (ECF No. 102 at 13.) The Court overrules this objection. Rule 23 does not require class notice to identify all issues or defenses that have been or will be presented in a certified class action. The plain language of the Rule instead contemplates that identification of the claims at issue is itself sufficient for class notice. *See* Fed. R. Civ. P. 23(c)(2)(B)(iii). The proposed postcard notice plainly identifies that this case concerns TCPA claims against Royal, describes the nature of the claims in clear and concise language, and indicates that Royal denies the claims. (*See* Loker Decl. ¶ 16 Ex. 5.) Although the long form notice contains more information, including a description of Royal's affirmative consent defense, (*see id.* ¶ 18 Ex. 6 at 2), Plaintiffs are not required to provide the same information in the postcard notice. Thus, the Court overrules this objection.

### c. Royal's Non-Rule 23(c)(2)(B) Objections

Finally, Royal objects that the notices are "factually inaccurate" by stating that class members do not have to come to court unless they choose to do so. (ECF No. 102 at 11.) According to Royal, class members may be subject to the Court's subpoena power to testify at trial. Royal further objects that "the proposed Notice Plan does not alert class members that, in connection with adjudication of Royal's Anticipated Defenses, they may be required to: (1) be deposed; submit to written discovery; and (3) appear or otherwise travel to San Diego." (*Id*.) The Court has concerns that the inclusion of such information could have the effect of discouraging class members to proceed in this class action. In any event, the Court overrules Royal's objection for the simple reason that Rule 23 does not require any of this information to be provided in a class notice.

\* \* \*

Having otherwise reviewed the proposed notices, the Court is satisfied that they include all other information that Rule 23(c)(2)(B) requires, including a description of the nature of the action, the definitions of the classes, that class members may be enter an appearance through an attorney, and the binding effect of any judgment. *See* Fed. R. Civ. P. 23(c)(2)(B)(i), (ii), (iv), (v). Subject to the foregoing amendments, the Court approves the proposed postcard and long form notices. Plaintiffs are authorized to mail class members the postcard notice in the first instance.

### CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion. (ECF No. 100.) The Court **GRANTS** the motion insofar as it concerns the proposed Direct Notice Plan. The Court **DENIES** Plaintiffs' motion insofar as Plaintiffs seek to provide publication notice.

The Court further **ORDERS** as follows:

1. Plaintiffs **SHALL AMEND** their notices in accordance with this Order. Plaintiffs **SHALL FURTHER AMEND** the notices to reflect that any trial date is subject to further change depending on the Court's schedule or the needs of the case.

2. Plaintiffs **SHALL FILE** copies of the amended notices with the Court **no later than August 28, 2019.**

3. Plaintiffs **SHALL COMPLETE** the Direct Notice Plan **no later than November 1, 2019**.

4  Class Members shall opt-out **no later than December 2, 2019**.

**IT IS SO ORDERED.**

**DATED: August 14, 2019**

Hon. Cynthia Bashant
United States District Judge