**GREENSPOON MARDER LLP**
Richard W. Epstein, Esq. (Admitted *Pro Hac Vice*)
richard.epstein@gmlaw.com
Jeffrey A. Backman, Esq. (Admitted *Pro Hac Vice*)
jeffrey.backman@gmlaw.com
200 E. Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Tel: 954.527.2427
Fax: 954.333.4027

Attorneys for Defendant Royal Seas Cruises, Inc.
[additional Defendant's counsel on signatory line]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John McCurley, Individually and and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Royal Seas Cruises, Inc.,<br><br>    Defendant.<br>----------------------------------------------<br>Dan DeForest, Individually and and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Royal Seas Cruises, Inc.,<br><br>    Defendant. | Case No.:  3:17-cv-01988-AJB-AGS<br><br>*consolidated with*<br><br>Case No.:  3:17-cv-00986-BAS-AGS<br><br><br>**ROYAL SEAS CRUISES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION TO STRIKE WITNESS DECLARATIONS, FOR RESTRAINING ORDER, FOR MONETARY SANCTIONS, AND FOR DISQUALIFICATION OF COUNSEL (DE 129)**<br><br>**Date:   April 20, 2020**<br><br>**Ctrm:   4B**<br><br>**HON. CYNTHIA A. BASHANT**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY COURT** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………..……... ii

INTRODUCTION…………………………………………………………………..1

RELEVANT BACKGROUND ...............................................................................5

ARGUMENT ...........................................................................................................8

   A. LEGAL STANDARD FOR COMMUNICATIONS WITH CLASS
      MEMBERS. ................................................................................................8

   B. ROYAL'S COMMUNICATION WITH POTENTIAL CLASS MEMBERS
      WERE NOT MISLEADING, COERCIVE, OR OTHERWISE
      DISRUPTIVE TO A CLASS .......................................................10

CONCLUSION...................................................................................20

i

# **TABLE OF AUTHORITIES**

## **CASES**

115 F.R.D. 506 (E.D. Pa. 1987) ................................................................ 18, 19
751 F.2d 1193 (11th Cir. 1985) .................................................................. passim
*Bobryk v. Durand Glass Mfg. Co., Inc.*,
    No. 12–5360(NLH)(JS),  2013 WL 5574504 (D.N.J. Oct. 9, 2013) ...........9
*Dodona I, LLC v. Goldman, Sachs & Co.*,
    300 F.R.D. 182 (S.D.N.Y 2014) ...............................................................9
*Domingo v. New England Fish Co.*,
    727 F.2d 1429 (9th Cir.) ...........................................................................10
*Erhardt v. Prudential Grp.*,
    629 F.2d 843 (2d Cir. 1980) .......................................................................9
*Golden Door Jewelry Creations, Inc. v. Lloyds*
    *Underwriters Non-Marine Assn.*,
    117 F.3d 1328 (11th Cir. 1997) ...............................................................5, 17
*Guifu Li v. A Perfect Day Franchise, Inc.*,
    270 F.R. D. 509 (N.D. Cal.2010) .............................................................10
*Kirola v. City & Cnty. of San Francisco*, No. C,
    07-03685 SBA, 2010 WL 3505041 (N.D. Cal. Sept. 7, 2010).....................8
*Moreno v. Autozone, Inc.*,
    No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ...........9
*O'Connor v. Uber Technologies, Inc.*,
    2014 WL 1760314 (N.D. Cal. 2014) .........................................................10
*Parker v. Pepsi-Cola Gen. Bottlers, Inc.*,
    249 F. Supp. 2d 1006. (N.D. Ill. 2003) ...................................................3, 17
*Tedesco v. Mishkin*,
    629 F.Supp. 1474 (S.D.N.Y.1986) ...................................................... passim

## **Other Authorities**

*Haffer*,
    115 F.R.D. ...............................................................................................20
McLaughlin on Class Actions § 11:1 (16th ed.).............................................8

1

2

## I.     Introduction

3

After this Court granted Plaintiffs' Motion for Class Certification and set

4

a schedule for remaining discovery, Royal sought to develop factual evidence to

5

rebut the supposed "manufactured consent" theory that the Plaintiffs raised in

6

that motion for the first time in this litigation.[1]  In doing so, a single customer

7

service agent made telephone calls to individuals that purchased a Royal

8

vacation package and whose information was associated with

9

www.diabeteshealth.info.  After speaking with only 23 people – 19 of whom

10

may be considered "class members" – and in preparation for trial and other

11

pretrial motions, Royal supplemented its Rule 26 disclosures to identify three

12

additional witnesses and declarations.[2]

13

Upon receipt of the supplemental disclosures, counsel for Plaintiffs

14

contacted counsel for Royal and claimed that the listing of these individuals and

15

their declarations was improper; Plaintiffs' counsel claimed to represent these

16

three individuals, along with every single other person of the "Class" – a Class

17

they never identified and have since admitted they cannot and will not identify.

18

19

_____

20

[1] The Consolidated Complaint (DE 31) is devoid of any allegation that consent

21

was manufactured, which "theory" was never raised by Plaintiffs during pre-
certification discovery.   And once Royal became of aware of it, Royal

22

immediately rebutted the theory in Royal's Opposition to the Motion for Class
Certification (DE 58), resulting in Plaintiffs withdrawing the "manufactured

23

consent" theory as to thousands of websites with the exception of one.

24

[2] The fact that Royal voluntarily disclosed these witnesses and the declarations
contradicts the conclusory labels and accusations made by Plaintiffs' counsel of

25

secretive, surreptitious, and nefarious conduct.  If, as they suggest, Royal was

26

conducting some underground campaign to convince people not to participate in

27

this class action, it would make little sense to disclose these witnesses and
declarations to counsel and the Court.

28

1

*See* DE 132-1 at 1-2.[3]  In response, while not agreeing with Plaintiffs' counsel, counsel for Royal nonetheless agreed that no additional contact would occur. Royal also agreed to withdraw the three declarations, proposing, as a reasonable way to resolve the dispute, that the three individuals be deposed; Plaintiffs' counsel refused.[4]  After all, Plaintiffs' counsel continues to assert a "manufactured consent" theory, yet is now is on notice that actual people have admitted visiting diabeteshealth.info, consenting to receive telephone calls for information about a Royal vacation package.  Does counsel not have an ethical duty to fully investigate these facts?[5]  Do facts and the truth not matter?

Without debating who is right or wrong, and rather than work with counsel to find a way to address the merits of the facts developed by Royal,

_____

[3]  In addition to agreeing that they cannot identify the Class, Plaintiffs never sent notice to the Class.  Although Plaintiffs claim to have identified and sent notice to 70,295 individuals, despite more than six requests, Plaintiffs' counsel have yet to provide Royal's counsel with the supposed "class list" or identification of a single one of their supposed "clients."  *See* Email from T. Wheeler to B. Cummings (Apr. 2, 2020) (**Ex. 1**).

[4]  To date, Plaintiffs' counsel have not agree to any discovery of "class members."  Nor have counsel for Plaintiffs provided any statements from their supposed "clients" that any of the three identified witnesses were tricked or deceived in any way.  One would presume that Plaintiffs' counsel, under the circumstances they describe in their First Amended Motion to Strike Witness Declarations, for Restraining Order, for Monetary Sanctions, and for Disqualification of Counsel (DE 129) (the "Motion"), would have contacted their supposed "clients" after being made aware of such "egregious," "unlawful," and "unethical" conduct of their adversary.

[5]  As it currently stands, the Plaintiffs have the testimony of Mr. McCurley and the testimony of supposed expert Nathan Bacon (being challenged) who inspected only Mr. McCurley's opt-in record.  Conversely, four people have signed declarations attesting to opting in on diabeteshealth.info, and more than a dozen others have stated on recorded calls that they either did in fact opt in on that website, "probably" did, or "don't remember" doing so; not a single one said they never did.  *See* DE 143-8.

Plaintiffs instead seek to parlay the fact that Royal spoke with 19 potential class members – also Royal's customers – into a tactical advantage, seeking the highly prejudicial sanction of disqualification of Royal's chosen counsel that have been defending it for nearly three years in this case that is scheduled for trial to commence on August 18, 2020.[6] (DE 113)  But there was/is no secret intentional campaign to undermine class membership or other egregious conduct justifying such drastic relief.[7]

But regardless of who is right or wrong here, Royal already agreed to not make any additional telephone calls – more than 2 months ago.  Royal also agreed not to use the declarations, and promptly (and voluntarily) produced a list of all persons called, a copy of the script used for the calls, recordings of every call, and made its representative available for deposition by Plaintiffs so they could inquire about all aspects of Royal's communications and these documents. Royal was also willing to reimburse Plaintiffs' reasonable legal expenses incurred researching and preparing their original Motion to Strike (DE 120). But Royal opposes the extreme sanctions Plaintiffs seeks in their amended Motion, including additional unnecessary legal expenses and the wholly unwarranted and disproportionate sanction of disqualification.

---

[6] At no point during the meet and confers did Plaintiffs' counsel suggest that they would be seeking disqualification of counsel as a remedy.  One must also question the seriousness of their belief that they are entitled to such drastic sanctions when, despite being able to Notice the Motion within nine days of the first conference, they instead noticed it more than 120 days out from the filing. *See* DE 120 (filed Jan. 31, 2020, with a June 2, motion date).

[7] As noted in a case cited by Plaintiffs in their Motion in which the court declined to disqualify counsel for conduct the court found to be "unethical," a court must be "sensitive to a client's right to be represented by the counsel of his choice, and the attending need to be cautious in applying this sanction." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1013. (N.D. Ill. 2003).

Plaintiffs' Motion relies almost entirely on *Kleiner v. First Nat. Bank of Atlanta*, the only case they cite in which disqualification of counsel was imposed as a remedy. 751 F.2d 1193 (11th Cir. 1985). This case is nothing like *Kleiner*. There, a bank-defendant surreptitiously contacted 3,000 class members (its active borrowers) after class notice was sent, in violation of a specific court order, for the express purpose of persuading them to opt out of the class, and 2,800 of them (93%) did so. *Id* at 1197-98. The bank and its counsel deliberately timed the calling campaign to coincide with the district judge's vacation. *Id.* at 1197. By comparison, Royal attempted to contact approximately 560 of its customers whose telephone numbers were associated with diabeteshealth.info in the consent records. A single Royal customer service agent made the calls. She spoke to 23 customers, only 19 of whom would be considered class members.[8] The express purpose of the calls was to ascertain how they became Royal customers, particularly if they visited the website and consented to be called. There was no reference whatsoever to a class action or this case, and the calls were neither designed nor intended to dissuade persons from participating in class membership. Indeed, at the time, Plaintiffs had not sent out any notice to class members and still to date, have yet to provide any supposed "class list" to Royal. Nonetheless, Plaintiff contends "[t]he similarities between this matter and the secret phone campaign in *Kleiner* are striking." Mot. at 11. Clearly, they are not.

Royal has done nothing "illegal" as Plaintiffs repeatedly exclaim in their Motion. Nor has Royal engaged in any of the egregious conduct described in

---

[8] Plaintiffs claimed to represent a Class of 2.3 million members (DE 132-1 at 14) and a Subclass of 80,000 members, so Royal contacts with these 19 persons represents .0008% (8/10,000th of 1%) of Class members and .02% (1/50th of 1%) of Subclass members.

the cases cited by Plaintiffs: it never sought to coerce, dissuade, or discourage class members from participation in a class, never suborned perjury from a witness, never paid a witness for testimony, never prevented a witness from being deposed, and never violated an express court order governing communications with class members.  But, even that very conduct in those cases did not warrant the extreme sanction of disqualification that Plaintiffs seek here. *See e.g., Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assn.*,  117 F.3d 1328, 1335 n. 2 (11th Cir. 1997) (barring defendant from using testimony of paid witnesses "adequately penalized" defendant for its violation of the rules of professional conduct).

## II.    Relevant Background

The issues raised in Plaintiffs' Motion arise from and begin with the arguments relating to "manufactured consent" raised for the first time in Plaintiffs' Motion for Class Certification and then followed by the reliance of "proffered" statements by Plaintiffs' counsel and incorporated into this Court's Order granting class certification a year ago.  *See* DE 87 at 59-60.  Because this case involves, among other defenses, Royal's consent defense, Royal sought facts that would bolster this defense and defeat Plaintiffs' newly-asserted theory of manufactured consent: persons with knowledge of visiting and completing consent forms on one of the two websites identified in the class definition. Following the entry of a post-certification discovery schedule, Royal conducted searches of its own records to find customers who purchased a vacation package after being transferred to Royal and whose telephone numbers matched persons in the consent records associated with diabeteshealth.info.   Depo. Missy Hanson (Feb. 18, 2020) (**Ex. 2**) at 22:5-13.   Approximately 560 customers associated with diabeteshealth.info who purchased a Royal product

before, during, and after the class period were identified.[9]  *Id.* at 21:1-3.  Of the telephone calls made, the Royal customer service agent only spoke with a total of 23 people – only 19 of which can be considered class members.   The recordings of each and every communication with these 23 people were produced by Royal so the discussions exist in their real and natural form, but it is clear that customers were specifically asked if they recalled visiting diabeteshealth.info and providing their telephone numbers to be called, and if they would be willing to provide that information in a survey that would be submitted through a website and generate a declaration.  *Id.* at 38:20-39:6, 50:21-51:20.  None of the telephone calls sought to discourage participation in a class action or otherwise criticize Plaintiffs, their counsel, or the case.

Six customers confirmed they purchased a Royal cruise package after completing a form on diabeteshealth.info consenting to be called, and agreed to provide declarations.  *Id*. at 35:1-20.   Four of the six customers provided declarations to Royal to this effect, including the three declarations that Plaintiffs seek to have stricken in their Motion and Royal has already agreed to withdraw.  *See* DE 129-2 at 15-22.  Additionally, a declaration was provided by Cecelia Hetchler, who is not a class member since she was a Royal customer prior to the class period.  *See* Decl. Cecelia Hetchler (Oct. 2, 2019) DE 165-2 at ¶2.  Three other Royal customers who were not class members were among the 23 customers contacted, including Charles Barn, who confirmed he went to diabeteshealth.info and consented to be called (*see* Transcrs. of Call Recordings (**Ex. 3**) (recordings lodged with Court – *see* DE 144).

_____

[9] This was by no means an exhaustive search.  Indeed, there are likely hundreds if not thousands of additional leads associated with the website that purchased a vacation package.  Again, the idea was locate potential witnesses, not identify every single person with the hopes of convincing them to opt out of a class
(continued...)

Sufficiently in advance of the discovery deadline, Royal disclosed the identities and declarations of the three customers to Plaintiffs in Royal's Second Supplemental Disclosures served on January 17, 2020. *See* DE 129-2 at 8-22. Plaintiffs' counsel objected to the disclosures, leading to multiple meet and confers. *See* DE 129-2 at 24. But Plaintiffs' counsel would not agree to any resolution short of wholesale rejection of all information obtained. Instead of agreeing to some form of discovery to address Plaintiffs' manufactured-consent theory – truth Plaintiffs' counsel should have sought before advancing such a theory – Plaintiffs opted to make exaggerated accusations about Royal and its counsel in their original Motion to Strike (DE 120). On February 10, 2020, Royal filed motions to conduct limited discovery of class members and to modify the Scheduling Order (DEs 123[10] and 124). On February 18, 2020, Royal provided Plaintiffs' counsel with a list of all persons called, a copy of the script used for the calls, recordings of every call, and associated documents, and Plaintiffs conducted a deposition of its representative to inquire about all aspects of Royal's communications with its customers who may be class member using these documents. *See* Ex. 2. On March 4, 2020, Plaintiffs filed their amended Motion, using the deposition testimony to make new but similarly-exaggerated accusations about Royal and its counsel, but adding no new legal arguments, authorities, or analysis.

---

(...continued)
action in a case where notice had not even been sent yet.

[10] To the extent Royal cited the declarations from three customers who may be class members as evidence of consent in this motion and in Royal's Motion to De-Certify Class (DE 143), Royal has agreed to withdraw those arguments and declarations. *See* Partial Withdrawal of Second Supplemental Disclosures (April 6, 2020) (**Ex. 4**).

## III.   <u>ARGUMENT</u>

First, the truth matters; facts matter.  What is clear is that real people opted in on diabeteshealth.info consenting to be contacted.  That cannot be overlooked in this procedural battle.  Second, Royal did nothing unlawful, unethical, or nefarious.  There was no "secret campaign."  Royal was developing evidence.  Third, Royal did not engage in any communication designed to mislead, coerce, or otherwise encourage people to opt-out of a class.  Fourth, Royal disclosed both the three witnesses it sought to rely upon and the obtained declarations in its supplemental Rule 26 disclosures.  Fifth, Plaintiffs had not sent out class notice at the time of the communications.  Sixth, counsel did not communicate with any class member.  Seventh, not all people contacted were or are class members.

Royal, despite disagreeing with the merits of Plaintiffs' allegations in the Motion, has agreed to a reasonable remedy for its contacts with persons who may be class members after class certification.  But Royal's conduct does not warrant the drastic sanctions sought by Plaintiffs, including disqualification of Royal's counsel, which is wholly disproportionate based on the very authorities they cite in the Motion.

### a.  Legal Standard for Communications with Class Members

Contrary to Plaintiffs' unsupported statements, there is no per se rule prohibiting *all* communications post certification with class members. *Kirola v. City & Cnty. of San Francisco*, No. C 07-03685 SBA, 2010 WL 3505041, at *1 (N.D. Cal. Sept. 7, 2010) Generally, defendants are permitted post-certification to communicate with class members.  McLaughlin on Class Actions § 11:1 (16th ed.). While communications related to the litigation are viewed differently, courts are divided as to when the attorney-client relationship between class counsel and members arises, and its scope:

> There is some disagreement among courts as to when, for purposes of this rule, the attorney-client relationship between class counsel and class members begins: at the time of class certification, or after the opt-out period has ended. The majority of courts, including at least one court in this district, have found that class certification itself creates an attorney-client relationship, at least 'for the limited purpose of aiding prospective class members in deciding whether or not to join in the class action.'

*Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y 2014) (quoting *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1483 (S.D.N.Y.1986)); *but see Erhardt v. Prudential Grp.*, 629 F.2d 843, 845 (2d Cir. 1980) (privilege attaches when the class is certified prohibiting defendants' communications with class members); *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007) (same).  And *Tedesco*, a case Plaintiffs rely upon in their Motion, notes that a "limited" attorney-client relationship exists between plaintiffs' attorney and absent class members after certification until it is determined they are going to participate in the class.  629 F. Supp. at 1483.  But some courts have stated just the opposite as to the position asserted by Plaintiffs:

> "Further, certain language in [citations omitted] is inconsistent with the majority of case law that holds that the attorney-client relationship with putative class members 'does not begin until the class has been certified and the time for opting out by a potential member of the class has expired.'"

*Bobryk v. Durand Glass Mfg. Co., Inc.*, No. 12–5360(NLH)(JS),  2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013) (quoting ABA Committee on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 3 (Apr. 11, 2007)).

The principal concern of courts in limiting parties' communications with class members is to avoid conduct which is misleading or coercive to class

members in their decision to remain in the class, or is otherwise false, misleading or confusing. *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir.), modified, 742 F.2d 520 (9th Cir. 1984); *O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314, *6–7 (N.D. Cal. 2014). If an improper communication with a class member occurs, a court's exercise of discretion includes consideration of an appropriate remedy for improper communications. *See Guifu Li v. A Perfect Day Franchise, Inc*., 270 F.R. D. 509, 518 (N.D. Cal.2010) (second proposed notice was an appropriate remedy for defendant soliciting opt outs from class members).

Thus, orders entered by courts concerning post certification communications vary based on whether class members have been misled or coerced, in some courts whether class notice was sent, whether the opt-out period expired, and what remedies are appropriate.

### b. Royal's Communications with Potential Class Members Were not Misleading, Coercive, or Otherwise Disruptive to a Class

To gather additional evidence of consent, including additional evidence to contradict the manufactured consent theory, Royal attempted to contact some customers associated with the diabeteshealth.info website in the consent records. The calls were made post-class certification, but before class notice was delivered, before any opt-out period, and before Plaintiffs identified a class list.[11] The purpose of the calls was solely to ask customers if they went to one of the websites described in the class definition and gave their consent to be called. Royal communicated with a total of 23 customers, only 19 of whom are class members. As such, Royal communicated with 19 potential class members for whom Plaintiffs' counsel can claim to assert an attorney-client relationship, at least "for the limited purpose of aiding prospective class members in deciding

whether or not to join in the class action." (*Tedesco*, 629 F. Supp. at 1483). Royal did nothing to dissuade or influence class members or attempt to discourage their participation.[12]

### 1. *Kleiner* Does not Support Plaintiffs' Position

In asking the Court to impose drastic sanctions upon Royal for communications with 19 potential class members, Plaintiffs rely primarily and heavily upon *Kleiner*.[13]  This is the only case in their Motion in which disqualification of counsel was imposed as a sanction for improper communications with class members.  Interestingly, the court ultimately reversed disqualification of one attorney and there was a dissent as to disqualification of any attorneys (a fact Plaintiffs conveniently ignore).  *See* 751 F.2d at 1211-12.  Plaintiffs insist, in conclusory fashion, that "[t]he similarities between this matter and the secret phone campaign in *Kleiner* are striking," and "this case is analogous to *Kleiner*."[14]  But they are not at all the same.  *Kleiner* is factually distinguishable on many levels, and does not support disqualification or the other extreme sanctions requested in this case.

First and foremost, the defendant-bank in *Kleiner* contacted class members in direct violation of a court order.  *Id*. at 1196.  Specifically, a month after class certification, the defendant subpoenaed 25 class members for deposition and plaintiffs sought a protective order.  *Id*. After a hearing, the court considered limiting defendant to obtaining affidavits from class members but,

_____

(...continued)

[11]  Plaintiffs have since admitted they cannot do so.

[12] Royal has disclosed and provided the actual call recordings and transcriptions of each call so the Court may objectively judge the nature of the communications, rather than relying upon the subjective viewpoints of the parties.  *See* DE143-8 (transcriptions) and DE 44 (recordings).

[13] *See* DE 120-1, at 5-6, 8, 10-11, 13.

[14] *Id*. at 11, 14.

after opposition from plaintiffs, entered an order allowing defendant only to conduct five depositions of class members, prohibiting defendants from *ex parte* communications with class members. The bank contacted 3,000 class members out of 8,600 (35%) after the district court's entry of an order prohibiting those very communications. *Id*. at 1196-98.

Second, "[t]he class consisted of Bank borrowers, many of whom were dependent on the Bank for future financing," and hence were particularly vulnerable to coercion and persuasion of the bank. *Id*. at 1202. Indeed, in seeking the protective order, class counsel had expressed concerns that unilateral contacts by the bank would intimidate eligible class members worried about their credit rating and ability to borrow in the future. *Id.* at 1196. As the district court found, the class member included bank customers "'who did not have convenience access to other credit sources'." *Id*. 1202.

Third, the specific objective of the bank's communications was to – secretly – persuade class members to withdraw from the class. *Id.* In fact, the bank's executives orchestrated a wide-scale "communication program," directing a team of 175 loan officers to call potential class members and persuade them to withdraw from the class. *Id.* at 1197-98. The bank's counsel in the case approved the calling campaign, and, while warning it was "likely to provoke the wrath of the court," collaborated in all aspects of the undertaking which was scheduled to "coincide with the district judge's vacation." *Id.* at 1197. "Secrecy and haste shrouded the undertaking … Neither the court nor opposing counsel were alerted to the telephone campaign, as was [the attorney's] intent." *Id.* Using its team of loan officers, the bank contacted 3,000 class members and persuaded 2,800 of them – nearly one-third of the entire class – to opt out of the class. *Id*. at 1198.

As the bank's counsel predicted, the wrath of the district court was indeed provoked after she returned from vacation and was apprised of the bank's calling campaign during a hearing by plaintiffs' counsel, who had been contacted by several class members about the calling campaign.  *Id.*  After a three-day evidentiary hearing, the court entered an order disqualifying the bank's attorney and its in-house counsel who had "knowingly taken part in the illegal opt-out campaign," and for misrepresenting facts in a brief.  *Id*. at 1198-99.  The court also imposed a $50,000 fine as sanctions on the bank's attorney and law firm, and ordered them and the bank to pay plaintiffs' legal expenses.  *Id.* Upon review, the Eleventh Circuit affirmed the monetary sanctions, citing the bank's counsel's "arrogance" and finding the amount in controversy commensurate with the fine.  *Id*. at 1210.  The court affirmed the sanction of disqualification of the bank's counsel based on the "uncontroverted proof of [his] wrongdoing" and the existence of co-counsel to defend the bank that would mitigate prejudice to the bank by the loss of its chosen counsel.  *Id*.  However, the court reversed the district court's order disqualifying the bank's in-house counsel, even though the district court found he had lied on the witness stand, and, in a partially dissenting opinion, Judge Hill disapproved affirmance on disqualification of the bank's outside counsel as a sanction.  *Id*. at 1210-12.

In this case, Royal's communications with 19 class members is not remotely comparable to the egregious conduct of the defendant and its counsel in *Kleiner*.  Unlike *Kleiner*, Royal and its counsel did not knowingly engage in any improper conduct, let alone act in direct violation of an order from this Court.  Nor was this a "secretive campaign" designed to obtain a large volume

of opt outs from class members after notice was delivered.[15]   Indeed, Royal disclosed the witnesses and declarations directly to the Plaintiffs.  Nor did Royal attempt to arrogantly defend or justify its actions but instead sought to find a mutual remedy, agreeing to withdraw the declarations and disclosing to Plaintiffs all evidence relating to the calls made.

As demonstrated by the call recordings and other evidence Royal disclosed to Plaintiffs, Royal did not seek to persuade its customers to opt-out of a class – how could they when the Class had not been identified an no notice was sent.  Royal made no reference to any lawsuit, or the existence of a class or class action.  Unlike *Kleiner,* where a team of 175 loan officers called 3,000 class members (35% of all class members) and persuaded 2,800 of them (33% of all class members) to opt out of the class, a single Royal agent called 560 customers (.02% of the Class, and .6% of the Subclass) and she spoke to a total of 19 potential class members (.0008% of the Class and .02% of the Subclass). None of them opted out of the classes or even expressed awareness they were in a class. Royal's communications were not even "designed to target class members."  Rather, Royal called its customers – any of them it could quickly identify – who purchased a vacation package after being transferred to Royal by Prospects as a lead coming from diabeteshealth.info, whether before, during, or after the class period.  Unlike the class members in *Kleiner* who were active borrowers of the bank-defendant, the 19 class members contacted by Royal were not vulnerable to coercion and persuasion by Royal.  As reflected by the call

---

[15] As noted in *Kleiner*, the class members who opted out of the class as a result of the bank's calling campaign collectively accounted for $694 million in loans with the bank. *Id*. at 1198.

recordings, many of them either forgot about their vacation package, others had already traveled, and some simply said they were too busy to speak.[16]

Thus, none of material facts underlying the district court's order disqualifying counsel in *Kleiner* are present here. Royal and its counsel did not engage in any activity to diminish class membership, let alone conduct an "illegal opt-out campaign" as in *Kleiner*. Royal and its counsel did not make any misrepresentation of fact in a brief filed with the Court, as in *Kleiner*. There is no "uncontroverted proof" of wrongdoing by Royal or its counsel. They did not lie on the witness stand, like the bank's in-house counsel in *Kleiner*. They did not engage knowingly in any improper conduct. When Plaintiffs raised issues with Royal's post-certification communications with class members, Royal immediately stopped, and agreed to the primary relief sought by Plaintiffs in their Motion long before they filed it. Royal has now formally withdrawn the declarations with class members, and is willing to reimburse Plaintiffs' legal expenses associated with its original motion to strike.

Plaintiffs' conclusory comparison of this case to *Kleiner* lacks substance, as they cannot in good faith equate the conduct of Royal and its counsel in this case to the egregious conduct of the bank and its counsel in *Kleiner*. And while the *Kleiner* court held, with a dissenting opinion, that disqualification was

---

[16] The recordings also reflect there was nothing coercive about the calls or the procurement of the declarations: customers not wishing to speak were politely bid "goodbye," and those who agreed to provide declaration were not kept on the hold and pressured to sign them – Royal simply sent six persons a document they could review, sign, and send at their leisure, if at all. The fact that only four of the 23 customers the agent spoke to returned declarations reflects the voluntary, non-coercive nature of the calls.

appropriate for the bank's outside counsel only,[17] the appellate court noted that this extreme sanction was mitigated by the existence of co-counsel for the bank that could step in and defend the bank.  Thus, even if similar facts supporting disqualification of Royal's counsel were present here – which they clearly are not – the mitigating factor noted in *Kleiner* is not present, as Royal has no co-counsel and is relying solely on its present chosen counsel for representation through trial.

### 2. The other Cases and Argument in Plaintiffs' Motion Do not Support Disqualification or other Extreme Sanctions

Plaintiffs' contention that extreme sanctions must be imposed on Royal is based solely on their inflammatory rhetoric; it is contrary to the very legal authorities cited in the Motion.  If anything, the sanctions imposed by the courts in other cases cited by Plaintiffs demonstrate that their Motion was unnecessary.  Specifically, Royal has already agreed to part with the "fruit of the poisonous tree" and withdraw the declarations from potential class members.  At worst, Plaintiffs have noted an unintentional violation of ethical rules prohibiting an attorney, or here a party, from communicating with known represented parties without their attorneys present, assuming the 19 Royal customers are class members.[18]  But, as reflected in a case cited in the Motion, a defendant that was barred from using testimony of a witness *who was paid for*

---

[17] Again, the *Kleiner* defendants' contacts caused actual harm to the class, reducing class participation by one-third, while in this case, there has been no opt-outs to date (*see* Ex. 1) and no discernible prejudice, harm, or impact to class participation caused by Royal's contacts with 19 class members.

*the testimony*, in violation of ethical rules, was "adequately penalized." *Golden Door*, 117 F.3d at 1335 n. 2

None of the other cases in Plaintiffs' Motion found disqualification of counsel as an appropriate penalty for sanctionable conduct. And all of those cases involved conduct that is substantially egregious, unlike the conduct at issue here. For instance, in *Parker*, an attorney representing the employer-defendant in that employment discrimination case subpoenaed and deposed an employee in the absence of an attorney representing him in a related case. 249 F. Supp. 2d at 1008-09. In moving for sanctions for violation of the no-contact rule, the plaintiffs sought an order barring use of the testimony, prohibiting the defendant from taking any further depositions, and awarding attorney's fees and monetary sanctions. *Id.* at 1012. The court, while finding the defendant's counsel's conduct "unethical," barred defendant from using the testimony but permitted defendant to depose the same witness in the presence of counsel, and awarded attorney's fees to the plaintiffs limited to the filing of the motion. *Id*. at 1012-13. While the Court considered disqualification of the defendant's counsel, the court declined to impose that extreme sanction, noting "we are sensitive to a client's right to be represented by the counsel of his choice, and the attending need to be cautious in applying this sanction." *Id*. at 1013.

Likewise, in *Tedesco*, an attorney representing himself in class securities litigation engaged in an ongoing pattern of interference and obstructions with

_____

(...continued)

[18] Counsel did not speak with any class member. And given that Royal did not communicate with class members regarding class membership, Royal did not violate any rules relating to an attorney-client relationship between Plaintiffs' counsel and class members that exists "for the limited purpose of aiding prospective class members in deciding whether or not to join in the class action." *Tedesco*, 629 F. Supp. at 1483.

the class action, sending communications to induce class members to opt out of the class, concealing essential facts and committing perjury in testimony before the court, and suborning perjury of another witness in a deposition and evidentiary hearing. 629 F. Supp. at 1476-1482. The attorney, after class notice had been sent out by plaintiffs, mailed letters to 117 class members seeking to discourage their participation in the class. *Id*. at 1476-77. Plaintiffs sought sanctions after being contacted by several class members who received the letters. *Id*. at 1479. In considering sanctions, the court found that preventive action was necessary because the defendant, both as an attorney and as a litigant, "is likely to continue his unlawful attempts to subvert the conduct of the class action by false, misleading and coercive communications to class members." *Id*. at 1484. However, the court did not even consider disqualification, and instead entered an order restraining defendant from communications with class members, allowed plaintiffs to submit a corrective notice, imposed a punitive sanction of $10,000, and awarded plaintiffs their attorney fees and costs. *Id*. at 1487.

Similarly, in *Haffer v. Temple University*, the court sanctioned a defendant-university and its attorney for improperly communicating with class members who were students of the university to discourage them from meeting with class counsel in connection with the case. 115 F.R.D. 506, 507-512 (E.D. Pa. 1987). In that case, the defendants' attorney was found to have prepared and distributed a memo to class members that was "false and misleading in several respects," to have prevented class counsel from conducting a deposition of a witness for defendant, and to have contacted class members after the court entered an order specifically barring such communications. *Id.* at 508-510. Defendants sent the memo to class member even though Plaintiffs' counsel had specifically objected to it being sent and received assurances from defendant

that it would not be distributed.   *Id.* at 508.   After being informed by a class member who received a copy of the memo that they had been sent anyway, plaintiffs' counsel obtained a hearing from the court, which entered an order barring further communications by the defendant with class members.   *Id.* Finding the defendant's attorney's conduct to be in "bad faith," "inexcusable," and "intolerable," and that he and the defendant improperly communicated with class members to discourage participation in the class, the court imposed only monetary sanctions and permitted plaintiffs' counsel to submit a corrective notice to certain class members. *Id*. at 512-15.   However, the court declined the plaintiff's request to prohibit the defendant from deposing class members, which the court found was "not a narrowly drawn response to defendants' improper conduct, and could severely prejudice Defendants' trial preparation." *Id*. at 514.

None of the egregious conduct by defendants in these cases relied upon by Plaintiffs in their Motion support the extreme sanctions they seek.   Royal's communications with 19 potential class members from July to October 2019 cannot be deemed a "pattern of interference and obstructions with the class action" like the defendant in *Tedesco*, whose counsel was not disqualified or subject to extreme sanctions despite committing and suborning perjury before the court.   And Royal did nothing to hide its communications with potential class members, like these cases and *Kleiner* where plaintiffs found out about them from class members. Here, Plaintiffs found out about Royal's communications with 19 class members from Royal itself.

Additionally, Royal has not engaged in "bad faith," "inexcusable," and "intolerable" conduct like the defendant and its counsel in *Parker*, where the court expressly found the defendant's attorney violated an order explicitly prohibiting communications with class members, yet did not impose the drastic sanction of disqualification.   Indeed, like the court in *Parker*, this Court must be

sensitive to Royal's right to be represented by the counsel of it choice, and "the attending need to be cautious in applying this sanction," which is grossly disproportionate to the conduct at issue in this case, and must instead be a "narrowly drawn response to defendants' improper conduct." *Haffer*, 115 F.R.D. at 415.

Plaintiffs propose draconian measures to penalize Royal as a means of pursuing a tactical advantage in litigation rather than evidence that might support their claims at trial. Royal has agreed to an appropriate remedy under the circumstances of this case – to refrain from communications with its customers relating to the litigation, to withdraw the declarations of the three class members, and to reimburse Plaintiffs for their reasonable legal expenses associated with their initial motion. Royal has thus already agreed to be "adequately penalized" for its post-certification communications with 19 class members, which again equates to .0008% of all Class members. There is no further relief or sanctions that are warranted by its harmless conduct that ceased more than six months ago, and has had no impact whatsoever on class members' participation in this case considering Plaintiffs just moved to decertify the class and only sent notice to the subclass on March 10, 2020.[19]

## CONCLUSION

For all of the foregoing reasons, Royal requests that the Court enter an Order denying Plaintiffs' Motion as moot to the extent it seeks relief already afforded – Royal's withdrawal of the three declarations and an

acknowledgement that it has ceased, and will not resume, communications with class members – and otherwise limiting Plaintiffs' recovery of attorneys' fees and costs to those expenses incurred in bringing their original motion.

Respectfully Submitted,

**GREENSPOON MARDER LLP**

JEFFREY A. BACKMAN (Fla. Bar No. 662501)
Jeffrey.Backman@gmlaw.com
RICHARD W. EPSTEIN (Fla Bar No. 229091)
Richard.Epstein@gmlaw.com
200 E. Broward Blvd, Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954.527.2427
Fax: 954.333.4027
*Admitted Pro Hac Vice*

*/s/ Brian R. Cummings*
BRIAN R. CUMMINGS (Fla. Bar No. 25854)
Brian.Cummings@gmlaw.com
401 E. Jackson St., Suite 3650
Tampa, Florida 33602
Tel: 813.769.7020
Fax: 813.426.8582
*Admitted Pro Hac Vice*

BLAKE L. OSBORN, ESQ. (CA SBN 271849)
Blake.Osborn@gmlaw.com
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 323.880.4522

_____
(...continued)
[19] Royal's counsel has requested at least six times a copy of the "class list" – all people to whom class notice was sent, yet Plaintiffs' counsel has refused to provide it.  *See* Ex. 1.  One of the reasons, though no reasons need to be provided in order for Royal to be permitted to have a copy of the list, is to see if any of the 19 individuals contacted by Royal are, in fact, "class members."

Facsimile: 954.771.9264

Attorneys for Defendant *Royal Seas Cruises, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document is being served this 6th day of April 2020, on all counsel of record identified on the Service List below in the manner specified.

/s/ *Brian R. Cummings*
Brian R. Cummings, Esq.

## **SERVICE LIST**

Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
Kevin Lemieux, Esq.
kevin@westcoastlitigation.com
HYDE & SWIGART
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Abbas Kazerounian, Esq.
ak@kazlg.com
Matthew M. Loker, Esq.
ml@kazlg.com
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue
Costa Mesa, CA 92626
Telephone: (800) 400-6808

Facsimile: (800) 520-5523

*Attorneys for Plaintiff John McCurley*

Todd M. Friedman, Esq.
Adrian R. Bacon, Esq.
Meghan E. George, Esq.
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
(877) 206-4741
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com

*Attorneys for Plaintiff Dan DeForest*