| KAZEROUNI LAW GROUP, APC | LAW OFFICES OF TODD M. FRIEDMAN, P.C. |
|---|---|
| Abbas Kazerounian, Esq. (249203) | Todd M. Friedman, Esq. (216752) |
| ak@kazlg.com | tfriedman@toddflaw.com |
| Matthew M. Loker, Esq. (279939) | Adrian R. Bacon, Esq. (280332) |
| ml@kazlg.com | abacon@toddflaw.com |
| 245 Fischer Avenue, Unit D1 | 21550 Oxnard Street, Suite 780 |
| Costa Mesa, CA 92626 | Woodland Hills, CA 90212 |
| Telephone: (800) 400-6808 | Telephone: (877) 206-4741 |
| Facsimile: (800) 520-5523 | Facsimile: (866) 633-0228 |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN MCCURLEY AND DAN DEFOREST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROYAL SEAS CRUISES, INC.,**<br><br>Defendant. | **Case No.:** 17-cv-986 BAS (AGS)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE WITNESS DECLARATIONS, FOR RESTRAINING ORDER, FOR MONETARY SANCTIONS, AND FOR DISQUALIFICATION OF COUNSEL**<br><br>**HON. CYNTHIA A BASHANT** |

**REPLY IN SUPPORT OF MOTION TO STRIKE WITNESS DECLARATIONS, FOR RESTRAINING ORDER, FOR MONETARY SANCTIONS, AND FOR DISQUALIFICATION OF COUNSEL**

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................... 1

II. LEGAL ARGUMENT ............................................................................... 4

   A. The Cases Cited By Defendant Are Unpersuasive and Inapplicable .......... 4

   B. Defendant's Counsels' Conduct was Egregiously Dishonest ..................... 8

III. CONCLUSION ........................................................................................ 10

**REPLY IN SUPPORT OF MOTION TO STRIKE WITNESS DECLARATIONS, FOR RESTRAINING ORDER, FOR MONETARY SANCTIONS, AND FOR DISQUALIFICATION OF COUNSEL**

i

# TABLE OF AUTHORITIES

**Cases**

*Bobryk v. Durand Glass Mfg. Co., Inc.*, No. 12–5360(NLH)(JS), 2013 WL 5574504 (D.N.J. Oct. 9, 2013) ...............................................................................5

*Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182 (S.D.N.Y 2014)............6

*Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir.), modified, 742 F.2d 520 (9th Cir. 1984) ....................................................................................................5

*Erhardt v. Prudential Grp.*, 629 F.2d 843 (2d Cir. 1980) .........................................6

*Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) ..5

*Kirola v. City & Cnty. of San Francisco*, No. C07-03685 SBA, 2010 WL 3505041 (N.D. Cal. Sept. 7, 2010) .........................................................................................6

*Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ...........................................................................................................7

*O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314 (N.D. Cal. 2014)............6

## I. INTRODUCTION

The truth is important. It is important to litigants. It is important to attorneys. It is important to Courts and our system of justice. And the truth is that Defendant's counsel have no remorse about their unethical actions, except for the fact that they got caught. The history, which is well laid out in the record, is clear on what transpired. Rather than seek discovery through proper channels over the thirteen months following class certification, Defendant's counsel plotted to conduct secret misleading prejudicial discovery of represented parties with diametrically opposed interests and thereafter hid it until the last effective day of discovery.

Royal Seas refers to their conduct in other briefs as an "honest mistake." See Dkt. No. 155 Pg. 4. This was neither honest nor was it a mistake. Royal Seas counsel (both inside counsel and outside counsel) devised a scheme whereby they would draft a misleading script targeting represented Subclass members to call about a "survey" and offer free cruise services if they would fill out those "surveys." These "surveys" were actually affidavits under penalty of perjury falsely attesting to having visited www.diabeteshealth.info, which it then emailed to them via docusign without telling them what the documents actually were, how Defendant would be using them, or advising Class Counsel of these efforts. Defendant held on to these pieces of "evidence" for over five months, until twelve hours prior to the discovery cutoff (a Friday afternoon). Then when Class Counsel expressed concern about what had transpired, Defendant's attorney wrote the following:

> "it's unfortunate that you chose to write an email that is **factually inaccurate**… I did not "confirm that my client reached out to and discussed this case with clients of [y]ours to secure these declarations". **That's because it didn't happen**…as you know, Royal Seas has many customers. Is your position now that you represent all of them? Can you provide us with a list of every Royal Seas customer that you claim to represent. That could help avoid this situation in the future. Are you taking the position now that Royal Seas cannot communicate with its customers?

**REPLY IN SUPPORT OF MOTION TO STRIKE**
**1 OF 10**

> Even if you think we did something wrong (**we didn't**), isn't the truth important? I also told you that **neither my law firm nor my client did anything wrong. Your accusations are not based on fact**. Separately, we'd like to confer with you on conducting discovery on class members so that the consent issues can be **properly developed**[1] and considered by the court.

Dkt. No. 129-2 Ex E (emphasis added). These are not the words of counsel who made an "honest mistake" or who are concerned about the truth. They are words of defiance which were knowingly deceptive in an attempt to discourage further investigation by Plaintiffs. The truth, as was uncovered subsequently at the deposition of Ms. Hanson, is that Defendant's inside and outside counsel developed and orchestrated the entire scheme to deceive Class Members and obtain tainted and unreliable evidence through improper means. The Subclass was <u>specifically targeted</u> by secret phone calls, and that those few who did sign only did so because Royal Seas bribed and misled them. It can even be proven with objective evidence that in one of the four affiant's cases, she was deceived into testifying falsely, <u>in a manner that defense counsel has every reason to know is completely false</u>.[2]

Meanwhile, Defendant has relied on the false and improperly obtained "evidence" in numerous motions. See Dkt. Nos. 123, 124, 143, 152, 155, 156, 159, 165, 168. After forcing Plaintiffs to address these arguments in all of these briefs, Defendant withdrew some of the "evidence" at the last minute, realizing they had no other option, yet they then spend the majority of their brief attacking Class Counsel for shining a light on their unethical conduct. Notably absent from

---

[1] At least Mr. Backman got this part correct. Conducting discovery pursuant to the federal rules would have been the way to "properly develop" the record.

[2] Defendant is advancing demonstrably false testimony as a basis for its Motion to Decertify. Dkt. No. 143-7. Ms. Heckler signed the affidavit prepared by Defendant's attorneys that says she went to diabeteshealth.info in May 2016. The website, however, was not even operational at the time and Royal Seas had yet to contract with Prospects DM until November 2016. This prepared affidavit clearly contains false testimony, and shows how little regard Royal Seas counsel have for the truth.

Defendant's opposition is any evidence to support its positions regarding what occurred[3] or any verified explanation from either Greenspoon Marder or Geoffrey Pette (outside and inside counsel implicated by Ms. Hanson's testimony) as to what justification they believed they had legally to speak to represented parties in this manner or how such efforts could factually be chalked up as an "honest mistake."

There has never been a case where defense counsel intentionally contacted and deceived represented class members, and coerced false testimony from them in order to prejudice the entire class, not just the individuals who were contacted – until now. The evidence needs to be stricken from the record, and it is equally necessary that Defense counsel should be sanctioned for forcing Class Counsel to go through motion practice and discovery on these issues created by its unethical conduct. But what is clear now is that disqualification is also absolutely necessary to send a strong enough message to Defendant, its counsel, and litigants generally that this type of conduct will not be tolerated in a civilized court of law. Anything less would be a mere slap on the wrist that will embolden other bad actors to take the risk of doing the same thing in the future, with the hopes that the gamble will pay off. Defendant and its attorneys have not even indicated they would not consider engaging in such unethical conduct in any future cases in an attempt to

---

[3] In truth, Defendant's Opposition is littered with unsupported falsehoods contradicted by the objective record. Defendant stated that it "promptly (and voluntarily) produced information regarding its conduct [Dkt. 168 at p. 3], but this is completely false as Defendant only produced any additional documents and information at the deposition of its 30(b)(6) in response to Plaintiffs' timely notice of deposition and document request on the discovery cut-off. Dkt. 129-2 at Exs. C (notice of deposition) and F (Transcript of the Deposition of Melissa Hanson) at 12:7-25. Defendant stated that Plaintiffs never suggested they would be seeking disqualification during meet and confers [Dkt. 168 at fn. 6] and yet Plaintiffs' very first meet and confer email states in its first paragraph that Plaintiffs' motion would be for "disqualification sanctions, against Defendant and its attorneys regarding their illegal contact with represented parties." Dkt. 129-2 at Ex. B.

mislead individuals to create evidence. This case is even worse than *Kleiner*, and a harsh punishment is not only justified, it is morally necessary.

## II. LEGAL ARGUMENT

### A. The Cases Cited By Defendant Are Unpersuasive and Inapplicable

Several principles of basic ethics cannot be reasonably disputed: 1) when a class is certified, class members are represented by class counsel; 2) counsel cannot communicate with known represented parties; 3) even where class members are not represented, any communications with absent class members by an adverse party must be informed and cannot be misleading or coercive. Defendant cannot and does not dispute these principles. Instead, Defendant attempts to distinguish the facts of this case and fit it within inapplicable case law.

Defendant did not undertake this deceptive "survey" campaign to uncover the truth, but to manufacture a record of individualized issues of prior express consent so it could attempt to decertify the Class. Its filed motions reflect this. See Dkt. No. 143, 143-1,[4] 143-8, 143-12, 143-13, 152. If successful (which it won't be), this orchestrated sham would convert Defendant's potential liability, which approaches a billion dollars and tens of thousands of Class Members, into liability for tens of thousands of dollars for just two named Plaintiffs. The Class Members would be left with no recourse. This is not a noble goal whereby Defendant was seeking the truth. It was a selfishly-motivated goal whereby Defendant was trying

---

[4] "Royal has since developed evidence of individuals who purchased a travel package from Royal after going to www.diabeteshealth.info and entering their telephone numbers requesting to be contacted about Royal. This is exactly what the Court deemed "actual evidence" of consent. Id. at 54. Additionally, Royal has produced call recordings with 23 customers whose telephone numbers are associated with diabeteshealth.info in the consent records produced by Royal. While Plaintiffs have raised issues with the means Royal obtained this information – separate issues Royal will address directly in response to that motion (DE 129) 10 – the declarations and recordings raise serious factual issues that simply cannot be ignored."

to manufacture evidence through deception and subterfuge to *avoid* the truth. With these points in mind, let us look at the facts of every single case cited by Defendant.

*Bobryk v. Durand Glass Mfg. Co., Inc*., No. 12–5360(NLH)(JS), 2013 WL 5574504 (D.N.J. Oct. 9, 2013) involved ex parte communications with putative class members <u>before the class was certified</u>. Further, the dicta from an unpublished case in a different circuit relied on by Defendant about the ethical duty not arising until after the opt out period has expired is splitting hairs, based on an interpretation of a different ethical rule, not the correct view on the ethical bar under Rule 23, and factually inapplicable because Defendant's conduct in lying to class members under false pretenses and financially incentivizing them to testify against their own interests was extraordinarily deceptive and coercive. Moreover, defense counsel does not advance any testimony or documentation suggesting that they even thought of or relied on such an interpretation prior to engaging in such conduct.

*Domingo v. New England Fish Co*., 727 F.2d 1429 (9th Cir.), modified, 742 F.2d 520 (9th Cir. 1984) likewise involved precertification communications and was merely a decision that looked at the fairness of an outdated and inapplicable local rule that was being used to prevent *plaintiffs counsel* from talking to putative class members (i.e. their own prospective clients who they were trying to *help not hurt*). *Guifu Li v. A Perfect Day Franchise, Inc*., 270 F.R.D. 509, 518 (N.D. Cal. 2010) likewise related to pre-certification conduct. There was no indication that *counsel* was involved in orchestrating a scheme to speak with represented parties, or to mislead class members about their rights by inducing questionable detrimental testimony under false pretenses. Nonetheless, the court issued an order to show cause for Rule 11 violations and invalidated pre-certification opt out forms that were obtained via coercion. *Kirola v. City & Cnty. of San Francisco*, No. C07-03685 SBA, 2010 WL 3505041 (N.D. Cal. Sept. 7, 2010) has no application either. Defendant sought leave to speak to represented class members about the litigation

and the court denied the request. This would have been the more proper course for Royal Seas to attempt to take.

*Erhardt v. Prudential Grp.*, 629 F.2d 843 (2d Cir. 1980) involved an unapproved notice that was sent to class members by defendant's CEO telling class members that if they lost the case they could owe fees and costs to the defendant. The district court ruled that the notice violated Rule 23, was misleading and held the CEO and company in contempt and issued sanctions. The CEO appealed the contempt order, not the remainder of the ruling which neither defendant nor its counsel appealed. The conduct was not nearly as egregious as in the case at bar. Moreover, there was no request to disqualify the attorneys, nor were the attorneys involved in the conduct. *O'Connor v. Uber Technologies, Inc*., 2014 WL 1760314 (N.D. Cal. 2014) has nothing to do with contact with class members. Uber rolled out new terms and conditions for current drivers which contained a class action waiver and arbitration clause. The court invalidated the waivers even though the case was not certified, and the conduct was only marginally misleading in that it did not advise drivers of a pending putative class action that they would be foreclosed from participating in if they agreed to the terms. Even under these circumstances, the court found the conduct deceptive and harmful to the putative class.

In *Dodona I, LLC v. Goldman, Sachs & Co*., 300 F.R.D. 182 (S.D.N.Y 2014), the court found an investment bank's communications with sophisticated investors in a *putative* securities class action were not misleading because they did not interfere with the administration of the action or abuse rights of class members. A set of subpoenas were negotiated between the defendant and separate counsel for the large sophisticated financial institution class members. Nothing misleading occurred whatsoever.

Finally, it is unclear why Defendant decided to cite to *Moreno v. Autozone, Inc*., No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007). The case

involved a disqualification of counsel for something less egregious than what happened in the case at bar and supports Plaintiffs' request. The court disqualified counsel after making the following observation:

> "the two most serious ethical breaches discussed above-an ongoing concurrent conflict of interest without written informed consent, and improper contact with represented parties, including putative class members-also tend to undermine the validity of these proceedings, and trigger this Court's inherent obligation to manage the conduct of attorneys who appear before it, to ensure the fair administration of justice, and to assure that the interests of unnamed class members are adequately protected."

In other words, because counsel interfered with the testimony of represented parties in a class action, he was disqualified. That is exactly what defense counsel did in the case at bar, except defense counsels' conduct was **much** worse because they *actively tried to mislead class members and obtain false testimony from them under false pretenses and via monetary inducement to manufacture a basis to decertify*.

None of the cases cited by Defendant persuasively counter the conclusions of *Kleiner*, which involved much less egregious conduct with respect to the severity of the deception.[5] Again, it warrants pointing out what defense counsel tried to do here, as is obvious from their other filings, most notably from Dkt. No. 143, 143-1, 143-8, 143-12, 143-13, 152. They were trying to manufacture evidence that they could use to decertify the class. To accomplish this, they lied to represented class members. They lied to them through affirmative misrepresentations and through intentional omissions. They drafted a misleading script and set of instructions and gave them to an employee of Royal Seas and told them to target a specific subset of the Subclass that they knew would be the most likely to respond to such

---

[5] Defendant makes an irrelevant point about the scope of ex parte communications in *Kleiner* being broader. Who cares? Defense counsel was attempting to decertify the class via unethical and misleading methods of gathering evidence. Whether by a single unethical communication or a thousand, such conduct is equally deplorable.

communications. They lied to them by not telling them that they were members of a certified class. They lied to them by not telling them the true purpose of the call. They lied to them by telling them that they were emailing them a survey instead of truthfully telling them they were sending them a witness affidavit under penalty of perjury sent via docusign. They lied to them by not telling them they had counsel (Class Counsel). They lied to them by omitting the fact that they were calling them to procure evidence in a lawsuit in which the called consumers were absent parties. They lied to them by putting false testimony in the affidavits. They coerced them by telling them that they would give them free cruise-related services in exchange for testimony.[6] They lied to them by not telling them that they were calling at the behest of their counsel, who represented a party whose legal interest was diametrically opposed to their own. Then they lied to Class Counsel by withholding the fact that they had undertaken these efforts until the day of the effective discovery cutoff. If they had legitimate concerns, they could have conducted legitimate discovery. They had a year to do so after the class was certified and did nothing.

Not a single case relied upon by Royal Seas persuasively advances any conclusion other than that severe sanctions, including exclusion of the evidence, monetary sanctions and disqualification, are necessary in this case.

### B. Defendant's Counsels' Conduct was Egregiously Dishonest

The record of this case is clear and has been well established for quite some time. Royal Seas hired Prospects DM in November 2016 to conduct a call campaign on its behalf, which Prospects DM claims was done through a series of web publishers. Dkt. No. 49-2 Ex A at 13:24-25 (Poole Depo); No. 51 Ex B (Royal Seas contract with Prospects DM); No. 77-5 ROGG 3 (Rogg Answers); No. 143-10 at

---

[6] For instance, look at the transcript of the call with Mr. Geiger. He responded that he had no idea if he went to the website, but then after they offered him a free cruise, he apparently decided to fill out the "survey." Dkt. No. 143-8 Pg 44-45.

Pg 26 (Grant Depo).  One of these web publishers was Landfall Data, who we now know did not run the website www.diabeteshealth.info, but rather bought leads from a web publisher who claims to have run the website but who it had no idea where they really came from and flipped them.  No. 77-7 (Brody Depo) 17:17-27:3, 36:4-37:5, 39:2-14, 40:19-41:1, 42:10-43:18, 49:7-52:10, 63:15-98:18, 106:7-108:22, 173:11-176:8.  Plaintiffs utilized Wayback Machine archives, among other tools, to prove that the leads could not have come from the website.  Dkt. No. 78.

Wayback Machine, and the record of this case, both tell us definitively for separate reasons, that the affidavit of Ms. Hetchler, the only remaining evidence of consent proffered by Royal Seas and obtained through the same unethical campaign, contains false testimony, which Ms. Hetchler likely had no reason to know was false, but which Royal Seas Counsel had every reason to know was false before their deceived and bribed her into signing under false pretenses.[7]  Declaration of Adrian R. Bacon at ¶¶ 5-17 and Exs A-C.  There are three obvious problems with the testimony: 1) Royal Seas had not even contracted with Prospects DM as of May 2016; 2) the website did not have an opt in portal at that time (Bacon Decl. Ex A); and 3) Royal Seas was not listed as one of the marketing partners on the site until sometime after January 27, 2017 (Bacon Decl. Ex B, C).  The obviously-bogus testimony nonetheless is *still* being used to try and decertify the class.

Plaintiffs separately address the Rule 23 impact of this bogus evidence their Opposition to the decertification motion.  It warrants mention here because it shows

---

[7] Technically this does not meet the standard for suborning perjury, because Ms. Hetchler likely had no reason to know she was even testifying to anything, much less that it was false. But defense counsel knew that the affidavit they drafted and tricked her into signing was false, so in many ways, their conduct is even worse than suborning perjury.  If they had secured an affidavit from their own client using superficial means it would not have satisfied the Rule 11 obligation.  But as if that is not bad enough, they knowingly tricked someone into lying under oath so they could advance a bogus defense for their client to try and decertify a class action.

just how far astray defense counsel has gone with respect to their ethical duties, not only to not speak to represented parties, to mislead them, or mislead the Court and fail in their duty of diligence, but also with respect to their duty of candor. This testimony is demonstrably false. They are advancing bold faced provable lies, again, as they have done throughout this entire case. It is outrageous, and it proves that they have no regard for the truth whatsoever, and undermines the entire position of their Opposition brief. They were not trying to find the truth. They were trying to create a false narrative. It makes the misconduct even more egregious and worthy of the highest level of sanctions.

### III. CONCLUSION

Defendant and its counsel will do this again if they are not severely punished for their egregiously-deceptive conduct. They've done it throughout this entire case. They are still doing it, as evidenced by Ms. Hetchler's affidavit. They have no shame. Moreover, respectable defense and plaintiff counsel and the news are watching this case.[8] If a strong message is not sent, it will incentivize bad behavior in the future. This Court should not allow Defendant to turn it into a three-ring circus. Monetary sanctions are not enough, because they will merely result in litigants performing a calculus whereby they weigh the risk of relatively small monetary sanctions against millions or billions of dollars in liability to their clients. The punishment should fit the crime, and strong discovery, monetary, and disqualification sanctions are necessary to deter this terrible conduct.

Dated**:** April 13th, 2020          **Law Offices of Todd M. Friedman, P.C.**

                                   By: /s/ Todd M. Friedman
                                       Todd M. Friedman, Esq.
                                       Adrian R. Bacon, Esq.
                                       Attorneys for Plaintiffs

---

[8] Bacon Decl. ¶ 18, Ex E.

# CERTIFICATE OF SERVICE

Filed electronically on this 13th day of April, 2020, with:

United States District Court CM/ECF system

Notification sent electronically via the Court's ECF system to:

Honorable Cynthia A Bashant
United States District Court
Southern District of California

And All Counsel of Record As Recorded On The Electronic Service List.

This 13th day of April, 2020,

s/Todd M. Friedman, Esq.
Todd M. Friedman