UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MCCURLEY, DAN DEFOREST, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ROYAL SEA CRUISES, INC,<br><br>　　　　　　　　　Defendant. | Case No. 17-cv-00986-BAS-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' FIRST AMENDED MOTION TO STRIKE WITNESS DECLARATIONS, FOR RESTRAINING ORDER, FOR MONETARY SANCTIONS, AND FOR DISQUALIFICATION OF COUNSEL**<br><br>**[ECF No. 129]** |

On March 4, 2020, Plaintiffs filed a First Amended Motion to Strike Witness Declarations, for Restraining Order, for Monetary Sanctions, and for Disqualification of Counsel ("Motion"). (ECF No. 129.)  Defendant opposed the Motion on April 6, 2020 and Plaintiffs replied on April 13, 2020.  (Opp'n, ECF No. 168; Reply, ECF No. 169.)  After hearing oral argument on the Motion (ECF No. 189), and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

**I.    STATEMENT OF FACTS**

On March 27, 2019, this Court certified a class of individuals who had received telephone calls from non-party Prospects DM, Inc. ("Prospects") on behalf of Defendant Royal Seas Cruises, Inc. ("Royal") by use of an automatic telephone dialing system ("ATDS") between November 2016 and December 2017, where such calls were placed for the purposes of marketing to non-customers of Royal and whose cellular telephone

numbers had been obtained via two websites: www.diabeteshealth.info or www.youautohealthlifeinsurance.com. (ECF No. 87.) The Court certified a Subclass of the above individuals who were actually transferred to Royal after Prospects made the call. (*Id.*)[1]

For a variety of reasons, class notice did not go out to potential class members until one year later in March 2020. After certification, Defendant began contacting class members. Defendant called all individuals who were transferred from www.diabeteshealth.info, and to whom a sale was actually made. (Dep. of Melissa Hanson ("Hanson Dep.") 23:10–13, Ex. 2 to Opp'n ECF No. 168-2.) Thus, all of these individuals had been transferred from Prospects to Royal and were, therefore, members of the Subclass. Defendant placed approximately 560 calls to these class members. (Hanson Dep. 22:1–3.) Defendant reached 23 individuals, 19 of whom Defendant admits were class members. (Opp'n at 4.) Three of these class members signed affidavits indicating that they had voluntarily entered their telephone number in the www.diabetesthealth.info website and consented to be called. (Opp'n at 6.)

Defendant used a script, drafted by Defendant's attorneys, to contact these class members. (Hanson Dep. 19:4–8.)[2]

---

[1] Plaintiffs have now moved to decertify the larger class as Prospects' records do not identify whether the class members identified above were contacted on behalf of Royal or some other non-party. (ECF 132.) Therefore, Plaintiffs seek to proceed solely on the Subclass of individuals who were actually transferred to Royal. (Id.) Defendant has moved to decertify the class in its entirety. (ECF No. 143.) Those motions are still pending before this Court.

[2] It is noteworthy to see the entire script of the planned call:

> Good morning /afternoon Mr. /Mrs. _____. My name is _____ and I am with the customer service department of Royal Seas Cruises.
>
> We see that you purchased your vacation package from Royal Seas Cruises on ___(date)___ and you have (already traveled/ not traveled).
>
> – If Traveled:
>   - How was your trip?
>   - What was your favorite part?
>   - Are there areas we can improve on?
> – If not Traveled:
>   - Is there a reason you have not traveled yet?

- 2 -

17cv986

## II. PROCEDURAL HISTORY

Plaintiff filed a putative class action complaint on May 12, 2017. (ECF No. 1.) The Court consolidated the case with another pending class action complaint, and Plaintiffs filed a consolidated class action complaint on December 20, 2017. (ECF Nos. 28, 31.)

On July 30, 2018, Plaintiffs filed a class certification motion. (ECF No. 49.) A key issue in the class certification motion was whether class members had agreed as a whole to be called by entering their telephone numbers into the above two web sites and whether entering their telephone numbers constituted consent to be called. (ECF No. 58, at 7.) At the request of defense counsel, the Court gave Defendant additional time to investigate

---

- Is there anything Royal Seas can do to help you book your vacation?

In reviewing your information, we show you visited diabeteshealth.info and provided your information so that Royal Seas could contact you at __(phone number)__ regarding a complimentary cruise promotion. Is that correct?

– If Yes:
  - Great! I am glad to see we have the correct information regarding your purchase. We always like to show thanks to those that help promote our vacations. Would you be kind enough to complete a brief survey, basically stating that you went to diabeteshealth.info website and requested more information about Royal Seas complimentary cruise promotion?
    - If Yes, great, the address we have is _____ and we show your email address as _____? Would you prefer us to email or mail this document to you?
    - We will have that sent out shortly. It will require a signature.
    - We greatly appreciate your time today and the information you have provided.
– If no, (try to rephrase the question)
  - Isn't it possible you visited diabeteshealth.info website around the time you purchased?
  - If you are unsure about that site, do you remember how you received Royal Seas information? Was it a different site?
    - IF NO…
      - Mr. /Mrs. _____, I understand you may not remember, but could it be possible you provided your contact information to diabeteshealth.info
   If no..
      - Thank you for your time, we appreciate the information provide.
– If absolutely no, then just finish the call and move to next consumer.

(Ex. G to Decl. of Adrian Bacon in supp. of Mot. ("Bacon Decl."), ECF No. 129-2.)

- 3 -

17cv986

and respond. (ECF Nos. 53, 38.) Additionally, at the request of defense counsel, the Court permitted Defendant to file a sur-reply, which it did on February 12, 2019. (ECF Nos. 84, 86.) Thus, defense counsel had seven months to investigate and brief the issue of consent.

On March 27, 2019, the Court ultimately granted in part the motion for class certification. (ECF No. 87.) On the issue of consent, the Court found "that whether Royal's lead generation program is a valid means of obtaining consent for calls by a third party concerning Royal's services and whether the leads constitute consent are common questions." (*Id.* at 41.) The Court pointed out that the "opt-in" forms, relied on by defense counsel, "may have actually been obtained through sources other than the consumer." (*Id.* at 87.)

After class certification was granted, the Court ordered that fact discovery be completed by October 18, 2019. (ECF No. 91 at ¶ 5.) At the request of the parties, this order was modified to allow fact discovery to be completed by February 19, 2020. (ECF No. 113.)

On January 17, 2020, one month before fact discovery was scheduled to be closed, Defendant served a Second Supplemental disclosure on Plaintiffs' counsel identifying three class members as witnesses and providing three signed declarations from these witnesses dated August 7, 2019, September 23, 2019 and October 2, 2019. (Ex. A to Bacon Decl., ECF No. 129-2.) Plaintiffs immediately filed a motion asking that these declarations be excluded. (ECF No. 120.) Defense counsel moved to conduct discovery of class members on February 10, 2020, asking, for the first time, that they be allowed to depose the three witnesses they had already contacted *ex parte*. (ECF No. 123; *see also* Bacon Decl. ¶ 7.) Plaintiffs then filed the instant First Amended Motion on March 4, 2020. (ECF No. 129.)[3]

---

[3] Plaintiffs also object to Defendant's Exhibits 1 and 3 as unauthenticated. (ECF No. 169-2.) The Court **OVERRULES** this objection. The exhibits are largely irrelevant to the Court's ultimate decision in this Order.

## III.     ANALYSIS

There is no question that "[a] lawyer is forbidden from communicating with a party the lawyer knows to be represented by counsel, regarding the subject of the representation, without counsel's consent." *See Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1082 (C.D. Cal. 2002) (citing Rule of Professional Conduct of the Calif. State Bar, Rule 2-100; ABA Model Rules of Professional Conduct, Rule 42). "Once an attorney-client relationship is established, the attorney serves as a shield protecting the client." *Id.*

"In a class action certified under Rule 23 . . . absent class members are considered represented by class counsel unless they choose to 'opt out.'" *Id.* (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985)); *see also Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376 (N.D. Ill. 1982) ("'After a court has certified a case as a class action and the time for exclusions has expired, the attorney for the class representative represents all class members who are otherwise unrepresented by counsel. Defense counsel must observe the rules of ethical conduct in those circumstances and communicate with the opposing parties through their attorney, who is counsel for the class.'") (quoting 2 Newberg, Class Actions § 2730(d), at 1220 (1977)).  The issue becomes a little more difficult when, as here, the class has been certified, but the potential class members have not yet been given the opportunity to opt out.

"Many courts have adopted the view that the attorney-client relationship between class counsel and class members attache[s] upon entry of an order certifying the class and does not await the expiration of any opt out period." McLaughlin on Class Actions §11.1 (citing *Kleiner*; *Good v. W. Virginia Am. Water Co.*, No. 2:14-01374, 2016 WL 6404006, at *2 (S.D. W.Va. 2016); *Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992); *Gortat v. Capala Bros. Inc.*, No. 07-cv-3629 (ILG) (SMG), 2010 WL 1879922, at *2 (E.D.N.Y. 2010), *objections overruled* 2010 WL 3417847 (E.D.N.Y. 2010); *see also Dodona I, LLC v. Goldman, Sachs and Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014) ("The majority of courts, including at least one court in this district, have found that class certification itself creates an attorney-client relationship, at least for the limited

purpose of aiding prospective class members in deciding whether or not to join the class action.") (quotations and citations omitted). "Other courts, and the American Bar Association, have expressed the view that the attorney-client relationship is established only upon expiration of the opt out period." McLaughlin on Class Actions §11.1 (citing *In re Wells Fargo Wage & Hour Emp't Practice Litigation*, 18 F. Supp. 3d 844, 851 (S.D. Tex. 2014); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194 (CM), 2010 WL 339098, at *2 (S.D.N.Y. 2010); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. 2008); A.B.A. Committee on Ethics and Prof's Responsibility, Formal Op. 07-445, at 3 (2007).

The reason for prohibiting contact between defense counsel and the unnamed members of the class is that unilateral contact by defense counsel "is rife with potential for coercion." *Kleiner,* 751 F.2d at 1202. "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts without the opportunity for rebuttal. The damages from misstatements could well be irreparable." *Id.*; *see also Dodona*, 300 F.R.D. at 184–5 ("The court's primary purpose in supervising communications is . . . to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action.") (quotation omitted).

Even pre-certification, "[t]he Supreme Court has held that Rule 23 allows a court, in appropriate circumstances to restrict communications between a party and members of a . . . putative class." *Ralph Oldsmobile, Inc., v. General Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) (citing *Gulf Oil v. Bernard*, 452 U.S. 89 (1981)). Restricting communications must be based on a clear record and specific findings showing the reason the limitation is necessary. *Gulf Oil*, 452 U.S. at 101–102. Communications that are coercive or misleading or those that "solicit[] opt outs, or even simply discourage[] participation in a case, undermine the purposes of Rule 23" and can warrant court intervention. *Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 WL 1540717, at *2 (N.D. Cal. Apr. 28, 2017). "The test for coercion is whether the conduct

somehow overpowers the free will or business judgment of the potential class members." *Jenifer v. Delaware Solid Waste Authority*, Nos. CIV.A 98-270-MMS, CIV.A 98-565-MMS, 1999 WL 117762, at *5 (D. Del. Feb. 24, 1999). Communications that conceal material information are misleading. *Marino*, 2017 WL 1540717, *2; *see also O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014).

The Court is particularly troubled by Defendant's communication with the class members in this case. First, in the call, Defendant suggests that the question it asks is largely irrelevant except for marketing purposes. Therefore, Defendant misleads the class members into thinking the answer is not personally important to the class member. ("We always like to show thanks to those [websites] that help promote our vacations.").

Second, the questions in the script used by Defendant are made in a leading fashion, suggesting the answer Defendant would like the class member to give. ("We show you visited *diabeteshealth.info* and provided your info so that Royal Seas could contact you at (phone number) regarding complimentary cruise promotion. Is that correct?"). Third, if the class member does not give the desired response, the question is repeated multiple times in an increasingly suggestive way, encouraging the class member to give Defendant the desired answer. ("Isn't it possible you visited diabeteshealth.info website around the time of your purchase?" and, if no, "Mr./Mrs._____, I understand you may not remember but could it be possible you provided your contact info to diabeteshealth.info?")

Overlaid over this questioning is the fact that Defendant is dealing with relatively unsophisticated members of the public who are hoping to get awards from the Defendant. Defendant has the discretionary ability to offer to extend the time period in which a class member can redeem his or her award, which gives some class members added incentive to go along with the suggestive answers Defendant has made it clear it is looking for.

A look at the transcripts of two of the calls made by Defendant is instructive. In the call with witness Geiger, Mr. Geiger says he doesn't remember whether he put his telephone number into the diabeteshealth.info website, but Defendant then offers him a

12-month extension of his cruise if he were to "remember" putting his telephone number in. (Audio File No. 300000000151480-7046270980 (lodged with the Court), Ex. H to Bacon Decl., ECF No. 129-2.) And when Defendant called witness Winter, it told him it had a "little bit of a promotion going on." If Mr. Winter would just fill out a "survey" saying he had put his telephone number into the diabeteshealth.info website, then Defendant could extend his cruise without any additional money from him. (Audio File No. 300000000172377-4049353474 (lodged with the Court), Ex. I to Bacon Decl., ECF No. 129-2.)

Contrary to the accusation made by Defendant that Plaintiffs are not searching for the truth in this action, it is *Defendant's* actions that suggest an attempt to obfuscate the truth. If Defendant was seeking truth, it could have asked neutral questions, not suggesting the answer it was seeking. If it was seeking truth, it could have worked with Plaintiffs to conduct discovery of class members. And, if Defendant had been seeking truth, it would not have omitted any information about the fact that a class action existed, that this individual was a member of the class, and that the class member was represented by class counsel if he or she so desired. That Defendant was intentionally leaving out this information is made clear by the fact that Defendant refers to the affidavits it seeks to obtain from class members, as "surveys." Clearly, Defendant was seeking to mislead the class members it contacted.

Defendant's conduct is particularly egregious because the answer it is suggestively encouraging the class member to give is contrary to the class members' interest. Unlike many of the cases cited by defense counsel, Defendant was not seeking to settle with the class member; it was seeking to strip the class member of any rights, without explaining the importance of the question it was asking.

The Court finds that the attorney-client relationship attached when the Court ordered the class certified in this case. Defense counsel thus violated an ethical rule when they encouraged their client to contact an individual the lawyer knew to be represented by counsel, regarding the subject of the representation, without counsel's consent.

Furthermore, the communications were misleading, omitted material facts about the existence of the class action, and were coercive in that they used suggestive, leading questions, offered incentives for giving the "right" answers, and suggested the answers were not important except for marketing purposes.

Therefore, the Court finds it appropriate to grant Plaintiffs' request to order Defendant and Defense counsel not to contact any class members on an *ex parte* basis about the subject of this case, without the consent of the class members' attorney, Class Counsel. Any contact exploring the issue of consent should be done only with the presence of Class Counsel. Second, since the affidavits were obtained by misleading and coercing the class members, the Court finds it appropriate to grant Plaintiffs' request to strike the three affidavits given by class members as "surveys" to Defendant. Defendant's theory is that all of the class members consented by putting their names in the website. The suggestive and misleading nature of the communications Defendant made on an *ex parte* basis has cast doubt on these three witnesses' credibility. Therefore, the Court **GRANTS** Plaintiffs' request to strike Defendant's Second Supplemental Disclosure and the declarations attached thereto. Finally, the Court **GRANTS** the request to bar the testimony of any class member, contacted by Defendant after certification of the class, as a sanction for Defendant's misleading and coercive questioning.

Plaintiffs also ask for additional sanctions: monetary to cover the cost of bringing this motion, and to disqualify counsel. The Court finds the former is warranted but the latter is not.

District judges have "an 'arsenal of sanctions they can impose for unethical behavior.'" *Terrebonne, Ltd. Of Calif. v. Murray*, 1 F. Supp. 2d 1050, 1054 (E.D. Cal. 1998) (quoting *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)). "These sanctions include monetary sanctions, contempt and disqualification of counsel." *Id.* "While the district court should issue sanctions under a rule or statute if possible . . . it is not so limited and has discretion to rely on its inherent powers to sanction attorney

misconduct." *Id.* at 1056 (citations omitted). "Sanctions imposed under the court's inherent power requires a specific finding of bad faith." *Id.* (citations omitted).

"[T]he primary purpose of sanctions . . . is to deter subsequent abuses." *Matter of Yagman,* 796 F.2d 1165, 1183 (9th Cir. 1986). "It is crucial . . . that a sanctions award be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority." *Id.* at 1184. "When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees. Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action." *Id.* at 1184–85. "The measure to be used is not actual expenses and fees but those the court determines to be reasonable." *Id.* (quotation omitted).

State law is applicable in determining whether an attorney should be disqualified from continued representation in a case. *Moreno v. Autozone*, No. C05-04432 MJJ, 2007 WL 4287517, at *2 (N.D. Cal. Dec. 6, 2007) (citing *In re Cty. of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000)). "Disqualification motions are subject to strict judicial scrutiny given the potential for abuse." *Id.* In California, "[d]isqualification based on a violation of [Disciplinary] Rule 2-100 lies within the court's discretion." *Id.* at *10 (citing *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597, 607–08 (1980)). "Disqualification is proper if counsel's misconduct is likely to have a continuing effect on the proceedings." *Id.*

In this case, for the reasons stated above, the Court finds Defendant's contact with the class members and misleading coercive behavior in obtaining the affidavits to be unethical and in bad faith. However, Defendant claims, and Plaintiffs do not dispute, that once Plaintiffs contacted defense counsel, they agreed to withdraw the three declarations in the Second Supplemental Disclosure, and agreed that no additional contact with class members would occur. Therefore, part of what is sought in this Motion could have been obtained by agreement between the parties. The sticking point, apparently, was whether

Defendant would then be permitted to depose the three class members with whom it had had *ex parte* communications. The Court agrees with Plaintiffs that Defendant's *ex parte* contact, which included misleading and suggestive questions, tainted the future testimony of these three class members. Therefore, Defendant will not be permitted to use the testimony of these three individuals, or, in fact, the testimony of any class member contacted by Defendant using the script asking about contact with the diabeteshealth.info website. To the extent Class Counsel were required to bring a motion to accomplish this task, the Court finds it appropriate to order Defendant and defense counsel to reimburse Plaintiffs for the cost of this motion practice as a sanction for the initial behavior. Therefore, the Court **GRANTS** Plaintiffs' request for monetary sanctions to reimburse Plaintiffs for the costs of bringing this Motion, as well as the costs of investigating the contact made by defense counsel.

However, the Court does not find that the *ex parte* contact with the three class members is likely to have a continuing effect on the proceedings. The Court has stricken both the affidavits and those three individuals as witnesses, curing any long-term continuing effect even if defense counsel continues representation. Defense counsel have voluntarily agreed not to contact any other class members. Therefore, the Court finds disqualification is unnecessary and **DENIES** Plaintiffs' Motion for Disqualification of defense counsel.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion (ECF No. 129) and orders as follows:

(1)     Plaintiffs' Motion to Strike Witness Declarations is **GRANTED**. The Court further orders Defendant and defense counsel not to have any contact with class members on an *ex parte* basis, about the subject of this case, without the consent of the class members' attorney, Class Counsel. Any contact exploring the issue of consent should be done only with the presence of Class Counsel.

(2)     The Court further **GRANTS** Plaintiffs' Request for Monetary Sanctions. Plaintiffs' counsel is ordered to file a detailed request for attorneys' and other fees, detailing the costs of bringing the instant Motion by **August 14, 2020**. Any opposition to the motion for attorneys' fees (other than the reasons for imposing the fee, which has already been ruled on by this Court) must be filed by **August 28, 2020**. Any reply should be filed by **September 4, 2020**.

(3)     Finally, the Court **DENIES** Plaintiffs' Motion for Disqualification of Defense Counsel.

**IT IS SO ORDERED.**

**DATED: July 31, 2020**

Hon. Cynthia Bashant
United States District Judge