**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone:  (800) 400-6808
Facsimile:   (800) 520-5523

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (216752)
tfriedman@toddflaw.com
Adrian R. Bacon, Esq. (280332)
abacon@toddflaw.com
21550 Oxnard Street, Suite 780
Woodland Hills, CA 90212
Telephone:  (877) 206-4741
Facsimile:   (866) 633-0228

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JOHN MCCURLEY AND DAN DEFOREST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

ROYAL SEAS CRUISES, INC.,

Defendant.

**Case No.:** 17-cv-986 BAS (AGS)

**SUPPLEMENTAL DECLARATION OF ADRIAN R. BACON IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND COSTS IN RESPONSE TO COURT ORDER AWARDING MONETARY SANCTIONS**

**HON. CYNTHIA A BASHANT**

## DECLARATION OF ADRIAN R. BACON

**I, ADRIAN R. BACON declare:**

1.      I am an attorney in good standing duly admitted to the State Bar of California and an attorney of record for Plaintiffs Dan Deforest and John McCurley ("Plaintiffs") in this action against Royal Seas Cruises, Inc. ("Defendant"). I am a

Partner at The Law Offices of Todd M. Friedman, and one of the counsel for Plaintiffs and the Class in this action.

2.     I have personal knowledge of the following facts and, if called upon as a witness, could and would competently testify thereto, except as to those matters which are explicitly set forth as based upon my information and belief and, as to such matters, I am informed and believe that they are true and correct.

3.     I am writing this declaration in support of Plaintiffs' Petition for Fees and Costs Pursuant to the Court's Order at Dkt. No. 190.

4.     As a starting point, I want to address a theme running throughout Defendant's brief that is just plain wrong.  My office and that of my co-counsel are not looking to profit off of this fee application, nor are we being opportunistic with respect to the request.  Truth be told, we felt we could have justified far more hours in our request, but we chose not to include all of our hours in this sanctions motion.

5.     Our concern is and always has been with respect to pursuing the truth, and litigating this case responsibly on behalf of the class.  We did not pursue sanctions against Defendant and its counsel because we saw an opportunity to profit from doing so.  We did it because it was necessary to accomplish two goals: 1) protect the class members from unscrupulous conduct of lawyers that in our view should have known better, and 2) uphold the integrity of the legal system and the federal judiciary by shining a spotlight on bad actions.  Defendant talks about four supposed goals of our Motion, and casts our efforts as a pyrrhic victory, but the brief ignores the most important goals of all – protect the class, and shine a light on unethical acts.  The Motion succeeded.  In many ways, this sanctions motion was a culmination of what class counsel generally viewed to be a pattern of subversive conduct.  We were unwilling to let this slide because of how particularly egregious this conduct was.  We are asking for monetary sanctions not only as compensation,

but also as a punishment to those who acted in an unethical manner.  And we are not asking for all of the time we put in, or the rates that we currently are charging for our time in other class actions.  We've already appropriately reduced our request.

6.    I wish to address several other points raised in the opposing brief that are inaccurate and warrant a response.

7.    First, regarding the *Manna Pro* case, my office has not submitted a fee application yet.  The court's comments in the preliminary approval order addressed the fact that our fee bill was larger than the class recovery, and expressed some doubt that such was a fair structure.  However, the case was not settled on a common fund basis, because the class was too small to substantiate that form of settlement structure.  Because the case involved a CLRA claim with a mandatory fee shift, we negotiated a settlement fund for the class, and thereafter separately negotiated a fund for our fees.  The fees will be supported at final approval with a fee petition. It has not been ruled on yet or even reviewed by the court in that matter, so no conclusions can be drawn from the preliminary approval order.  Defendant's arguments are a mischaracterization of the record of the case.

8.    Regarding Mr. Wheeler's travel time to and from Florida to depose Defendant's Rule 30(b)(6) witness, I find it unreasonable for Defendant to suggest that it took Mr. Wheeler less than the 14 hours he is requesting.  Typical flights back and forth across the country take 5-6 hours.  Accounting for travel to and from airports, this amount of time is perfectly reasonable.  Given that we had concerns that Defendant and defense counsel were acting unethically, we felt an in-person deposition was necessary.  Defendant again mischaracterizes one of our past cases by pointing out that Mr. Friedman's hours for travel and preparation were cut considerably, but the reason for this, as described in the portions of the order that

-3-
DECLARATION OF ADRIAN R. BACON

were not quoted was because "Mr. Friedman did not argue either motion and the hearings for the motions took less than an hour in total." These hearings took place in San Francisco, which is an hour flight. The Court awarded three hours of time, i.e. the flight time and the hearing time, and reduced the time primarily because Mr. Friedman was not the attorney arguing the motions. That is not the case as concerns Mr. Wheeler. He flew a lot longer distance, covered the deposition himself, and this time could not have been avoided. In fact, I was going to be the one to take the deposition but I sent my associate and helped prepare him before and during the deposition, because I felt he was up to the task and I wanted him to get the experience. I felt the lower hourly rate of my colleague would be approved, in light of the outstanding job he did taking that deposition, as demonstrated by the transcript.

9.     Royal Seas objects to my having spent 20 hours drafting the reply brief in support of the motion for sanctions. I actually spent more time than that on the brief given its level of importance. I would note that the Court's Order borrowed heavily from the points I raised in that brief, meaning that the time I spent on it was likely of direct benefit to Class Members. I do not think it was unreasonable for me to have spent 20 hours on a brief of that level of magnitude of importance, and I did in fact spend that amount of time on the brief, which included legal research, factual research, drafting a declaration and drafting a set of objections, as well as discussing the matter with my co-counsel and reviewing Defendant's lengthy opposition brief.

10.     I will also say that the hours we presented in our attached records and report were not only accurate, but excluded over 100 hours of additional work relating to the sanctions motion that we did not ask for in this Motion. This decision to exclude those additional hours was made collectively by me, Mr. Friedman, and Mr. Kazerounian, in order to avoid the appearance that we were asking for too

DECLARATION OF ADRIAN R. BACON

much.  I was surprised to see that Defendant disputed our hours to such a degree given the detailed nature of our time records.

11.     I can also say that I support Abbas Kazerounian's hours as being reasonable and accurate.  Abbas asked me to assist him in preparation for the hearing after Class Counsel decided collectively that he should argue the Motion. In preparing for the hearing, I sent him a very large amount of materials to review. It would have taken any reasonable experienced attorney at least the amount of time that his billing records reflect to thoroughly review those materials and the case law on these issues.  While we are experienced in class actions, it is not often that a Defendant engages in unethical ex parte communications with our clients in a certified class, so this was a relatively new issue for us to have to delve into.  It was not the kind of task where we had a wealth of work product and experience at our fingertips.  I strongly believe the time spent by my co-counsel was reasonable, and I am personally aware that he did in fact spend that time because I was assisting him with the preparation.  Indeed, it would not surprise me if Mr. Epstein, who has not been directly involved in this litigation from what I can tell, spent considerably more time than Mr. Kazerounian preparing for the hearing.

12.     As I stated in my Declaration in support of the Petition for Fees and Costs, the time records attached therein did not include any time spent opposing Defendant's Opposition brief, as it had not yet been filed.  Our opening brief did not account for additional time reviewing the opposition papers or drafting this Reply.  I specifically flagged this in Paragraph 18 of my prior declaration.

13.     Defendant accuses both myself and Mr. Kazerounian of perjuring ourselves in their brief, which is both not true, and not well taken.  Specifically, they state as follows:

Additionally, Mr. Bacon in his declaration falsely represents that Mr. Kazerounian spent 33.7 hours on tasks related to the Motion at a rate of $710 a hour, but "this figure does not include any hours that may be spent reviewing and opposing an opposition filed by Defendant." DE 192-1 at 16. Yet, Mr. Kazerounian's own declaration details 33.7 hours of time entries, including 3.7 hours reviewing and opposing Royal's opposition for a fee of $2,627.00. *See* DE 192-2 at Ex. 1.

Dkt. No. 193 at 14:9-15.

14.     Defendant's statement that I testified falsely is misplaced.  By the inclusion of the phrase "may be spent," I was clearly in Paragraph 18 referring to future time, i.e. time spent on this Reply brief, and the opposition brief I was referring to was the opposition to the fee petition, not the opposition to our sanctions motion.  As I am not Marty McFly and do not have a flux capacitor, I could not anticipate whether a reply would be necessary, or how much time it would take to compose such a filing.  Defendant no doubt was eager to accuse me of perjuring myself but I did no such thing and my presentment of our time records was accurate.  They have no basis to say what they have said in their brief.

15.     Speaking of additional time, Defendant's 25-page Opposition, complete with a 600-page declaration required a great deal of effort to review and address in this brief.  My office conferred with our co-counsel regarding the response, and myself, Abbas Kazerounian, Matt Loker, Todd Friedman and Thomas Wheeler all read the brief and contributed to the drafting of this Reply, both through strategic commentary and substantive briefing and revisions to the draft.  I took lead on drafting the papers.  In the interest of reasonableness, we are only asking that my time be compensated.  I spent 16.8 hours drafting this response and reviewing their filing and discussing the response with my co-counsel.  At a rate of $625 per hour, the additional lodestar is $10,500.  Reducing this by 10% as the rest of our brief puts the requested additional fees at $9,450.  Plaintiffs therefore request these

additional fees be added to the original request and support this request with case law in our contemporaneous brief.

16. Defendant also challenges the costs we paid to our experts in conjunction with our investigation into their unethical contact with our clients. After receiving the declarations of the three class members from Defense counsel, I reached out to our experts at Class Action Experts Group to ask them to investigate the data and call records of the declarants to look for anomalies and red flags in the data for these three individuals that might shed light on whether the declarations contained objectively inaccurate testimony. They provided me with expert work product in return, which we used as part of our investigation. Attached as Exhibit H is a true and correct copy of the invoice for these services.

17. Finally, I address the question of the reasonableness of our hourly rates. As concerns my office, the rates requested are the rates that myself and Mr. Friedman were billing in the 2018 and 2019 calendar years. These are our old rates. We asked for our old rates to be reasonable. And we then voluntarily reduced our overall lodestar request by 10% across the board.

18. I am attaching hereto a series of court orders and declarations from other cases which further support the reasonableness of our hourly rates. This is by no means the extent of authority we have supporting our rates, merely a sample of some recent filings and orders. I can tell the court that generally speaking, in most of the class action cases referenced in my prior declaration in which my office has achieved final approval, the rates for myself and Mr. Friedman were approved at $575 and $675 respectively in the 2016-2017 time frame, $625 and $725 in the 2018-2019 time period, and $650 and $750 respectively in the 2020 calendar year. We have not, in all that time, had an order issued against us that I can think of which held that our requested rates were not reasonable. In fact, in several cases where

we filed contested fee petitions with the opposing party challenging our petition, and yet we had those rates upheld.

19.     Attached as Exhibit A is a true and correct copy of a court order, in the matter of *Sheena Raffin v Medicredit, Inc. et. al*. Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.) in which attorneys Todd M. Friedman and Adrian R. Bacon were awarded fees at the hourly rates of $725 and $625 respectively

20.     Attached as Exhibit B is a true and correct copy of a court order, in the matter of *Joanna Fryt v. Rufus Hankey et. al.,* Case No. BC682078 (California Superior Court – County of Los Angeles) in which attorney Adrian R. Bacon was awarded sanctions for hours worked, at an hourly rate of $625 per hour.

21.     Attached as Exhibit C is a true and correct copy of a declaration submitted by class action defense attorney Michael Hassen in support of the reasonableness of our hourly rates in the case of *Wolf et al v. Hewlett Packard Company,* Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.)

22.     Attached as Exhibit D is a true and correct copy of a declaration submitted by Abbas Kazerounian in support of the reasonableness of our hourly rates in the case of *Wolf et al v. Hewlett Packard Company,* Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.)

23.     Attached as Exhibit E is a true and correct copy of a court order, in the matter of *Wolf et al v. Hewlett Packard Company,* Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.) in which myself and Mr. Friedman were awarded sanctions for hours worked, at an hourly rate of $625 and $725 per hour. Importantly, this motion was <u>highly contested</u> and involved litigation for a year just over our fee petition. Judge Hatter issued an interim ruling in the case where he required us to justify our rates under not only the Central District, but also the Northern and Southern Districts because the settlement involved four lawsuits filed across three different

California District courts.  The final ruling upholds the reasonableness of our rates across all three jurisdictions, even while being highly contested by the defendant.

24.     Attached as Exhibit F is a true and correct copy of a court order, in the matter of *Eubank v Terminix International, Inc.* Case No. 3:15-cv-00145-WQH-LL (S.D. Cal.) in which Judge Hayes held that my rates of $625 per hour and Mr. Friedman's rate of $725 per hour were reasonable.

25.     Attached as Exhibit G is a true and correct copy of a court order, in the matter of *IN RE HP PRINTER FIRMWARE UPDATE LITIGATION*, Case No. 5:16-cv-05820-EJD (N.D. Cal.) wherein the court upheld our hourly rates of $625 for myself and $725 for Mr. Friedman, and reduced the fee award to class counsel across the board for other unrelated reasons.

26.     I believe our hourly rates are reasonable.  I would also point out that Defendant wasted Class Counsels' resources by forcing us to pursue this sanctions motion while we clearly have other things that we could have been spending our time on.  Examples of some of the other work we typically do can be seen in the orders I am attaching here, which are primarily certified class actions, many of which involve thousands of hours of time.  Such time which had to be spent protecting the Class from unethical conduct in this matter prevented us from working on other matters, including matters in which we have been approved for significant lodestar multipliers in class action settlements.  I think it is more than fair for us to be compensated at our 2018 hourly rates for part of our time, with a 10% reduction on top of that as a sanction for Defendant and defense counsels' conduct given that Class Counsel otherwise would have been spending time on other important tasks, both in this case and others, had Defendant chosen an ethical course of action.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct, and that this declaration was executed on September 4, 2020.

By:/s/ Adrian R. Bacon

Adrian R. Bacon

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

**Case No.** CV 15-4912 MWF (PJWx)                    **Date:  November 30, 2018**

**Title:**        Sheena Raffin v. Medicredit, Inc., et al.

---

**Present:**   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                                      Court Reporter:
Rita Sanchez                                       Not Reported

Attorneys Present for Plaintiff:                   Attorneys Present for Defendant:
None Present                                       None Present

**Proceedings (In Chambers):**   ORDER RE: MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT [199] AND
MOTION FOR ATTORNEYS' FEES, COSTS, AND
INCENTIVE AWARDS [200]

Before the Court are two motions by Lead Plaintiff Sheena Raffin, both filed on September 10, 2018.  First, there is the Motion for Final Approval of Class Action Settlement (the "Settlement Motion").  (Docket No. 199).  Second, there is the Motion for Attorneys' Fees, Costs, and Incentive Awards (the "Fee Motion").  (Docket No. 200).  No opposition or objection to either motion was filed, and there was only one opt-out from the Settlement Agreement.  The Court has read and considered the papers in connection with the two motions and held a hearing on November 19, 2018.  At the hearing, Lead Plaintiff's counsel indicated that there was also no informal opposition or objection to the Settlement Agreement.

For the reasons discussed below, the two motions are ruled upon as follows:

- The Settlement Motion is **GRANTED**.  The Settlement Agreement is fair, reasonable, and adequate to serve the interests of the class members.

- The Fee Motion is **GRANTED**.  The requested attorneys' fees and costs are fair compensation for Class Counsel's efforts and reimbursement for their expenses, and the incentive award requested is reasonable.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 15-4912 MWF (PJWx)**            **Date:** **November 30, 2018**
**Title:**      Sheena Raffin v. Medicredit, Inc., et al.

## I.    **BACKGROUND**

### A.    **Factual and Procedural Background**

The Court previously discussed the following factual and procedural background to this action in an Order preliminarily approving the settlement.  (*See generally* Preliminary Approval Order (Docket No. 197)).

On June 29, 2015, Lead Plaintiff Sheena Raffin commenced this class action against Medicredit, Inc. and the Outsource Group, Inc. (together "Medicredit" or "Defendants"), and two other defendants that have since been dismissed from the action.  (Complaint (Docket No. 1)).  In her operative First Amended Complaint, filed the next day, Plaintiff alleged that Medicredit violated sections 632 and 632.7 of the California Penal Code—provisions of what is commonly referred to as the California Invasion of Privacy Act ("IPA")—when they called her in January 2015 to discuss a debt and failed to disclose that the call was being recorded, and that Medicredit did the same thing to other California residents.  (*See* First Amended Complaint ("FAC") ¶¶ 16–21, 41–57 (Docket No. 8)).  In connection with each of her claims, Lead Plaintiff sought injunctive relief and the greater of statutory damages of $5,000 per violation or treble actual damages for herself and each class member pursuant to Penal Code section 637.2(a).  (*Id.* ¶¶ 59–60, 67, 69).

On January 3, 2017, the district court (the Honorable George H. King, United States District Judge) granted Lead Plaintiff's motion for class certification with respect to Lead Plaintiff's section 632.7 claim, but not her section 632 claim.  (Docket No. 88).  The court certified the following class:

> All individuals who, from June 29, 2014 to February 26, 2015, while physically present in California and using a cellular device with a California area code, participated for the first time in a telephone conversation with a representative of Defendants or their agents who were recording the conversation without first informing the individual that the conversation was being recorded [the "Class Members"].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-4912 MWF (PJWx)                    Date:  November 30, 2018
Title:      Sheena Raffin v. Medicredit, Inc., et al.

(*Id.*).

Between July and October 2017, after completing discovery, the parties filed six motions:

- On July 24, 2017, Lead Plaintiff filed a Motion for Approval of Notice of Class Certification (Docket No. 114);

- On July 24, 2017, Medicredit filed a Motion for Summary Judgment (Docket No. 118);

- On July 24, 2017, Lead Plaintiff filed a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 120);

- On August 14, 2017, Medicredit filed a Motion to Dismiss All Claims under Section 632.7 of the California Penal Code and to Dismiss the Outsource Group, Inc. (Docket No. 131);

- On September 11, 2017, Lead Plaintiff filed a Motion to Strike the Declaration of Amir Afshar-Bakeshloo in Support of Medicredit's Summary Judgment Motion (Docket No. 135); and

- On October 19, 2017, Medicredit filed a Motion to Decertify Class (Docket No. 168).

On December 4, 2017, after they had filed oppositions and replies (and in one instance, a sur-reply) in connection with each of these motions and shortly before the Court was to hold a hearing on each of the motions, the parties requested, by stipulation, that the Court defer ruling on these six motions pending mediation. (Docket No. 190).  The Court granted that request.  (Docket No. 191).

On March 5, 2018, the parties filed a status report indicating that, with the assistance of mediator and former United States District Judge Layn R. Phillips, they had reached a settlement (the "Settlement Agreement").  (Docket No. 192).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 15-4912 MWF (PJWx)**                    **Date:  November 30, 2018**
**Title:       Sheena Raffin v. Medicredit, Inc., et al.**

On April 16, 2018, Lead Plaintiff sought preliminary approval of the parties' settlement and certification of a settlement class pursuant to Rule 23(b)(3).  And on May 11, 2018, the Court preliminarily approved the Settlement Agreement. (Preliminary Approval Order at 1).

### B.      **The Settlement Agreement**

The Settlement Agreement establishes a fund of $5 million for payment of attorneys' fees, class notice, claims administration, and an incentive award to Lead Plaintiff, with the remainder reserved for payment of Class Members' claims.  (*Id.* at 4–5).  Class Members claim portions of the fund by timely submitting a proof of claim. (*Id.* at 5).  In exchange for the payment, Class Members agree to release "any known and unknown claims against Medicredit arising out of the recording of phone calls by Medicredit to mobile phone numbers between June 29, 2014 and February 26, 2015." (*Id.*).

Notice was provided to settlement Class Members in the manner approved by the Court in the Preliminary Approval Order.  (Settlement Mot. at 7).  The claims administrator, Epiq Systems, Inc. ("Epiq"), mailed postcard notices to all Class Members for whom Epiq had (or was able to locate) address information; the notices summarized the nature of this action and informed recipients who qualified for class membership, how to submit a claim form, how to opt out, and where to obtain additional information. (*Id.* at 7–9).  Epiq also posted on a specially created settlement website, http://www.medicreditcipasettlement.com, a "detailed and full notice in a question and answer format, the Complaint, the approval papers and fee request papers, the settlement agreement, the answer to the complaint, and the long form notice." (*Id.* at 8).  Epiq sent out 11,028 postcard notices, containing a double-sided 4.25" x 6" postcard and tear-off claim form with a pre-paid return address, to potential Class Members.  (*Id.*).

## II.      **DISCUSSION**

Lead Plaintiff seeks final approval of the Settlement Agreement and an incentive award of $15,000.  (Settlement Mot. at 11–19; Fee Mot. at 18).  Class Counsel seeks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 15-4912 MWF (PJWx)                    Date:  November 30, 2018**
**Title:       Sheena Raffin v. Medicredit, Inc., et al.**

fees in the amount of $1,650,000 or 33% of the Settlement Fund, and reimbursement of expenses incurred in the amount of $123,688.82.  (Fee Mot. at 5–17).

### A.    **Final Approval of Class Action**

Before approving a class action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted) (applying the factors announced in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026).  "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."  *Linney v. Cellular Alaska P'ship*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234, 1234 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 15-4912 MWF (PJWx)**                    **Date:  November 30, 2018**
Title:        Sheena Raffin v. Medicredit, Inc., et al.

"In addition, the settlement may not be the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the Court is satisfied that the Settlement Agreement is not the product of collusion between the parties.  The Settlement Agreement is the outcome of an arms-length negotiation conducted with the help of mediator and former United States District Judge Layn R. Phillips.  (Settlement Mot. at 13).  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  Moreover, Class Counsel have extensive experience litigating consumer class actions on behalf of plaintiffs, particularly in the area of the Telephone Consumer Protection Act, and have obtained approximately $75 million in settlement payments in approximately 30 class actions filed in California state and federal courts over the previous three years.  (Preliminary Approval Order at 6).  The arms-length nature of the negotiation resulting in the Settlement Agreement and the recommendation of experienced class action counsel supports final approval.  *See Linney*, 1997 WL 450064, at *5.

Moreover, consideration of the *Hanlon* factors dictates final approval of the proposed settlement:

### 1.    Strength of Plaintiff's case and risk, expense, complexity, and likely duration of further litigation

When assessing the strength of a plaintiff's case, the Court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).

Lead Plaintiff acknowledges that, despite the strength of her case, "there are risks to both sides in continuing the [l]itigation . . . [and] Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class, including the significant benefit and the deterrent

---

**CIVIL MINUTES—GENERAL**                                                        **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-4912 MWF (PJWx)                    Date:  November 30, 2018
Title:       Sheena Raffin v. Medicredit, Inc., et al.

effects it would have." (Settlement Mot. at 13–14). Lead Plaintiff also recognizes that Medicredit "has strong and meritorious defenses not only to the action as a whole, but also as to class certification and the amount of damages sought." (*Id.* at 14). This recognition is especially evident considering the volume of the parties' motions to dismiss, for summary judgment, and to decertify the class, as noted above. If the parties were to proceed with further litigation, Lead Plaintiff acknowledges that there is a risk that "the class might not recover." (*Id.*). Moreover, significant party and judicial resources would be expended in further deposition and expert discovery, motion practice, trial, and potentially appeals following trial. This factor weighs in favor of final approval of the Settlement Agreement.

## 2.        Amount offered in settlement

The Court concludes the $5 million in cash offered in the Settlement Agreement is fair and reasonable. The Court looks at "the complete package taken as a whole, rather than the individual component parts" in making this determination. *Officers for Justice*, 688 F.2d at 628 (9th Cir. 1982). After deducting administration costs, attorney's fees and expenses, and the proposed incentive award, the Class Members will collectively receive at least $3,061,311.18 of these available funds. (Settlement Mot. at 14). Each Class Member who submitted a valid claim would receive approximately $3,242.91. (*Id.*). As the Court noted in the Preliminary Approval Order, this amount is less than the potential $5,000 in statutory damages each Class Member might receive if the class were to successfully litigate this action to a favorable judgment. (Preliminary Approval Order at 7–8). But when considered in light of the potential pitfalls posed by Medicredit's mooted summary judgment and decertification motions, and then (if Plaintiff and the class survived those motions) by trial, a recovery of $3,242.91 per class member who submitted a valid claim appears fair and reasonable. If this litigation were to continue, Lead Plaintiff may not prevail on all claims and overcome all defenses and the aggregate recoverable damages may be significantly less than $5 million. Moreover, continued litigation would result in considerable additional expenses. This factor therefore weighs in favor of final settlement approval.

CIVIL MINUTES—GENERAL                                                    7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **CV 15-4912 MWF (PJWx)**          Date: **November 30, 2018**
Title:      Sheena Raffin v. Medicredit, Inc., et al.

### 3.      Extent of discovery completed and stage of the proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Lead Plaintiff contends that the parties have engaged in substantial discovery, including "both informal and informal discovery surrounding [Lead] Plaintiff's claims and [Medicredit's] defense", extensive review of thousands of pages of documents and thousands of recordings, numerous depositions, and collaboration with four experts and consultants. (*See* Settlement Mot. at 18; Fee Mot. at 11). The parties also engaged in extensive adversarial motion practice, including class certification, summary judgment, and decertification. The Court concludes the parties had ample information with which to make informed settlement decisions. This factor weighs in favor final settlement approval.

### 4.      Experience and views of Class Counsel

Lead Plaintiff's counsel have extensive experience litigating consumer class actions for plaintiffs. (Settlement Mot. at 18). Class Counsel are "well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class." (*Id.*). Further, Class Counsel have conducted detailed discovery in this action, filed numerous motions for Lead Plaintiff and the class, and engaged in extensive mediated negotiations before ultimately reaching and recommending this Settlement Agreement. (*Id.*). This factor therefore weighs in favor of final settlement approval.

### 5.      Reaction of the Class Members to the Settlement Agreement

No Class Members have objected to and only one Class Member opted out of the Settlement Agreement, and no Class Members have objected to the proposed award of attorneys' fees and expenses. (*Id.* at 18–19). The deadline for filing any objections was October 15, 2018. (*Id.* at 7). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm'cns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-4912 MWF (PJWx)                    Date:  November 30, 2018
Title:        Sheena Raffin v. Medicredit, Inc., et al.

(affirming settlement with 45 objections out of 90,000 notices sent).  Thus, this factor
also weighs in favor of final settlement approval.

### B.    Attorneys' Fees

In the Ninth Circuit, there are two primary methods to calculate attorney's fees:
the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental
Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citation omitted).  "The lodestar
method requires 'multiplying the number of hours the prevailing party reasonably
expended on the litigation (as supported by adequate documentation) by a reasonable
hourly rate for the region and for the experience of the lawyer.'"  *Id.* (citation omitted).

"Under the percentage-of-recovery method, the attorneys' fees equal some
percentage of the common settlement fund; in this circuit, the benchmark percentage is
25%."  *Id.* (citation omitted).  However, the "benchmark percentage should be
adjusted, or replaced by a lodestar calculation, when special circumstances indicate
that the percentage recovery would be either too small or too large in light of the hours
devoted to the case or other relevant factors."  *Six Mexican Workers v. Ariz. Citrus
Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  "The Ninth Circuit has identified a
number of factors that may be relevant in determining if the award is reasonable:
(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality
of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel;
and (6) the awards made in similar cases."  *Martin v. Ameripride Services, Inc.*, No.
08-cv-440-MMA, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (citing *Vizcaino v.
Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).  The choice of "the
benchmark or any other rate must be supported by findings that take into account all of
the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

Class Counsel seeks fees in the amount of $1,650,000, or 33% of the $5 million
settlement fund.  (Fee Mot. at 5).  The Court previously noted that it may "entertain
some upward departure from the presumptively reasonable 25%" but "required
detailed billing records substantiating [such request]."  (Preliminary Approval Order at
9).  After reviewing the 40 pages of billing records submitted, the Court now concludes

---

Case 3:17-cv-00986-BAS-WGS Document 194-5 Filed 09/04/20 PageID.9516 Page 21 of 66
Case 2:15-cv-04912-MWF-PJW Document 205 Filed 11/30/18 Page 10 of 14 Page ID
#:5731

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 15-4912 MWF (PJWx)**                    **Date:  November 30, 2018**
Title:       Sheena Raffin v. Medicredit, Inc., et al.

that Class Counsel's request is reasonable and fair, especially considering the excellent recovery of $5 million.  (Fee Mot. at 8–10; Declaration of Todd M. Friedman on September 10, 2018 ("Friedman Decl. I") Ex. A (Docket No. 200-1)).

Moreover, continued litigation carries the risk for the Class of an inferior award or nothing.  Maintaining class action status, as well as ultimately obtaining a finding of liability, remains uncertain.  (Fee Mot. at 10–11).  Class Counsel exercised considerable skill in the litigation of the motion for class certification, dispositive motions, and substantial discovery (including discovery disputes), and they did so against experienced, highly skilled opposing counsel and on an entirely contingent basis.  (*Id.* at 11–13).

A lodestar crosscheck confirms the reasonableness of the award.  (*Id.* at 13–17).  Mr. Friedman's declaration and itemized billing summary submitted in support of the Fee Motion show that billing rates were $175 per hour for law clerks, $370 for a junior associate, $575 for a senior associate, and between $625 and $725 for two partners.  (Friedman Decl. I ¶¶ 37–49).  There was no co-counsel on the case.  These rates fall within the reasonable range.  *See, e.g., In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-md-2143-RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving rate of $950 per hour for senior partner); *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (approving rates of between $845 and $1,200 per hour for three senior attorneys, and rates of paralegals at $290 or lower).

In addition, the hours worked on the case—totaling 2,018.70—are reasonable in light of the complexity of the case and counsel's investment in obtaining a fair result for their clients.  The cumulative lodestar is $1,274,102.50.  (Friedman Decl. I ¶ 49; Fee Mot. at 14).  This figure does not include efforts expended after the filing of the Settlement Motion and Fee Motion, such as attending the final fairness hearing and directing the claims administration process.  (Friedman Decl. I ¶ 34).  Nor does this figure include the time spent by other clerks and paralegals.  (*Id.*).

Case 3:17-cv-00986-BAS-WVG Document 194-2 Filed 09/04/20 PageID.9517 Page 22 of 66
Case 2:15-cv-04912-MWF-PJW Document 205 Filed 11/30/18 Page 11 of 14 Page ID
#:5732

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-4912 MWF (PJWx)                    Date:  November 30, 2018
Title:        Sheena Raffin v. Medicredit, Inc., et al.

Finally, Class Members were notified that Class Counsel would seek fees of up
to 33% of the settlement amount.  No Class Members have objected to the requested
fee.  (Declaration of Todd M. Friedman on November 6, 2018 ("Friedman Decl. II")
¶ 6 (Docket No. 203)).

Accordingly, the Court concludes that Class Counsel's request for attorneys'
fees is reasonable.

## C.     Reimbursement of Litigation Expenses

Class Counsel next seeks reimbursement of litigation expenses in the amount of
$123,688.82.  (Fee Mot. at 17).

Attorneys may recover their reasonable expenses that would typically be billed
to paying clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19
(9th Cir. 1994).

Class Counsel provides a detailed breakdown of costs.  (Friedman Decl. I ¶ 35)
First, approximately 19.4%, or $28,147.50, of the total expenses relate to mediation
fees.  (*Id.*).  Second, approximately 59.2%, or $85,731.25 of the total expenses relate to
expenses for expert witnesses and consultants, an important part of litigation involving
technical privacy issues.  (*Id.*).  Finally, the remaining $33,137.97 relates to necessary
travel, filing and service fees, document storage and maintenance fees, and printing
fees.  (*Id.*).  Attorneys routinely bill clients for such expenses, and it is therefore
appropriate to allow Class Counsel to recover these costs from the settlement fund.

Class Members were also notified that Class Counsel would seek reimbursement
of litigation expenses up to $250,000.  No Class Members have objected to the
requested expenses.  (Friedman Decl. II ¶ 6).  Accordingly, the Court concludes that
Class Counsel's request for litigation expenses is fair and reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-4912 MWF (PJWx)                Date:  November 30, 2018
Title:       Sheena Raffin v. Medicredit, Inc., et al.

### D.      Incentive Award

Lead Plaintiff also seeks an incentive award of $15,000 for her participation in this action.  (Fee Mot. at 18).

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton*, 327 F.3d at 977 (9th Cir. 2003).  When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Id.*

The Fee Motion, citing to a few cases, notes that incentive awards of $5,000 is presumptively reasonable.  (Fee Mot. at 18 (citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942–43; *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014)).  The Court, however, is not persuaded that these cases support Lead Plaintiff's request for $15,000.  But an independent search does reveal that incentive awards of $15,000 have been found to be reasonable.  *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 awarded to lead plaintiff).

The Fee Motion also notes that Lead Plaintiff has (1) turned down numerous requests to settle her claims individually for more than $15,000, and (2) assisted in more than three years of litigation, by sitting for a deposition, participating in two mediation sessions, providing documents and information to counsel, participating in various motions and settlement discussions, and reviewing and approving the settlement on behalf of the class.  (Fee Mot. at 18–19).  In light of the caselaw supporting a $15,000 incentive award and the significant time and effort Lead Plaintiff expended in this litigation, the Court finds the award of $15,000 appropriate.

---

**CIVIL MINUTES—GENERAL**                                                    **12**

Case 2:17-cv-00986-BAS-WGS  Document 194-2  Filed 09/04/20  PageID.5519  Page 24 of 66
Case 2:15-cv-04912-MWF-PJW  Document 205  Filed 11/30/18  Page 23 of 14  Page ID
#:5734

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 15-4912 MWF (PJWx)**                    **Date:  November 30, 2018**
Title:       Sheena Raffin v. Medicredit, Inc., et al.

### E.   *Cy Pres* **Recipient**

The parties dispute the *cy pres* recipient.  Lead Plaintiff proposes the Public Justice Foundation, a public interest organization that aggressively prosecutes a wide range of class actions, has a special project to preserve class actions and prevent their abuse, and advocates against binding arbitration clauses for employees and consumers. Medicredit proposes the Legal Aid Association of California ("Legal Aid"), with the funds earmarked to support consumer privacy protections.

Any portion of the settlement fund remaining after the checks have been disbursed will be rolled over into a *cy pres* fund.  The Ninth Circuit discussed requirements for *cy pres* recipients in *Dennis v. Kellog Co.*, 697 F.3d 858 (9th Cir. 2012).  The court emphasized that "a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members." *Id.* at 865.  "A *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,' and must not benefit a group 'too remote from the plaintiff class[.]'" *Id.* (quoting *Six Mexican Workers*, 904 F.2d at 1308–09).  The court has "broad discretionary powers in shaping" a *cy pres* award.  *In re Easysaver Rewards Litig.*, 906 F.3d 747, 761 (9th Cir. 2018) (citation omitted).

Here, having considered the parties' proposals and reviewing the two organizations, the Court concludes that Legal Aid is the proper choice for a *cy pres* recipient.  Since one of the many objectives of IPA, the underlying statute in the case, is to protect the privacy of California consumers in their telephonic communications, earmarked funds to support consumer privacy protections seem appropriate to advance that objective.  Moreover, the focus of Legal Aid is to protect California residents, like Class Members in this case.  The Court views a *cy pres* award to Public Justice Foundation to advance class action fairness and advocates against binding arbitration, while important, to be too remote from the objectives of IPA and this case.  *See Dennis*, 697 F.3d at 865 (noting that "the *cy pres* distribution was an abuse of discretion because there was 'no reasonable certainty' that any class member would benefit from it, even though the money would go 'to areas where the class members

Case 2:17-cv-00986-BAS-WGS   Document 194-2   Filed 09/04/20   PageID.2520   Page 25 of 66
Case 2:15-cv-04912-MWF-PJW   Document 205   Filed 11/30/18   Page 14 of 14   Page ID
#:5735

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 15-4912 MWF (PJWx) | Date: November 30, 2018 |
|---|---|---|
| Title: | Sheena Raffin v. Medicredit, Inc., et al. | |

may live'") (citation omitted).  At the hearing, Lead Plaintiff also noted that she was not opposed to Legal Aid as the *cy pres* recipient.

## III. **CONCLUSION**

For the reasons discussed above, both the Settlement Motion and the Fee Motion are **GRANTED**.

The Court awards Class Counsel $1,650,000 in fees and $123,688.82 in costs, to be paid from the settlement fund.  The Court also awards Lead Plaintiff an incentive payment of $15,000.  The Court further approves Legal Aid to be the *cy pres* recipient.

A separate judgment will issue.

IT IS SO ORDERED.

# EXHIBIT B

Todd M. Friedman (216752)
LAW OFFICE OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
Attorney for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOANNA FRYT, | CASE: BC682078 |
| Plaintiff, | NOTICE OF RULING ON OCTOBER 26, 2018 |
| -vs- | |
| SRBV STAFFING LLC, et al, | |
| Defendant. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at the October 26, 2018 hearing on the Motion to Compel Deposition and *ex partes*, the Honorable Judge ruled as follows:

1. The Court adopted its tentative ruling attached hereto as Exhibit A, and ordered Defendant Rufus Hankey to appear for deposition on November 14, 2018 at 10:00 a.m. and to pay monetary sanctions to Plaintiff's counsel of $4,647.65.

2. The Court denied Defendant Rufus Hankey's *ex parte* for a trial continuance.

3. Plaintiff to give notice.

Dated: October 31, 2018                    LAW OFFICES OF TODD M. FRIEDMAN, P.C.

Todd M. Friedman
Attorney for Plaintiff

1

NOTICE OF RULING

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT A
Tentative Ruling

**NOTICE OF RULING**

THE SUPERIOR COURT OF CALIFORNIA
**COUNTY OF LOS ANGELES**

Español  Tiếng Việt  한국어  中文  Tagalog

Search

| Home | Online Services | Forms, Filings & Files | Self-Help | Divisions | Jury | General Info |
|------|-----------------|------------------------|-----------|-----------|------|--------------|
| | Pay Fines, Search Records... | Forms, Filing Fees... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA... |

ONLINE SERVICES

## Tentative Rulings

**DEPARTMENT 34 LAW AND MOTION RULINGS**
The Court often posts its tentative several days in advance of the hearing. Please re-check the tentative rulings the day before the hearing to be sure that the Court has not revised the ruling since the time it was posted.

Please call the clerk at (213) 633-0154 by 4:00 pm. the court day before the hearing if you wish to submit on the tentative.

**Case Number:** BC682078   **Hearing Date:** October 26, 2018   **Dept:** 34

**SUBJECT: Motion to Compel Deposition**

**Moving Party**:  Plaintiff Joanna Fryt
**Resp. Party**:  None

The motion is GRANTED. Plaintiff is awarded sanctions in the reduced amount of $4,647.65, as against Defendant Rufus Hankey.  If the parties cannot agree upon a date for the deposition, the Court will decide upon a date for the deposition at the hearing.

BACKGROUND:

Plaintiff Joanna Fryt commenced this action on November 1, 2017, against Defendants SRBV Staffing, LLC, Amber Hankey, and Rufus Hankey for: (1) overtime and double time wages; (2) failure to pay wages; (3) minimum wages and liquidated damages; (4) failure to pay wages; (5) failure to allow or pay for meal periods; (6) failure to allow or pay for rest periods; (7) waiting time penalties; (8) failure to provide accurate itemized wage statements; and (9) unfair business practices.

On October 19, 2018, Plaintiff appeared ex parte to compel the deposition of Rufus Hankey. The Court specially set the matter for hearing on October 26, 2018, and ordered an opposition, if any, to be filed by October 24, 2018.

ANALYSIS:

A.   <u>Relevant Law</u>

"If, after service of a deposition notice, a party to the action . . . , without having served a valid objection under Section 2025.410, fails to appear for examination, or to proceed with it, or to produce for inspection any document, electronically stored information, or tangible thing described in the deposition notice, the party giving the notice may move for an order compelling the deponent's attendance and testimony, and the production for inspection of any document, electronically stored information, or tangible thing described in the deposition notice." (Code Civ. Proc. § 2025.450(a).)

"The motion shall be accompanied by a meet and confer declaration under Section 2016.040, or, when the deponent fails to attend the deposition and produce the documents, electronically stored information, or things described in the deposition notice, by a declaration stating that the petitioner has contacted the deponent to inquire about the nonappearance." (Code Civ. Proc., § 2025.450(b)(2).)

"If a motion under subdivision (a) is granted, the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) in favor of the party who noticed the deposition and against the deponent or the party with whom the deponent is affiliated, unless the court finds that the one subject to the sanction

acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Code Civ. Proc., § 2045.450(g)(1).)

B.   Discussion

The deposition of Mr. Hankey was originally noticed for September 18, 2018. (Bacon Decl. ¶ 6.) By agreement between Plaintiff and Mr. Hankey's former counsel, the deposition was ultimately continued to October 8, 2018 (though, in the interim, Plaintiff incurred multiple court reporter fees relating to the scheduling and cancelling of alternative dates for the deposition). (Bacon Decl. ¶¶ 7-10.) On October 4, 2018, Mr. Hankey's counsel was relieved as counsel, and on October 7, 2018, Mr. Hankey requested that Plaintiff further continue the deposition to October 18, 2018, in order to allow him to obtain counsel. (Bacon Decl. ¶ 11.) The agreement to depose Mr. Hankey on October 18 was confirmed in writing. (Bacon Decl., Exh. D.) Subsequently, on October 17, 2018, Mr. Hankey informed Plaintiff he would not be appearing because he had not yet secured counsel. (Bacon Decl. ¶¶ 14-15.) Plaintiff informed Mr. Hankey that no further delay would be permitted, but Mr. Hankey refused to appear. (Bacon Decl. ¶¶ 16-20.) Because of the impending trial and cut-off date, Plaintiff sought ex parte relief the following day.

The Court finds that Plaintiff's motion is proper.  The Court believes that Mr. Hankey is simply trying to delay his deposition.  He knew that his counsel was asking to be relieved from representing him more than two weeks before the original date scheduled for the deposition. (See Notice to be Relieved, filed 9/7/2018.)  Trial is scheduled for Nov. 26, 2018; the Court has stated that there would be no further trial continuances.

Mr. Hankey must appear for his deposition.  The Court has received no evidence that Mr. Hankey is indigent or otherwise is unable to obtain new counsel; his failure to timely obtain new counsel does not excuse his obligation to appear. Plaintiff's motion to compel deposition is therefore GRANTED.

Plaintiff seeks $16,022.65 in sanctions, representing (1) $14,500 in attorney's fees (23.2 hours of work at a rate of $625/hour); (2) $1,055 for court reporter's fees for cancelled depositions; (3) $217.65 to mail deposition notices to parties via FedEx; and (4) an expected $250 charge for the most recent cancelled deposition, which has not yet been billed by the court reporter. (Bacon Decl. ¶¶ 22-23.)

Plaintiff's requested hours are excessive. The Court is not inclined to award the 12 hours identified by counsel as relating to preparation for the deposition, as the deposition will go forward, and therefore those hours were not spent in vain.  The Court further concludes the four hours requested for preparing the ex parte papers and the five hours requested for trying to arrange numerous earlier deposition dates are also excessive. Even if the hours weren't excessive, it does not require an attorney, billing at $625/hour, to spend five hours arranging dates for a deposition.

The Court awards sanctions for five hours for preparing the motion and attending the two hearings (on the ex parte and the motion) in the amount of $3,125.00.  The court also awards costs in the amount of $1,522.65, for a total award of $4,647.65 against Defendant Mr. Hankey.



Art Showcased in
Los Angeles Courthouse Jury Rooms

"Girl in Pink" by Nancy Artis
2009 3rd Place Professional

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business Address is 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367.

On October 31, 2018, I served the following document(s) described as: NOTICE OF RULING ON OCTOBER 26, 2018, on all interested parties in this action by placing:

[X]    a true copy
[  ]    the original thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Rufus Hankey<br>441 N. Alfred St.<br>Los Angeles, CA 90048<br>rufushankey1@gmail.com | Anthony Ukran<br>STOLAR & ASSOCIATES, APLC<br>433 N. Camden Dr., Suite 600<br>Beverly Hills, CA 90210<br>tony@lafamilylawyers.com |

[X]    BY EMAIL

[X]    BY MAIL (1013 a, 2015.5 CCP)

[X]    I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 31, 2018, at WOODLAND HILLS, California.

By: _____
Thomas E. Wheeler

3

**NOTICE OF RULING**

# EXHIBIT C

Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiffs, Anne Wolf,*
*Anthony Fehrenbach, Carlos Romero, Robin Sergi*
*and all others similarly situated*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE WOLF, ANTHONY FEHRENBACH, CARLOS ROMERO, AND ROBIN SERGI individually, and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> HEWLETT PACKARD COMPANY, <br><br> Defendant. | Case No. 5:15-cv-01221-TJH-GJS <br><br> [Hon. Terry J. Hatter Jr.] <br><br> **DECLARATION OF MICHAEL J. HASSEN ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

I Michael J. Hassen, declare:

1.     I am an attorney at law duly licensed to practice before this Court, and a founding partner of Reallaw AP. My office is in Walnut Creek, California. I was previously a partner at Jeffer, Mangels, Butler & Mitchell LLP and, though

I was technically "based" in the San Francisco office, I also had an office in Los Angeles and frequently handled as many cases in Los Angeles state and federal courts as in San Francisco state and federal courts.

2.     I am not counsel in this action, and I have no financial stake in this case. I was asked by Plaintiffs' Counsel, with whom I have worked across the aisle as opposing counsel on several cases over the years, to provide a declaration in support of the reasonable hourly rates that are appropriate in the Northern District of California and the Central District of California for class action attorneys.

3.     I have been practicing law more than 30 years, and primarily in the Northern and Central Districts of California. My primary areas of practice include business and commercial litigation, class action defense, intellectual property, securities, and unfair competition. In addition, I also have a mediation practice. I understand that this case involves claims brought under the UCL, CLRA and FAL. These are laws that I have litigated as class action defense counsel literally hundreds of times over the past 33 years.

4.     I understand that Plaintiffs' counsel have requested to be compensated at the following hourly rates:

| | |
|---|---|
| Todd M. Friedman – Managing Partner (18 years) | $725 |
| Adrian R. Bacon – Partner (8 years) | $625 |
| Meghan George – Senior Associate (8 years) | $575 |
| Thomas Wheeler – Associate (3 years) | $370 |
| Yoel Hanohov – Law Clerk/Junior Associate (1 year) | $175 |
| Gianfranco De Girolamo (Law Clerk) | $175 |

**DECLARATION OF MICHAEL J HASSEN**

5.   I believe the hourly rates sought are fair and reasonable for attorneys of comparable experience practicing in the Bay Area and Los Angeles.

6.   For comparison purposes, my hourly rate is $1,100 for class action defense, and when I was working at Jeffer, Mangels, Butler & Mitchell LLP, the hourly rates for the attorneys and staff of comparable experience working under my supervision were higher than those sought by Plaintiffs' Counsel herein.

7.   It is also my opinion, having litigated literally dozens of cases against Mr. Friedman and Mr. Bacon over the years that they are capable class counsel whose rates are fair and reasonable considering their expertise and experience in class action and consumer protection litigation.

8.   This opinion is based on the *Laffey* Matrix, which is attached hereto as Exhibit A. *See Nemecek & Cole v. Horn* 208 Cal.App.4th 641 (Cal.App. 2012) (approving use of the *Laffey* Matrix); *Syers Properties III, Inc. v. Rankin* 226 Cal.App.4th 691, 702 (Cal.App. 2014) *reh'g denied, review denied* (affirming award of attorney fees and finding trial court did not err in relying on *Laffey* Matrix in determining reasonable hourly rate).

9.   But an adjustment must be made to these amounts. As stated in *In re HPL Technologies, Inc. Sec. Litig.*, 366 F.Supp.2d 912, 921-22 (N.D. Cal. 2005):

> These figures are, however, tailored for the District of Columbia, which has a somewhat lower cost of living than the San Francisco Bay area (in which lead counsel's firm operates); the court will adjust these figures accordingly. The locality pay differentials within the federal courts-which, like law firms, employ lawyers and legal support staff-can approximate this difference. See http://jnet.ao.dcn/Human_Resources /Pay_Tables/2005_Pay Tables/Judiciary_Salary_Plan Pay_Tables_2005.html. The Washington-Baltimore area has a +15.98% locality pay differential; the San Francisco-Oakland-San Jose area has a +26.39% locality pay differential. ***Thus, adjusting the Laffey matrix figures upward by approximately 9% will yield rates appropriate for the Bay area.*** (Italics added.)

DECLARATION OF MICHAEL J HASSEN

10.     For simplicity, I use a 10% figure because the locality adjustment in 2005 was 9% but the locality adjustment as of January 11, 2016, was 35.75% minus 24.78%, or roughly 11%. Using a 10% adjustment is reasonable because the hourly rate need only be approximate, not exact. *See In re HPL Technologies*, at 922.

11.     According to the *Laffey* matrix, the reasonable hourly billing rate for an attorney in the District of Columbia with 18 years of experience from June 1, 2018 through May 31, 2019 is $742 (*see* Exh. A). Adjusting for the locality by adding 10%, the reasonable hourly billing rate for an attorney in the Bay Area is $742 + $74.20 = $816.20. Mr. Friedman's billing rate of $725 per hour is thus reasonable.

12.     According to the *Laffey* matrix, the reasonable hourly billing rate for an attorney in the District of Columbia with 8 years of experience from June 1, 2018 through May 31, 2019 is $658 (*see* Exh. A). Adjusting for the locality by adding 10%, the reasonable hourly billing rate for an attorney in the Bay Area is $658 + $65.80 = $723.80. Mr. Bacon's and Ms. George's billing rates of $625 per hour and $575 per hour, respectively, are thus reasonable.

13.     According to the *Laffey* matrix, the reasonable hourly billing rate for an attorney in the District of Columbia with 3 years of experience from June 1, 2018 through May 31, 2019 is $371 (*see* Exh. A). Adjusting for the locality by adding 10%, the reasonable hourly billing rate for an attorney in the Bay Area is $371 + $37.10 = $408.10. Mr. Wheeler's billing rate of $370 per hour is thus reasonable.

14.     In my experience at prior law firms and at my present private practice, the billing rate for law clerks in the Bay Area and Los Angeles generally exceeds $200 per hour. The $175 per hour billed for Yoel Hanohov and Gianfranco De Girolamo is thus reasonable.

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on April 4, 2019, in Walnut Creek, California, pursuant to the laws of

3  California and the United States.

4

5                                          _____
                                           Michael J. Hassen, Esq.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 3:17-cv-00986-BAS-AGS Document 194-1 Filed 09/04/20 PageID.9533 Page 38 of 66
Case 5:15-cv-01221-TJH-SJB Document 158-3 Filed 04/07/18 Page 6 of 8 Page ID
#:5567

# EXHIBIT A

**DECLARATION OF TODD M. FRIEDMAN IN SUPPORT OF MOTION
FOR FINAL APPROVAL AND MOTION FOR FEES AND COSTS**

4/4/20 Case 2:17-cv-00986-BAS-AGS Document 194-18 Filed 09/04/20 PageID.9534 Page 39 of 66
Case 5:15-cv-01221-TJH-SJO Document 158-2 Filed 04/07/19 Page 53 of 8 PageID
#:5568

# LAFFEY MATRIX

History

Case Law

Expert Opinions

See the Matrix

Contact us

Home

Links

|  | | | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07- 5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06- 5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05- 5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04- 5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03- 6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02- 5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01- 5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00- 5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99- 5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98- 5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97- 5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96- 5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95- 5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/1/94-5/31/95 | 1.023369 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

# EXHIBIT D

Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiffs, Anne Wolf,*
*Anthony Fehrenbach, Carlos Romero, Robin Sergi*
*and all others similarly situated*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE WOLF, ANTHONY FEHRENBACH, CARLOS ROMERO, AND ROBIN SERGI individually, and on behalf of others similarly situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>HEWLETT PACKARD COMPANY,<br><br>   Defendant. | Case No. 5:15-cv-01221-TJH-GJS<br><br>[Hon. Terry J. Hatter Jr.]<br><br>**DECLARATION OF ABBAS KAZEROUNIAN ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

**DECLARATION OF ABBAS KAZEROUNIAN**

### <u>DECLARATION OF ABBAS KAZEROUNIAN</u>

**I, ABBAS KAZEROUNIAN, declare:**

1. I am an attorney at law duly licensed to practice before this Court, and a founding partner of Kazerouni Law Group, APC. My office is in Costa Mesa California, but I also have an office in San Diego, and regularly practice in the Southern District of California. I am not counsel in this action, and I have no financial stake in this case. I was asked by Plaintiffs' Counsel, with whom I have worked with as co-counsel on several cases over the years, to provide a declaration in support of the reasonable hourly rates that are appropriate in the Southern District of California for class action attorneys.

1. I have been practicing law for 12 years, and practice primarily in the Central and Southern District of California. My primary areas of practice include plaintiffs' side consumer protection class action litigation, including such areas of law as the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, and Unfair Competition. I understand that this case involves claims brought under the UCL, CLRA and FAL. These are laws that I have litigated as class action plaintiffs' counsel many times.

2. I understand that Plaintiffs' counsel have requested to be compensated at the following hourly rates:

| | |
|---|---|
| Todd M. Friedman – Managing Partner | $725 |
| Adrian R. Bacon – Partner | $625 |
| Meghan George – Senior Associate (8 years) | $575 |
| Thomas Wheeler – Associate (3 years) | $370 |
| Yoel Hanohov – Law | $175 |

- 1 -
**DECLARATION OF ABBANS KAZEROUNIAN**

| Clerk/Junior Associate (1 year) | |
|---|---|
| Gianfranco De Girolamo (Law Clerk) | $175 |

3.     I believe the hourly rates described herein are fair and reasonable for an attorney practicing in the San Diego Area.

4.     For comparison purposes, my hourly rate is $695.   The attorneys and staff working under my supervision bill at comparable rates for their levels of experience to those sought by Plaintiffs' Counsel described above.

5.     It is also my opinion, having litigated cases alongside Mr. Friedman and Mr. Bacon, including in several cases where both of our firms have been named co-class counsel by contested certification motion, that they are capable class counsel whose rates are fair and reasonable considering their expertise and experience in class action and consumer protection litigation.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on April 4, 2019, in Costa Mesa, California, pursuant to the laws of California and the United States.

Abbas Kazerounian, Esq.

**DECLARATION OF ABBANS KAZEROUNIAN**

# EXHIBIT E

DECLARATION OF ADRIAN R. BACON

1
2
3
4
5
6
7
8
9
10
11

# United States District Court
# Central District of California
# Western Division

12  ANNE WOLF, individually, and on          CV 15-01221 TJH (GJSx)
    behalf of others similarly situated,
13
                    Plaintiffs,
14
15          v.                                        Order
16  HEWLETT PACKARD COMPANY,
17                  Defendant.
18
19

20          The Court, for the third time, has considered Plaintiffs' motion for attorneys'

21  fees and costs, together with the moving and opposing papers, and the supplemental

22  briefs and declarations.

23          This class action, in effect, consolidated four separate putative class actions

24  spanning three District Courts – the Central, Northern, and Southern District of

25  California.  As part of the global settlement, the parties agreed that Defendant Hewlett-

26  Packard Company ["HP"] would pay Plaintiffs' reasonable attorneys' fees, separate

27  from the settlement fund.

28          On September 4, 2018, Plaintiffs filed a motion for attorneys' fees seeking

1   $1,157,352.00, based on 2,015.1 hours worked by five attorneys and a law clerk.  In

2   its opposition, HP argued that the requested fees were unreasonable, but acknowledged

3   that "the time reasonably expended in this action is no more than 1,434.3 hours."

4       On March 29, 2019, and June 24, 2019, the Court issued orders stating that it

5   could not determine the reasonableness of the hours expended by Plaintiffs' attorneys'

6   given the evidence before the Court.  Moreover, the Court ordered the parties to attend

7   a settlement conference before Magistrate Judge Gail Standish, and to file additional

8   supplemental declarations in support of their motion should the settlement discussions

9   fail.  The parties could not reach a settlement and, subsequently, filed supplemental

10  declarations and briefs.

11

12  **Attorneys' Fees**

13      In calculating reasonable attorneys' fees, the Court's starting point is the product

14  of the number of hours reasonably expended and the reasonable hourly rate.  *Gonzalez*

15  *v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  As previously noted by the

16  Court, it is Plaintiffs' burden to produce evidence that the rates and hours expended

17  were reasonable.  *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983).

18      The supplemental declaration of Todd Friedman, one of Plaintiffs' attorneys, is

19  nothing more than the functional equivalent of block-billing.  By giving paragraphical

20  explanations of what the firm did as a whole, Plaintiffs, again, failed to parcel out how

21  much time each biller spent on each task.  Plaintiffs argued that their counsels' lengthy

22  declarations would be sufficient to establish the reasonableness of their fee request if

23  this case were in the Northern District of California.  However, this Court is not in the

24  Northern District.  Despite the Court having pointed out this deficiency in the past, and

25  having given Plaintiffs multiple opportunities to rectify their shortcomings, Plaintiffs

26  still have not sufficiently addressed the Court's concerns or satisfied their burden of

27  establishing the reasonableness of the hours expended by their attorneys.

28      Nevertheless, Friedman's supplemental declaration stated that HP had previously

acknowledged that 1,434.3 hours was a reasonable amount of time for Plaintiffs' counsels work in this case, and proposed that "it would be fair to look at [HP's] position as a floor for what a fee award could potentially be." The Court is cognizant that the 1,434.3 hours did not take into account the work done by Plaintiffs' attorneys in the year following the filing of their initial motion for attorneys' fees. However, the Court will not award attorneys' fees for time Plaintiffs expended in seeking fees other than the hours expended to prepare the initial motion for attorneys' fees. It would be unreasonable to order HP to pay for Plaintiffs' numerous attempts to adequately jutify their fee requests.

Given HP's concession and Plaintiffs' continuous failures at satisfying their burden, the Court finds that 1,434.3 total hours expended is more than reasonable to compensate Plaintiffs' attorneys.

Plaintiffs seek the following hourly rates for their attorneys: (1) $725.00 for Todd Friedman, a partner; (2) $625.00 for Adrian Bacon, a partner; and (3) $175.00 for Yoel Hanohov, a law clerk who became an associate during the pendency of this action. Based on the evidence presented by the parties and the number of years of experience each attorney has, the Court finds those hourly rates for Plaintiffs' attorneys are reasonable.

Therefore, the Court will award Plaintiffs a total of $859,697.50 for reasonable attorneys' fees, as shown in the following chart.

|  | Requested Hours | Awarded Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Friedman (Partner) | 435.6 | 370.6 | $725.00 | $268,685.00 |
| Bacon (Partner) | 1,209.7 | 899.7 | $625.00 | $562,312.50 |
| Hanohov (Law Clerk/Junior Associate) | 214 | 164 | $175.00 | $28,700.00 |
| **Total** | 1859.3 | 1,434.3 |  | $859,697.50 |

## Costs

Plaintiffs seek $98,017.80 in costs, as detailed in the chart below.

Plaintiffs have not established the necessity or reasonableness of their airfare, hotel, meals, parking, or mileage costs.  With regard to transportation, Plaintiffs submitted evidence to establish that they spent only $230.36.

Plaintiffs seek $13,000.00 for expert fees for their proposed expert, William Buckley, comprised of a $10,000 retainer and $3,000 for services rendered.  On September 1, 2016, Judge Beverly Reid O'Connell concluded that Buckley was not qualified to offer an expert opinion in this case because his methodologies failed to satisfy the requirements of *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).  Accordingly, Judge O'Connell struck Buckley's declaration from the record.  Plaintiffs failed to establish the reasonableness of recovering expert fees for a purported expert who was deemed insufficient under *Daubert*.  HP need not bear the burden of Plaintiffs' poor choice in experts.

In his supplemental declaration, Friedman declared that he "anticipated" that his firm would spend "approximately" another $200.00 in chambers copies.  The Court will not award speculative costs.

The other costs are recoverable and reasonable.

|  | Requested Costs | Awarded Costs |
|---|---|---|
| Airfare | $1,015.92 | $0.00 |
| Hotel | $1,613.80 | $0.00 |
| Service of Subpoenas and Data Pull Costs | $8,440.90 | $8,440.90 |
| Service on Defendant | $847.02 | $847.02 |
| Service of Chambers Copies to Court | $1,192.95 | $992.95 |
| Court Reporter/Deposition Fees | $2,740.10 | $2,740.10 |
| Expert Fees | $13,000.00 | $0.00 |
| Class Notice | $53,960.53 | $53,960.53 |
| Filing Fees | $1,600.00 | $1,600.00 |

| | | |
|---|---|---|
| Meals | $60.16 | $0.00 |
| Parking | $220.00 | $0.00 |
| Mileage | $375.06 | $0.00 |
| Transportation | $300.36 | $230.36 |
| Mediation Fees | $12,645.00 | $12,645.00 |
| **Total** | $98,017.80 | $81,456.86 |

Accordingly,

It is Ordered that Plaintiffs' motion for attorneys' fees be, and hereby is, Granted.

It is further Ordered that HP shall pay to Plaintiffs their reasonable attorneys' fees of $859,697.50.

It is further Ordered that HP shall pay to Plaintiffs their reasonable costs of $81,456.86.

Date: December 16, 2019

Terry J. Hatter, Jr.
Senior United States District Judge

# EXHIBIT F

1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

11
12
13  **JEFF EUBANK,**

14              **Plaintiff,**

15        vs.

16

17  **TERMINIX INTERNATIONAL, INC.,**

18  Defendant.

19
20              **Defendants.**

21
22

**Case No. 3:15-CV-00145-WQH-JMA**

**ORDER GRANTING UNOPPOSED MOTION FOR APPROVAL OF PAGA SETTLEMENT**

**(Honorable William Q. Hayes)**

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

23
24
25
26
27
28

---

**ORDER GRANTING
MOTION FOR APPROVAL OF PAGA SETTLEMENT**

The Court, having read the papers filed with regard to Plaintiff's unopposed Motion for Approval of Settlement of Claims brought under the Private Attorneys General Act ("PAGA") (ECF No. 75), Labor Code section 2698, *et seq.* hereby FINDS AND ORDERS as follows:

Good cause appearing, and pursuant to Labor Code section 2699(l)(2), the Settlement Agreement, attached as Exhibit 1 to the Declaration of Adrian Bacon filed on January 27, 2019, is APPROVED.

The proposed settlement effectuates the purposes of PAGA and provides a fair recovery for the aggrieved employees ("Pest Control Technicians"), offers an appropriately limited release, and involves a significant payment to the Labor and Workforce Development Agency ("LWDA") to continue its enforcement work.

The attorneys' fees and costs sought are reasonable and appropriate. The rates that Plaintiff's Counsel have charged are reasonable and within the range of rates customarily charged by attorneys of comparable skill, qualifications, and experience in the Los Angeles Area.

The Settlement Administrator is directed to administer the settlement pursuant to its terms.

**IT IS SO ORDERED.**

Dated:  March 25, 2019

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court

**ORDER GRANTING**
**MOTION FOR APPROVAL OF PAGA SETTLEMENT**

# EXHIBIT G

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | Case No.  5:16-cv-05820-EJD |
| | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS** |
| | Re: Dkt. No. 119 |

## I.    INTRODUCTION

The court approved the parties' settlement of this consumer class action suit.  Presently before the court is Plaintiffs' motion for attorneys' fees in the amount of $2,750,000, costs in the amount of $83,011.78 and $5,000 service awards to each of the five class representatives.  Having considered the parties' briefing and conducted an *in camera* review of the billing records, the court will grant in part and deny in part Plaintiffs' motion for attorneys' fees, and will grant Plaintiffs' motion for costs and service awards.

## II.    BACKGROUND

Numerous consumers reported that their HP printers unexpectedly stopped working on or around September 13, 2016.  Approximately a month later, Plaintiffs Richard San Miguel and DeLores Lawty filed suit, alleging that HP had violated California's Unfair Competition Law ("UCL") by executing a firmware update that disabled HP inkjet printers that were fitted with certain replacement ink cartridges manufactured by HP's competitors.  Dkt. No. 1.  Plaintiffs alleged that the failed HP printers displayed a false or misleading error message that the ink

United States District Court
Northern District of California

cartridges were "damaged or missing," when in fact HP had disabled the printers to induce purchases of its own higher-priced cartridges. *Id.* ¶ 2. Approximately a week after the lawsuit was filed, HP issued a modified apology on its website to add an offer of a remedial "patch" that HP claimed would restore printer functionality.

In December of 2016, HP moved to dismiss the action, arguing that it had no duty to keep its printers compatible with third-party ink cartridges with infringing security chips, and that it made no representation of that compatibility. Dkt. No. 19. After a few cases were related and consolidated, Plaintiffs filed a consolidated amended complaint adding several more claims. Dkt. No. 60. HP renewed its motion to dismiss (Dkt. No. 66) and the matter was taken under submission. Dkt. No. 83.

Meanwhile, the parties engaged in discovery. Plaintiffs learned that HP's "Dynamic Security" technology caused the printers to stop functioning, but that HP had "turned off" the Dynamic Security technology in the Class Printers as of December 2017. Dynamic Security is "an HP-developed technology which causes Class Printers to run authentication checks that change over time on installed ink cartridges to determine whether the ink cartridges contain a non-HP security chip, and that may prevent Class Printers from operating with any such ink cartridges." Dkt. No. 110-2, p. 6.

Plaintiffs later moved for a hybrid Rule 23(b)(2)-(c)(4) certification of (1) a subclass of California printer owners seeking injunctive relief under the UCL, and (2) a national class of consumers who experienced print interruptions for purposes of adjudicating the liability elements of the Computer Fraud and Abuse Act ("CFAA") and trespass-to-chattels claims, with individualized damages proceedings to follow. Dkt. No. 91. Plaintiffs also sought and were granted leave to file a consolidated amended complaint. Dkt. Nos. 92, 94. The parties stipulated that the pending motion to dismiss would apply to the consolidated amended complaint. Dkt. No. 92.

In March of 2018, the court entered an order granting in part and denying in part HP's

United States District Court
Northern District of California

motion to dismiss. Dkt. No. 97. The court upheld Plaintiffs' computer intrusion claims under the CFAA and the California Penal Code, the trespass claims at common law (*id*. at 7-13), and the statutory consumer fraud claims to the extent they were based on HP's misleading error messages and material omissions (*id*. at 16-17). The court dismissed Plaintiffs' UCL unfairness and tortious interference claims and others with leave to amend. *Id*. at 17-23. A few days later the parties entered into settlement discussions and succeeded in reaching a settlement in principle in mid-July of 2018. Dkt. No. 106. In November of 2018, the court granted Plaintiffs' motion for preliminary approval of the proposed settlement ("Settlement"), and in April of 2019, the court granted final approval of the settlement. Dkt. Nos. 116, 139.

Through the Settlement, HP agreed to pay $1.5 million in compensation to owners of certain HP inkjet printers. Dkt. No. 110-2 ¶ 1.32. HP also agreed to pay for all notice and administration costs required to effectuate the Settlement. *Id*. ¶ 2.2. With respect to non-monetary relief, HP agreed not to reactivate Dynamic Security on the printers at issue. *Id*. ¶ 2.3. HP also agreed to reimburse Plaintiffs' counsel for out-of-pocket litigation costs that were "actually and reasonably incurred." *Id*. ¶ 6.1. The Settlement further provided that Plaintiffs' counsel would apply to the court for attorneys' fees and expenses to be paid by HP. *Id*.

## III. DISCUSSION

### A. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Here, the Settlement Agreement provides that "HP shall not dispute that plaintiffs are successful parties for purposes of California Code of Civil Procedure section 1021.5." Settlement Agreement ¶ 6.1 (Dkt. No. 110-2).

Under California law, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (emphasis omitted).

United States District Court
Northern District of California

1    Section 1021.5 authorizes fee shifting and provides that a court may award attorney fees to a

2    successful party when the action has resulted in the enforcement of an important right affecting the

3    public interest.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 560-61 (2004) (awarding

4    fees in nationwide class settlement under section 1021.5).  In addition to section 1021.5, the

5    CLRA—under which Plaintiffs brought a claim—mandates fee-shifting to the prevailing party.

6    Cal. Civ. Code §1780(e).

7        One well-accepted method of determining fees is the lodestar method.  *Morales v. City of*

8    *San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  The lodestar is calculated by multiplying the

9    number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly

10   rate.  *Id.*  "The reasonableness of an hourly rate should be determined based on the rates prevailing

11   in the community for 'lawyers of reasonably comparable skill, experience and reputation.'"  *Lewis*

12   *v. Silvertree Mohave Homeonwers' Ass'n, Inc.*, No. 16-3581 HWA, 2017 WL 5495816, at *3

13   (N.D. Cal. Nov. 16,  2017) (quoting *Blum v. Stenson*, 465 U.S. 886, n.11 (1984)).  The lodestar

14   figure may then be increased or decreased depending on a variety of factors, including the quality

15   of the representation, the benefit obtained for the class, the complexity and novelty of the issues

16   presented, and the risk of nonpayment.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

17   1998).[1]  The Supreme Court "has instructed district courts to . . . 'award only that amount of fees

18   that is reasonable in relation to the results obtained.'"  *Id.*  (quoting *Hensley v. Eckerhart*, 461 U.S.

19   424, 436, 440 (1983)).  "The party seeking an award of attorneys' fees bears the burden of

20   establishing the reasonableness of both the hours worked and the rates claimed."  *Postier v.*

21   *Louisiana-Pacific Corp.*, No. 09-3290 JCS, 2014 WL 1760010, at *3 (N.D. Cal. April 29, 2014)

22   (citing *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

23       To guard against an unreasonable fee award, the Ninth Circuit encourages district courts to

24   "cross-check[ ] their calculations against a second method."  *In re Bluetooth Headset Prods. Liab.*

25

26   _____

[1] The "[l]odestar analysis is generally the same under California law and Federal law."  *Rodriguez*
27   *v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014).

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
     FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

United States District Court
Northern District of California

*Litig.*, 654 F.3d 935, 944 (9th 2011). The lodestar method and percentage-of-recovery method are usually applied to cross-check each other. *Id.* "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Id.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)).

Here, the Joseph Saveri Law Firm, Inc. ("Saveri Firm") calculated lodestar figure is $246,209.50; the Law Offices of Todd M. Friedman, P.C. ("Friedman Firm") figure is $413,855; the Girard Sharp LLP law firm ("Girard Firm") figure is $1,991,950; the Heninger Garrison Davis LLC law firm ("Heninger Firm") figure is $170,170; and the Karon LLC law firm ("Karon Firm") figure is $135,914. Dkt. No. 120. The total calculated lodestar is $2,958,099. Plaintiffs' counsel, however, seek a lesser amount—$2.75 million—which is approximately .93 of counsels' calculated lodestar. Plaintiffs' counsel have submitted declarations attesting to the reasonableness of their hourly rates and summaries of the hours they spent on five categories of work: (1) case investigation and factual research; (2) pleadings; (3) discovery and document review; (4) pretrial motions and hearings; (5) settlement negotiations and motions. At the request of the court, counsel also submitted their time records for *in camera* review. Dkt. No. 140.

The court finds that the hourly rates for the partners and associates of each Plaintiffs' firm are consistent with market rates and are reasonable. The court next considers whether the hours claimed are reasonable.

### i. Vague Entries

There are numerous entries that are too vague to determine whether the hours billed were reasonable. For example, there are entries with descriptions such as emails "re case status"; "communicate with client re case status"; call re "case strategy"; "update [ ] on case progress." These types of inadequately supported entries appear in the billing records of the Friedman Firm in the amount to $20,652, and in the records of the Girard Firm in the amount of $8,190. There

United States District Court
Northern District of California

United States District Court
Northern District of California

1    are also several vague entries and/or block entries in the billing records of the Karon Firm with

2    descriptions such as "email to co-counsel" and "email to client" that total $7,717.50. These

3    amounts will be excluded.

### ii.    MDL-Related Entries

5        The billing records include numerous entries related to MDL proceedings No. 2763.[2]

6    Counsel have not provided any information regarding the MDL proceedings or any explanation as

7    to why hours associated with the MDL proceedings were reasonably expended for this litigation.

8    The billing records from the Friedman Firm include entries related to MDL proceedings totaling

9    $9,870; the records from the Saveri Firm include similar entries totaling $35,264.50; the records

10   from the Girard Firm include similar entries totaling $112,052.50; the records from the Heninger

11   Firm include similar entries totaling $1,370; and the records from the Karon Firm include similar

12   entries totaling $9,730. These amounts will be excluded.

### iii.    Travel

14       The billing records from the Friedman Firm include 20 hours for Mr. Friedman's travel

15   time and appearances at the July 14, 2017 hearing on HP's motion to dismiss and the November 8,

16   2018 hearing on Plaintiffs' motion for preliminary approval. These hours are unreasonably high

17   given that Mr. Friedman did not argue either motion and the hearings for the motions took less

18   than an hour in total. Accordingly, the court will exclude $12,325 (17 hours x $725/hour) from

19   the Friedman Firm's fee request.

### iv.    The Benefit Obtained For The Class

21       In assessing the reasonableness of the lodestar figure, the "[f]oremost . . . consideration[]"

22   is "the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942

23   (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983);

24   *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the

25   fee "is determined primarily by reference to the level of success achieved by the plaintiff")). The

---

[2] Some MDL related entries refer to case No. 2793, which appears to be a typographical error.
Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
6

1  Supreme Court "has instructed district courts to . . . 'award only that amount of fees that is

2  reasonable in relation to the results obtained.'" *Id.* (quoting *Hensley*, 461 U.S. at 436, 440).

3  Courts have relied on this factor to substantially reduce requested lodestars in light of the results

4  achieved. *See, e.g., Mahach-Watkins v. Depee*, 593 F.3d 1054, 1063 (9th Cir. 2010) (affirming

5  80% cut in fees because of limited success on plaintiff's section 1983 claim); *Branco v. Credit*

6  *Collection Servs., Inc.*, No. 10-1242 MCE, 2011 WL 6003877, at *4-5 (E.D. Cal. Dec. 1, 2011)

7  (cutting fee request by 90% because plaintiff achieved minimal success on claim for violation of

8  the Fair Debt Collection Practices Act).

9       Here, Plaintiffs were successful in achieving benefits for the class. The level of success

10  achieved, however, does not justify an award of fees that is 200% of the monetary amount

11  obtained for the class. Nor does the non-monetary benefit justify such a high fee award. HP's

12  commitment not to reactive dynamic security on the class printers in the future is not injunctive

13  relief. Even if it were injunctive relief, it added very little value to the settlement because HP

14  disabled the Dynamic Security technology in October 2016, long before the settlement was

15  reached. Plaintiffs also learned through discovery that HP had no intention of reactivating the

16  Dynamic Security technology on the class printers because of the dwindling effectiveness of the

17  technology and the end-of-life status of the class printers. In late 2017, HP released a further

18  software update that disabled Dynamic Security in Tier 1 printers.

19       In light of the modest benefits achieved for the class, the court finds that a 30% across-the-

20  board reduction is appropriate. "[W]hen faced with a massive fee application the district court has

21  the authority to make across-the-board percentage cuts either in the number of hours claimed or in

22  the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates*

23  *v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 2000) (citing *N.Y. State Ass'n for Retarded Children*

24  *v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). The selected 30% reduction is also justified by

25  other *Hanlon* factors. First, the case did not present such complex and novel issues that would

26  justify an extraordinarily high fee award in relation to the benefits obtained for the class. Second,

27

28

the risk of nonpayment Plaintiffs' counsel faced in is this case is no different from any other

consumer class action.  In sum, this case did not present such special circumstances as to support

an award of fees that far exceeds the monetary benefits to the class.

### v.  Cross-check

HP contends that a cross-check is appropriate to determine whether the requested fees are

excessive and asks that the court award no more than $375,000, which is 25% of the monetary

benefit to the class.  The court has already applied a 30% across-the-board reduction to arrive a

reasonable fee amount.  Any further reductions are unwarranted.  Furthermore, a cross-check is

not required.  *In re Hyundai & Kia Fuel Economy Litig.*, No. 15-56014, – F.3d. – , 2019 WL

2376831 (9th Cir. June 6, 2019) (en banc).

### vi.  Final Award

The final award for each firm is set forth in the "FIRM TOTAL" column below.

| FIRM | REQUESTED AMOUNT[3] | REDUCTIONS FOR ENTRIES | ADJUSTED TOTAL | 30% REDUCTION | FIRM TOTAL |
|------|---------|---------|---------|---------|---------|
| Girard | $1,851,818.00 | $120,242.50 | $1,731,575.50 | $519,472.65 | $1,212,102.85 |
| Friedman | $384,741.00 | $42,847.00 | $341,894.00 | $102,568.20 | $239,325.80 |
| Saveri | $228,889.00 | $35,264.50 | $193,624.50 | $58,087.35 | $135,537.15 |
| Heninger | $158,199.00 | $1,370.00 | $156,829.00 | $47,048.70 | $109,780.30 |
| Karon | $126,353.00 | $17,447.50 | $108,905.50 | $32,671.65 | $76,233.85 |
| TOTAL | $2,750,000.00 | $218,621.50 | $2,531,378.50 | $759,413.55 | $1,772,979.95 |

## B.  Costs

Counsel incurred $83,011.78 in unreimbursed, out-of-pocket expenses in this action.

Kramer Decl., ¶ 62.  These include costs advanced in connection with expert witnesses, court

reporting services, legal research, travel, a document review platform, and other customary

---

[3] The court calculated the Requested Amount by multiplying each firm's calculated lodestar as reflected in Docket Number 120 at pages 11-12 by approximately .93 in order to arrive at the Requested Amount of $2,750,000.

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

8

1    litigation expenses.  HP contends that Plaintiffs have not provided sufficient documentation of

2    these expenses.

3           The court accepts counsels' declarations as verification of the costs that have been incurred

4    and finds that the requested amount is reasonable.  *See, e.g., In re Media Vision Tech. Sec. Litig.*,

5    913 F. Supp. 1362, 1367-72 (N.D. Cal. Jan. 23, 1996) (reimbursable costs include expenses for

6    travel and legal research); *In re High-Tech Emp. Antitrust Litig.*, No. 11-02509 LHK, 2015 WL

7    5158730, at *16 (N.D. Cal. Sept. 2, 2015) (expert witnesses, court reporters, document review

8    vendor).

9           The costs are approved.

10          **C.     Service Awards**

11          Plaintiffs request that the court approve service awards in the amount of $5,000 to each of

12   the five class representatives.  HP agrees to pay each of the five class representatives $5,000,

13   subject to court approval.

14          "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class

15   action settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  When evaluating the

16   reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff

17   has taken to protect the interests of the class, the degree to which the class has benefitted from

18   those actions," and "the amount of time and effort the plaintiff expended in pursuing the

19   litigation." *Id.*  "In this district, a $5,000 payment is presumptively reasonable." *Bellinghausen v.*

20   *Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases); *see also In re Online*

21   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015) (rejecting an objector's

22   argument that payment of $5,000 incentive awards rendered the class representatives inadequate).

23          Here, the requested service awards are reasonable considering each representative's efforts

24   in this case.  The representatives regularly communicated with counsel, provided documents and

25   information, sat for depositions, participated in the settlement discussions, and reviewed and

26   approved the settlement.

United States District Court
Northern District of California

1    The service awards are approved.

2    **IV.    CONCLUSION**

3        For the reasons set forth above, Plaintiffs' motion for fees is granted in part and denied in

4    part, and Plaintiffs' motion for costs and incentive awards is granted in full.

5        **IT IS SO ORDERED.**

6    Dated:  June 28, 2019

7    _____

8                                        EDWARD J. DAVILA
                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:16-cv-05820-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
     FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

# EXHIBIT H

DECLARATION OF ADRIAN R. BACON



**Class Experts Group, LLC**
740 West Glen Oaks Lane
Mequon, WI  53092 US
(262) 302-4443
info@classexpertsgroup.com
classexpertsgroup.com

**BILL TO**
DeForrest / McCurley v. Royal
Seas Cruises
Law Offices of Todd M
Friedman, P.C.
324 S Beverly Blvd, Suite 725
Beverly Hills, California
90212

**INVOICE #** 1337
**DATE** 02/04/2020

**TERMS** Due on receipt

**BILL FOR**
01/01/2020 - 01/31/2020

| DATE | ACCOUNT SUMMARY | AMOUNT |
|------|-----------------|--------|
| 01/08/2020 | Balance Forward | $6,492.50 |
| | Other payments and credits after 01/08/2020 through 02/03/2020 | -6,042.50 |
| 02/04/2020 | Other invoices from this date | 0.00 |
| | New charges (details below) | 1,212.50 |
| | Total Amount Due | $1,662.50 |

| ACTIVITY | QTY | RATE | AMOUNT |
|----------|-----|------|--------|
| **Charges** | | | |
| **Data Analysis** | 5 | 160.00 | 800.00 |
| **Account Executive Documents** | 1.50 | 275.00 | 412.50 |

WIRING INSTRUCTIONS
Routing Number: 121000248
Bank:  Wells Fargo Bank
Location:  San Francisco, CA
Account Number: 3228219659
Account Title:  Class Experts Group

TOTAL OF NEW
CHARGES                              1,212.50
BALANCE DUE                **$1,662.50**