**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (216752)
tfriedman@toddflaw.com
Adrian R. Bacon, Esq. (280332)
abacon@toddflaw.com
21550 Oxnard Street, Suite 780
Woodland Hills, CA 90212
Telephone:  (877) 206-4741
Facsimile: (866) 633-0228

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN MCCURLEY; AND, DAN DEFOREST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL SEAS CRUISES, INC.,<br><br>Defendant. | **Case No.:** 17-cv-986 BAS (AGS)<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**DATE:**  January 27, 2021<br>**TIME:**  2:00 p.m.<br>**COURTROOM:**  4B<br><br>**HON. CYNTHIA A BASHANT** |

*(Left margin, vertical text:)* KAZEROUNI LAW GROUP, APC  245 FISCHER AVENUE, UNIT D1  COSTA MESA, CA 92626

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT .............................................................................................. 4

    A. The Supreme Court's *AAPC* Decision .................................................. 5

    B. *AAPC* Did Not Hold That The TCPA's Robocall Ban Was Unconstitutional ................................................................................. 7

    C. Seven Justices – Not Three – Agreed With Justice Kavanaugh's Treatment Of Pre-*AAPC* TCPA Violations ......................................... 10

    D. Justice Kavanaugh's Mandate On Post-Severance Application To Previous Conduct Is Not Mere "Dicta" That Lower Courts Are Free To Ignore ................................................................................................ 12

    E. Severance Principles Independently Lead To The Same Result As Justice Kavanaugh's Footnote 12 ...................................................... 16

III. CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Abramson v. Federal Insurance Company, et al.*,
    2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) ........................................4, 25

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*,
    923 F.3d 159 (4th Cir. 2019) .........................................................................14

*Ayotte v. Planned Parenthood of Northern New England*,
    546 U.S. 320 (2006) .......................................................................................16

*Barr v. American Association of Political Consultants, Inc.*,
    140 S. Ct. 2335, 2346 (2020) ..................................................................passim

*Black v. United States*,
    373 F.3d 1140 (11th Cir. 2004) .....................................................................13

*Buchanan v. Sullivan*,
    2020 WL 6381563 (D. Neb. Oct. 30, 2020)....................................................4

*Burton v. Fundamerica, Inc.*,
    2020 WL 4504393 (D. Neb. Aug. 5, 2020) .......................................5, 23, 25

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1964) .........................................................................................11

*Creasy v. Charter Commc'ns, Inc.*,
    2020 WL 5761117 (E.D. La. Sept. 28, 2020) ........................................passim

*Crossley v. Cal.*,
    2020 WL 4747723 (S.D. Cal. Aug. 17, 2020) ...............................................23

*Dorchy v. State of Kansas*,
    264 U.S. 286 (1924) .......................................................................................17

*Duguid v. Facebook, Inc.*,
    926 F.3d 1156 (2019) ...............................................................................8, 24

*Fla. Dep't of Labor & Emp't Sec. v. United States Dep't of Labor*,
    893 F.2d 1319 (11th Cir. 1990)......................................................13

*Frost v. Corporation Comm'n of Okla.*,
    278 U.S. 515 (1929)........................................................................7, 9

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013)............................................................8

*Gallion v. United States*,
    772 Fed. Appx. 604 (9th Cir. July 8, 2019) ...............................8, 24

*Gomez v. Campbell-Ewald Co.*,
    768 F.3d 871 (9th Cir. 2014)..........................................................8

*Harper v. Virginia Dep't of Taxation*,
    509 U.S. 86 (1993) .........................................................................17

*Komaiko v. Baker Techs., Inc.*,
    2020 WL 5104041 (N.D. Cal. Aug. 11, 2020)...............................5

*Lacy v. Comcast Cable Communications, LLC*,
    2020 WL 4698646 (W.D. Wash. Aug. 13, 2020) ....................5, 22

*Lindenbaum v. Realgy, LLC*,
    2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ....................passim

*Loeb v. Trustees of Columbia Township*,
    179 U.S. 472 (1900).......................................................................17

*Moser v. F.C.C.*,
    46 F.3d 970 (9th Cir. 1995)...........................................................8

*Murdaugh v. Ryan*,
    2010 U.S. Dist. LEXIS 100208 (D. Az. 2010) ............................15

*National Federation of Independent Business v. Sebelius*,
    567 U.S. 519 (2012)......................................................................19

TABLE OF CONTENTS & AUTHORITIES

*Parker v. Portfolio Recovery Assocs., LLC*,
    2019 WL 4149436 (C.D. Cal. July 11, 2019) ...............................................25

*Peterson v. BMI Refractories*,
    124 F.3d 1386 (11th Cir. 1997)......................................................................15

*Rivers v. Roadway Exp., Inc.*,
    511 U.S. 298 (1994) ........................................................................................18

*Salerno v. Credit One Bank, N.A.*,
    2020 WL 4339219 (W.D.N.Y. July 28, 2020)...............................................23

*Schmidt v. AmeriAssist A/R Sols. Inc.*,
    2020 WL 6135181 (D. Ariz. 19, 2020).........................................................4, 5

*Schwab v. Crosby*,
    451 F.3d 1308 (11th Cir. 2006)......................................................................15

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    140 S. Ct. 2183 (2020) ..............................................................................20, 21

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1996) ..........................................................................................13

*Shen v. Tricolor California Auto Group, LLC*,
    2020 WL 7705888 (C.D. Cal. Dec. 17, 2020) ....................................4, 23, 24

*Silwa v. Bright House Networks, LLC*
    2018 U.S. Dist. LEXIS 52509 (M.D. Fla. Mar. 29, 2018).......................3, 22

*Smith v. Truman Rd. Dev., LLC*,
    293 414 F. Supp. 3d 1205 (W.D. Mo. 2019) ................................................24

*Taylor v. KC VIN, LLC*,
    2019 WL 6499140 (W.D. Mo. Dec. 3, 2019) ...............................................25

*United States v. Miselis*,
    2020 WL 5015072 (4th Cir. Aug. 24, 2020)..................................................23

1

*Wijeinsha v. Bluegreen Vacations Unlimited, Inc.*,
     2019 U.S. Dist. LEXIS 57136 (S.D. Fla. Apr. 3, 2019).................................22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

In its latest attempt to avoid liability for its widespread egregious privacy invasions and subsequent cover-up, Defendant Royal Seas Cruises, Inc. ("Royal Seas" or "Defendant") now argues that the entire Telephone Consumer Protection Act was unconstitutional between 2015 and 2020, because a Congressional Amendment to the statute was briefly enacted before being severed by the High Court.[1]   Such a position, if upheld, would mean that for five years, all robocalls were completely legal, even though the Supreme Court expressly found that robocalls were obnoxious, that Congress clearly intended to outlaw them, and that any arguments about the statute being unconstitutional stemmed solely from an amendment that was quickly excised from the statute.  The 2015 Bipartisan Budget Act should not be treated as a Trojan Horse.  It was severed to save the TCPA, because the Supreme Court recognized the importance of the statute, not to create a poison pill and permit wrongdoers to escape liability through an overly-clever yet procedurally-flawed misapplication of severability jurisprudence.    At their core, *Lindenbaum* and *Creasy* (the only two cases that support Royal Seas' argument) reflect a fundamental misunderstanding about the doctrine of severability that directly conflicts with the Supreme Court's decision in *Barr v. AAPC* as well as longstanding principles that govern how courts should cure statutes with constitutional defects.

---

[1] It warrants mentioning that the Motion cutoff in this case was March 17, 2020, (Dkt. No. 113) and Royal Seas never previously raised an unconstitutionality argument.  *AAPC* came down in July 2020, but Royal Seas waited until November to first raise this issue, and never requested leave of Court to file a Motion after the deadline set forth in the Amended Scheduling Order.  Royal Seas could easily have brought this motion, or a similar motion to that considered in *APPC* much earlier. Instead, it waited until the eleventh hour of the case, as a last-ditch effort to avoid culpability.  Plaintiffs raised this dilatory conduct during the meet and confer, but Royal Seas filed the Motion anyways.

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

In *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) ("*AAPC*"), the Supreme Court held that the 2015 government-debt exception to the TCPA's autodialer ban was unconstitutional: "Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S. Ct. at 2343 (plurality opinion). "Applying traditional severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343. Three of these seven Justices—Justices Breyer, Ginsburg, and Kagan—did not think that the government debt exemption was unconstitutional at all. *Id.* at 2357-63 (2020). But, because "[a] majority of the Court, however, has concluded the contrary. […] I agree with Justice Kavanaugh's conclusion that the provision is severable." *AAPC*, 140 S. Ct. at 2363 (Breyer, J. dissenting in part). It would no doubt be a surprise to these three Justices that their concurrence is being used to invalidate a law which they never thought was unconstitutional in the first place.

As to the practical effect of the Court's decision, Justice Kavanaugh, in Part III of his plurality opinion — which dealt with severance — explained that:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. See Reply Brief 24. **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

*AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added). As discussed in more detail below, this holding aligned with how lower courts applied severance of the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

government-debt exception prior to the *AAPC* decision.  *See, e.g., Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 U.S. Dist. LEXIS 52509, at *15 (M.D. Fla. Mar. 29, 2018) ("Bright House is not entitled to a judgment on those claims, since — in light of the severability of the Government-Debt Exception — a finding that the anti-robocall provision is unconstitutional would have no effect on Bright House's exposure to liability under the TCPA."). Only two Justices did not believe severance was the appropriate remedy: Justice Gorsuch and Justice Thomas.

Despite this, Defendant invites the Court to simply ignore the Supreme Court's explicit holding as to the effect of severing the government-debt exemption. Defendant attempts to convince this Court that it should do so by misstating the Supreme Court's holding and arguing that, in reality, the Supreme Court found the whole auto dialer ban unconstitutional, not just the government-debt exemption.  Defendant concludes—without explaining why—that Justice Kavanaugh's explicit instructions as to how the *AAPC* opinion should be applied is simply "dicta" that this Court can casually ignore.  Further, Defendant relies on two recent outlier opinions that, with due respect, were incorrectly decided.  Other decisions, including a district court case analyzed under Ninth Circuit severability jurisprudence, convincingly disagree with those two decisions.

To be clear, Defendant is not being sued for placing calls to collect government debt which they thought were exempted from the TCPA; they are being sued for placing unwanted telemarketing calls using prerecorded messages which were forced directly into the putative class's cellular telephones' voicemails.  Since 1991, this conduct has been unlawful under the TCPA and, as stated in Justice Kavanaugh's plurality opinion, "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*,

140 S. Ct. at 2351.  That is precisely what Defendant seeks to accomplish here – to treat the 2015 Bipartisan Budget Act as a trojan horse, wheeled out by Congress to render the TCPA unconstitutional, forcing courts into being stuck with that conclusion even if they rule otherwise.  It is a legal request that is as bizarre as it is outlandish.  As Judge Anderson recently said in a compelling decision explicitly denouncing the ruling in *Creasy*, "[p]ut in common parlance, the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress)."  *Shen v. Tricolor California Auto Group, LLC*, No. 20-7419 PA (AGRx) 2020 WL 7705888 at *4 (C.D. Cal. Dec. 17, 2020), citing *AAPC,* 140 at 2351.  This Court should decline Defendant's invitation to ignore binding precedent from the highest court in the land.

## II. ARGUMENT

Defendant argues that *AAPC* can only be read as holding that sections 227(b)(1)(A)(iii) and (b)(1)(B) of the TCPA were unconstitutional between 2015 (when the government-debt exception was passed) and July 6, 2020 (when the Supreme Court issued its opinion in *AAPC*).  Defendant relies on two outlier and non-binding district court decisions that interpreted *AAPC* in that manner: *Lidenbaum v.Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) and *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020).  However, these are not the only cases to interpret the effects of *APPC* on application of the TCPA, and in fact represent the only two authorities that support Defendant's position.[2]  For the reasons discussed

---

[2] *Shen v. Tricolor California Auto Group, LLC*, Case No. 20-7419 PA (AGRx) 2020 WL 7705888 at *4 (C.D. Cal. Dec. 17, 2020); *Abramson v Federal Insurance Company, et. al.*, No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953 (M.D. FL. Dec. 11, 2020); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); *Lacy v.*

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

below, this Court should interpret *AAPC* as it was written, decline to follow *Lidenbaum* and *Creasy*, instead following the common sense results reached by the majority of courts that have reviewed this issue, and deny Defendant's Motion.

### A. <u>The Supreme Court's *AAPC* Decision</u>

Between 1991 to 2015, the Telephone Consumer Protection Act's prohibition on the use of autodialers or prerecorded messages to call cellphones, codified at 47 U.S.C. § 227(b)(1)(A), operated without any constitutional issue. *AAPC*, 140 S. Ct. at 2353 (plurality opinion) ("Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015."). In 2015, two things occurred to upset this peace. First, "Congress carved out a new government-debt exception to the general robocall restriction." *AAPC*, 140 S. Ct. at 2344-45. Second, the Supreme Court released its decision in *Reed* v. *Town of Gilbert*, 576 U. S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). In *Reed*, the Supreme Court announced a new rule: any law that treats different types of speech differently would be subject to strict scrutiny. *See AAPC*, 140 S. Ct. at 2346 ("Content-based laws are subject to strict scrutiny.") (*citing Reed*, 576 U.S. at 163-164). Justice Breyer, in concurring in the judgment of *Reed*, predicted that this new doctrine would lead to "application of strict scrutiny to all sorts of justifiable governmental regulations by relying on this Court's many subcategories and exceptions to the rule." *Reed*, 576 U.S. at 178.

---

*Comcast Cable Communications, LLC*, No. 3:19-cv-05007-RBL, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

The plaintiffs in *AAPC* were not private debt collectors who were upset that they were not conferred the benefits of the government debt exemption; they were a group of political consultants who wanted to make political outreach robocalls—calls that violated the TCPA.  *See AAPC*, 140 S. Ct. at 2345.  Sensing an opportunity after *Reed* and with the addition of the government debt exemption, they filed a declaratory action against the U.S. Attorney General and the FCC, and challenged the 2015 amendment to the TCPA.  *Id.* at 2345. The district court held that it should analyze the question using strict scrutiny, but that the exemption survived strict scrutiny.  *Id.*  On appeal, the Fourth Circuit held that while the lower court was correct to use strict scrutiny, it erred in holding the exemption survived strict scrutiny.  *Id.* However, rather than invalidate the entire statute, the Fourth Circuit only "invalidated the government-debt exception and severed it from the robocall restriction." *Id.* Both the plaintiffs and the government petitioned for a writ of certiorari.  The plaintiffs argued that the Fourth Circuit "did not go far enough in providing relief and should have invalidated the entire 1991 robocall restriction rather than simply invalidating the 2015 government-debt exception." *Id.* at 2346.

The Supreme Court did not grant the *AAPC* plaintiffs their wish:

> Applying traditional severability principles, seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute. As a result, plaintiffs still may not make political robocalls to cell phones, but their speech is now treated equally with debt-collection speech. The judgment of the U. S. Court of Appeals for the Fourth Circuit [severing the government-backed debt exemption, but upholding the TCPA's constitutionality] is affirmed.

*Id.* at 2343-44.   The Court noted that the TCPA has contained an express severability clause since its inception.  *Id.*  at 2352 (citing statutes).  These "seven

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Members of the Court"[3] agreed that the Court's "traditional severability principles" should be applied "in cases like this one, where Congress added an unconstitutional amendment to a prior law." *AAPC*, 140 S. Ct. at 2353, 2355 (plurality opinion). Pursuant to the Supreme Court's long-standing severability precedent, "[t]he Court has severed the 'exception introduced by amendment,' so that 'the original law stands without the amendatory exception.'" *AAPC*, 140 S. Ct. at 2353 (plurality opinion) (quoting *Truax v. Corrigan*, 257 U. S. 312, 342 (1921)). In other words, "the Court has treated the original, pre-amendment statute as the "'valid expression of the legislative intent.'" *AAPC*, 140 S. Ct. at 2353 (plurality opinion) (quoting *Frost v. Corporation Comm'n of Okla.*, 278 U. S. 515, 526–527 (1929)). Three of the seven Justices that agreed with the severance remedy—Justices Breyer, Ginsburg, and Kagan—did not think that the government debt exemption was unconstitutional at all. *See id.* at 2357-63. But, because "[a] majority of the Court, however, has concluded the contrary. […] I agree with Justice Kavanaugh's conclusion that the provision is severable." *AAPC*, 140 S. Ct. at 2363 (Breyer, J.).

Only two Justices disagreed with Justice Kavanaugh's pragmatic remedy: Justice Gorsuch and Justice Thomas. *See id.* at. 2363-2367. Rather than sever the offending provision, these Justices would "hold that the plaintiffs are entitled to an injunction preventing its enforcement against them." *Id.* at 2365 (Gorsuch, J.). In effect, Defendant asks the Court to ignore the explicit mandate supported by seven Justices, and, instead, apply the dissent of Justice Gorsuch.

---

[3] The seven were Chief Justice Roberts, Justice Kavanaugh, Justice Alito, Justice Sotomayor, Justice Kagan, Justice Breyer, and Justice Ginsburg.

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**B.** ***AAPC*** **Did Not Hold That The TCPA's Robocall Ban Was Unconstitutional**

The first fault with Defendant's reasoning—a fault shared by the *Creasy* and *Lidenbaum* opinions—is its conclusion that the Supreme Court's decision in *AAPC* held that "the TCPA was unconstitutional between the enactment of the government-backed debt exemption in 2015 and when the Supreme Court severed it from the remainder of the statute on July 6, 2020." Mot. at pg. 5; *Creasy*, 2020 WL 5761117 at *13 ("the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution.") (emphasis in original); *Lidenbaum,* 2020 U.S. Dist. LEXIS 201572, at *2 ("In *AAPC*, the Supreme Court held that 47 U.S.C. § 227(b)(1)(A)(iii) violated the Constitution..."). But the Supreme Court explicitly held the exact opposite: "**we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional**." *AAPC*, 140 S. Ct. at 2348-49 (emphasis added); *see also id.* at 2355 ("A generally applicable robocall restriction would be permissible under the First Amendment."). Indeed, the Supreme Court granted certiorari to determine, "[w]hether **the government-debt exception** to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Brief of Petitioners, *Barr v. AAPC*, 140 S. Ct. 812 (No. 19-631), 2020 WL 1062397, at *1 (Feb. 24, 2019) (emphasis supplied).[4]

---

[4] This ruling is consistent with Ninth Circuit jurisprudence on the issue, which remains good law. See *Moser v. F.C.C.,* 46 F. 3d 970, 973 (9th Cir. 1995) (Where a call is made to a cellular phone, 47 U.S.C. § 227(b)(a)(A) of the TCPA applies regardless of the content or purpose of the call); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) (reaffirming *Moser*); *Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 273 (3d Cir. 2013) (same); *Duguid v. Facebook, Inc*., 926 F.3d 1146 (2019); and *Gallion v. United States*, 772 Fed.Appx. 604 (9th Cir. July 8, 2019).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Defendant's argument is the very argument the *AAPC* plaintiffs presented, and which the Supreme Court rejected in Part III of Justice Kavanaugh's opinion: "Before we apply ordinary severability principles, we must address plaintiffs' broader initial argument for why the entire 1991 robocall restriction is unconstitutional." *Id.*, 140 S. Ct. at 2348.  The *AAPC* plaintiffs argued that the addition of the government debt exemption proved that Congress did not have a genuine concern in consumer's privacy that justified the remainder of the prohibition.  *Id.*  at 2348. The Supreme Court analyzed this argument and concluded that "we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional." *Id.* at 2349.

The Supreme Court then analyzed the *AAPC* plaintiffs' argument that it should not apply severance and instead invalidate the entire provision.  *Id.* at 2349.  In addressing that argument, the Supreme Court reiterated its severability precedent which holds "that an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (plurality opinion) (quoting *Frost*, 278 U. S. at 526-527) (emphasis supplied).   In other words, the Supreme Court held that the government-debt exemption itself was unconstitutional and, consequently, simply a nullity that had no effect on section 227(b)(1)(A)(iii) of the TCPA.  *See id*. at 2354.  Consistent with this holding and reasoning, the Supreme Court affirmed the judgment of the Fourth Circuit.  *Id*. at 2356.  That judgment held that "severance of the debt-collection exemption **will not undermine the automated call ban**." *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 170 (4th Cir. 2019) (emphasis supplied). Thus, contrary to Defendant's assertions, the Supreme Court did not hold that the TCPA's entire autodialer provision was unconstitutional; it held that the government-debt exemption was unconstitutional. Indeed, in rejecting the very argument Defendant makes, the Supreme Court noted

CASE No.: 17-cv-986 BAS (AGS)          **9 of 26**          *McCurley, et al. v. Royals Seas Cruises, Inc.*

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

that put in common parlance, the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress). Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute. *AAPC*, 140 S. Ct. at 235.  The First Amendment is not designed to convert statutory terminology that is later invalidated into a Trojan Horse.  The entire purpose of severance is to preserve the original intent of Congress, not to undo everything, and certainly not to give a free pass to those who clearly violate the law just because an unrelated severed amendment potentially went too far for a brief period of time. Such contravenes the entire purpose of severance – to keep the good parts of the law intact, not to throw the baby out with the bath water.

### C. Seven Justices—Not Three—Agreed With Justice Kavanaugh's Treatment Of Pre-*AAPC* TCPA Violations.

The second error in Defendant's reasoning—an error also shared by the courts in *Creasy* and *Lidebaum*—is its conclusion that "only three total justices joined in that footnote (Justice Kavanaugh and two others.)"  Mot. at pg. 8; *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *9 n.4  ("This footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices[.]");  *Lidenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12  ("footnote 12 is contained in a plurality opinion endorsed by only three Justices").

What Defendant, *Creasy,* and *Lidenbaum* all ignore is that in addition to the three Justices that officially "joined" in Justice Kavanaugh's plurality opinion, four others explicitly agreed with his severance conclusion and reasoning, including Justice Kavanaugh's holding in footnote 12 on how the post-severance TCPA would apply to previous conduct. Part III of Justice Kavanaugh's plurality

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

opinion—the Part that dealt with severance—mandated that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC,* 140 S. Ct. at 2355 n.12. Justice Kavanaugh's opinion was joined in its totality by Chief Justice Robert and Justice Alito. *Id.* at 2343. Four other Justices agreed with his severance analysis: Justice Sotomayor, Justice Breyer, Justice Ginsburg, and Justice Kagan.

Justice Sotomayor, writing separately, concurred in the judgment. *Id.* at 2356-2357. As to the constitutionality question, Justice Sotomayor disagreed with the application of strict scrutiny to the government debt exemption; but would have found that the exemption did not pass muster even under intermediate scrutiny. *Id.* As to severance, Justice Sotomayor stated, "Nevertheless, I agree that the offending provision is severable. " *See ante,* at 2343, 207 L. Ed. 2d 784; *post,* at 2362 - 2363, 207 L. Ed. 2d 784 (opinion of Breyer, J.); *see also City of Ladue* v. *Gilleo*, 512 U. S. 43, 51-53, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994) (explaining that an appropriate "solution" to a law that covers "too little speech because its exemptions discriminate on the basis of [the speaker's] messages" could be to "remove" the discrimination). *Id.* at 2357.

Justice Breyer, joined by Justices Ginsburg and Kagan, concurred "in the judgment with respect to severability" and dissented in part. *Id.* at 2357. As to the constitutionality of the government debt exemption, these three Justices would <u>not</u> have held the government debt exemption unconstitutional. *Id.* at 2357-2363 (explaining why the exemption was constitutional). As to severance, "…I agree with Justice Kavanaugh's conclusion that the provision is severable. Accordingly, I respectfully concur in the judgment with respect to severability and dissent in part [as to the constitutionality question]." *Id.* at 2363.

Accepting Defendant's argument—an argument the courts in *Creasy and Lidenbaum* embraced—creates an absurd result: it interprets Justices Breyer,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Ginsburg, and Kagan's opinion as invalidating the TCPA for a period of five years when these three Justices agreed with severance and did not even hold the government debt exemption was unconstitutional in the first place.   A more logical reason why the four Justices that agreed with the severance remedy and Justice Kavanaugh's footnote 12 but did not "join" Justice Kavanaugh's opinion is that they disagreed with his constitutionality analysis—an analysis that permeated his opinion's Part III that dealt with severance; not because they disagreed with the ultimate effect of his application of severance to the constitutional infirmity. *See AAPC*, 140 S. Ct at 2347 (Part III of plurality opinion of Kavanaugh, J.) ("Having concluded that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction"). Thus, Defendant's conclusion—shared by the *Creasy* and *Lindenbaum* courts—that only three Justices agreed with Justice Kavanaugh's conclusions as to the effect of severance is incorrect.   Accordingly, Defendant's entire Motion is built on a false premise.

### D. Justice Kavanaugh's Mandate On Post-Severance Application To Previous Conduct Is Not Mere "Dicta" That Lower Courts Can Ignore

Contrary to Defendant's argument and the holdings of *Creasy* and *Lidenbaum*, the Supreme Court's holding in *AAPC* concerning liability for pre-severance robocalls was not mere "dicta" but rather a clear holding of precedential import supported by a supermajority of the Court (as well as historic jurisprudence regarding retroactivity in judicial interpretations, as described below). Despite the clear mandate that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction[,]" *AAPC,* 140 S. Ct. at 2355 n.12, the courts in *Creasy* and *Lidenbaum* incorrectly held that the Supreme Court's instructions were mere "obiter dictum" that they could choose to not follow.   *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *9 n.4 (E.D. La. Sep. 28,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2020) ("[Footnote 12] is merely persuasive, as opposed to mandatory, because […] it constitutes mere 'obiter dictum.'"); *Lidenbaum,* 2020 U.S. Dist. LEXIS 201572, at *12 ("the Court finds that footnote 12 constitutes non-binding *obitur dictum*."). This was an error which, respectfully, this court should not follow.

Footnote 12—which as explained above was agreed with by seven Justices—is not dictum: [D]icta is "a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case." *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004). Stated another way, "dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us." *Caraballo-Martinez*, 866 F.3d at 1244 (quoting *Kaley*, 579 F.3d at 1253 n.10); Obiter Dictum, Black's Law Dictionary (10th ed. 2014) (explaining that a statement is dictum if it is "unnecessary to the decision in the case"). A holding's location in a footnote does not automatically make it *obiter dictum*. *See Fla. Dep't of Labor & Emp't Sec. v. United States Dep't of Labor*, 893 F.2d 1319, 1323 n.7 (11th Cir. 1990) ("Contrary to FDOLES's assertions, **it is not possible to characterize this footnote in [the Supreme Court's opinion in]** *West Virginia* **as** *obiter dictum*. The Supreme Court necessarily had to determine whether the Debt Collection Act was applicable to the case before it.") (emphasis added).

Footnote 12 is *not* "unnecessary to the decision in the case." Instead, it is instrumental to the holding of the case because it explains the liability, or lack of liability, for thousands of potential defendants and millions, if not billions, of calls that fall under the TCPA at $500-$1,500 per call. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). This component of the holding was necessary to resolve the appeal because had the Court's decision "negate[d] the liability of parties who

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

made robocalls covered by the robocall restriction," among them the plaintiff-respondent in *AAPC*, the Supreme Court would have remanded the case back to the lower court with instructions that it be dismissed for lack of subject-matter jurisdiction (as Defendant argues should occur here) as opposed to affirming the Fourth Circuit's decision to remand the case back to the district court for "further proceedings," *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 172 (4th Cir. 2019). Even Justice Gorsuch's dissent characterizes *AAPC* as "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law." *AAPC,* 140 S. Ct. at 2366 (emphasis added).

Further, footnote 12 does not stand alone in an otherwise unrelated portion of the opinion. This footnote comes at the end of Justice Kavanaugh's Part III, Section 3, portion of his opinion that analyzed how to cure the defect: invalidate the exemption or invalidate the robocall ban. *See AAPC*, 140 S. Ct. at 2354-2355. Justice Kavanaugh went on to explain in this section that:

> If the statute contains a severability clause, the Court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all. In light of the presumption of severability, the Court generally does the same even in the absence of a severability clause.

*Id*.[5] Further supporting the fact that this footnote was not mere "dicta" is Justice Gorsuch's dissent about the appropriate remedy, which was joined by Justice Thomas. *See id.* at 2365-2367. Discussing Justice Kavanaugh's solution, Justice Gorsuch stated: "Severing and voiding the government-debt exception does

---

[5] The concluding sentence, to which footnote 12 is appended, held that "[i]n short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *Id.* at 2355. Thus, footnote 12 is not mere dicta unrelated to the holding, it is part of the holding concerning the appropriate remedy and how it would function

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

nothing to address the injury they claim; after today's ruling, **federal law bars the plaintiffs from using robocalls to promote political causes just as stoutly as it did before**." *Id.* at 2366 (emphasis added).  As to footnote 12, Justice Gorsuch stated: "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.* (emphasis original).

Justice Kavanaugh's response to Justice Gorsuch's dissent further shows why this Court should not disregard footnote 12 as dicta:

> Justice Gorsuch's approach to this case would not solve the problem of harming strangers to this suit; it would just create a different and much bigger problem. His proposed remedy of injunctive relief, plus stare decisis, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. **That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted**. Justice Gorsuch's remedy would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*Id.* at 2356 (plurality opinion) (emphasis added). The extreme remedy sought by Defendant follows Justice Gorsuch's dissent—supported by just one other Justice—over the majority opinion and "disrespect[s] the democratic process[.]" *Id.*

Lastly, even if the footnote was obiter dicta—it is not—it is still highly persuasive and was simply ignored by the courts in *Creasy* and *Lidenbaum*. As stated by the Eleventh Circuit, "there is dicta and then there is dicta, **and then there is Supreme Court dicta**." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (emphasis added); see also *Murdaugh v. Ryan*, 2010 U.S. Dist. LEXIS

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

100208 (D. AZ 2010) (Supreme Court Authority is binding). "We have previously recognized that 'dicta from the Supreme Court is not something to be lightly cast aside.' […] Other 'inferior courts' have expressed similar sentiments." *Schwab* at 1325-26 (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997) and citing cases).[6]

**E. Severance Principles Independently Lead To The Same Result As Justice <u>Kavanaugh's Footnote 12</u>.**

Even assuming, *arguendo*, that footnote 12 is dicta and that only three Justices agreed with it (neither is true), the Supreme Court's severability precedent independently leads to the same result as that announced by Justice Kavanaugh in *AAPC*. In fact**,** numerous courts' pre-*AAPC* application of severance to the exact issue in *AAPC* prove that this is true.

As the Supreme Court has held for over a century:

---

[6] *See also F.E.B. Corp. v. United States*, 818 F.3d 681, 690 n.10 (11th Cir. 2016) ("Although *California II's* discussion of the exception is dicta, 'there is dicta . . . and then there is Supreme Court dicta.'") (quoting *Shcwab*); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement.") (*citing Faucher v. Federal Election Comm'n*, 928 F.2d 468, 470 (1st Cir.) (court of appeals cannot assume the Supreme Court "proclaims the law lightly" when it authors considered dictum)); *Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 120 n.8 (7th Cir. 1989) (court of appeals "should respect considered Supreme Court dicta"); *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir. 1983) (court of appeals not at liberty to "disregard…guidelines" established by Supreme Court, albeit through dicta), cert. denied, 465 U.S. 1036 (1984); *United States v. Bell,* 524 F.2d 202, 206 (2d Cir. 1975) (considered dictum "must be given considerable weight and can not be ignored in the resolution of [a] close question")); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,* 438 F.3d 298, 311 (3d Cir. 2006) ("[W]e pay due homage to the Supreme Court's well-considered dicta as pharoi that guide our rulings.").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

> Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact.

*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-329 (2006) (internal citations omitted); *see also AAPC* at 329 ("[T]he 'normal rule' is that partial, rather than facial, invalidation is the required course, such that a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." (internal quotations omitted)); *Frost*, 515 U.S. at 526-27 ("Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent."); *Dorchy v. State of Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety."); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without rendering the whole act void.").

The reason underlying this canon of severability is multifaceted, but one reason for it is that severance is retroactive, as it is an interpretation of law, not an act of Congress. In *Creasy* and *Lindenbaum*, the courts claimed that their analysis was consistent with *AAPC* because the Supreme Court's severability determination only applies prospectively. This misstates the doctrine of severability, which salvages both future applications of the law, and past applications as well. As the Supreme Court has observed, "[w]hen [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such

events predate or postdate [the Court's] announcement of the rule." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). Stated otherwise, severed, unconstitutional amendments—like the 2015 amendment creating the government-debt exception—are nullities when enacted and cannot invalidate the original, constitutional law. The Court's severability holding in *AAPC* is an interpretation of federal law and therefore must be applied retroactively. Severability is "essentially [a] question[] of statutory construction, determined according to either the will of the legislature or its manifested meaning." 2 Sutherland Statutory Construction § 44:3 (7th ed.)[7] Therefore, as an act of statutory construction, the decision to sever the government-debt exception and preserve the rest of the robocall ban must apply retroactively to pending cases. *See Harper*, 509 U.S. at 97; *see also Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994) (in construing a statute, courts are "explaining [their] understanding of what the statute has meant continuously since the date when it became law").[8]

---

[7] see also *Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550, 1555 (D.C. Cir. 1985), *aff'd sub nom. Alaska Airlines, Inc. v. Brock,* 480 U.S. 678 (1987) (recognizing severability "reduces to a matter of statutory interpretation"); Robert L. Stern, Separability and Separability Clauses in the Supreme Court, 51 Harv. L. Rev. 76, 115 (1937) ("The decisions make it plain that whether or not a particular statute may be severed is a question of statutory construction. In determining such matters, the courts search for the intention of the legislature.").

[8] In *Lindenbaum*, the court tried to sidestep the *Harper* rule by relying on two inapplicable decisions - *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). Reliance on these decisions is misplaced. In neither Arthrex nor Seila Law did the court conclude that a different part of the statute was invalid while the unconstitutional removal provisions were in effect. Rather, the courts held that the decisions made directly by the unconstitutionally irremovable director and the unconstitutionally irremovable administrative patent judges were invalid and needed to be re-done or ratified. In fact, the Supreme Court in *Seila Law* expressly noted that related provisions that formed CFPB's structure and decision-making process were not retroactively unconstitutional. See *Seila Law*,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

The recent decision of the U.S. Court of Appeals for the Fourth Circuit in *United States v. Miselis*, which is far more persuasive authority than *Creasy* and *Lidenbaum*, confirms that Defendant may properly be held liable for violating the TCPA's surviving, post-severance robocall provisions prior to the exemption's severance. The court in *Miselis* severed and thus invalidated certain provisions of the Anti-Riot Act that it held were unconstitutionally overbroad (pertaining to speech that encouraged, promoted, or urged others to riot). *Miselis,* 972 F.3d at 543 ("noting that the offending language could be "easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in [*AAPC*]"). Several defendants who had been convicted of violating the Anti-Riot Act's surviving provisions challenged their convictions on the grounds that, *inter alia*, the conduct giving rise to their convictions was committed prior to the severance of the overbroad provisions and thus at a time when the Act was facially overbroad under the First Amendment. The Fourth Circuit had little difficulty rejecting the argument, explaining in pertinent part, "[H]ere … a few of the Anti-Riot Act's [provisions] happen to be overbroad and, thus, invalid … **[B]ecause the record, as we explain, establishes conclusively that the defendants' substantive offense conduct falls under the statute's surviving [provisions], their convictions must stand.** *Miselis*, 972 F.3d at 547 (emphasis added). This Court should reach the same conclusion as *Miselis*. Defendant initiated marketing calls that violated the TCPA—conduct which had "manifestly nothing to do with" the collection of government debt—in violation of the

---

140 S. Ct. at 2211.   In other words, both decisions concern the validity of decisions made by officers acting without proper constitutional authority, not the question of severability and retroactivity.   The foundation of the decision is based on an irrelevant red herring.

TCPA's robocall restrictions, which were left "wholly unscathed by [*AAPC*'s] partial invalidation of the statute." *See id.*

The Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) is also instructive. In *Sebelius*, the Supreme Court cured a provision of the Affordable Care Act that was unconstitutional provision by severing it from the statute, rather than striking down the entire Affordable Care Act.[9] *Sebelius*, 567 U.S. at 585-588 (emphasis and internal quotations removed). ("The remedy for that constitutional violation is to preclude the Federal Government from imposing such a sanction. That remedy does not require striking down other portions of the Affordable Care Act."). In so ruling, the Supreme Court explicitly stated that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program." *Id.* at 586.

In *AAPC*, the Supreme Court invalidated a narrow exception to the automated dialer ban for government debt collectors. *AAPC*, 140 S. Ct. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law."). The Supreme Court "cure[d] that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute." *Id.*; *see also id.* at 2355 ("The government-debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems."). As in *Sebelius*, the Supreme Court followed and did not hold that the

---

[9] Like the TCPA, the Affordable Care Act has a severability clause. *Sebelius*, 567 U.S. at 586 ("The chapter of the United States Code that contains § 1396c includes a severability clause confirming that we need go no further."); *AAPC*, 140 S. Ct. at 2352 (noting the severability clause in the Communications Act of 1934, 47 U.S.C. § 608, "covers § 227 of Title 47, the provision with the robocall restriction and the government-debt exception.").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

narrow exception rendered the entire autodialer ban unconstitutional. *Id.* ("In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.").

Likewise, *Seila Law LLC v. Consumer Financial Protection Bureau* ("*Seila Law*"), 140 S. Ct. 2183 (2020), despite being cited by *Creasy* and *Lidenbaum*, is supportive of Plaintiff's position. There, the Supreme Court held that "the [Consumer Financial Protection Bureau's] leadership by a single individual removable only for inefficiency, neglect, or malfeasance [*i.e.*, for cause] violates the separation of powers." *Seila Law*, 140 S. Ct. at 2197. However, the Supreme Court held the proper remedy was to sever the "for cause" provision. *Id.* at 2192 ("We go on to hold that the CFPB Director's removal protection is severable from the other statutory provisions bearing on the CFPB's authority."). In doing so, the Supreme Court made clear that they were not dismantling the Consumer Financial Protection Bureau ("CFPB"), or holding that the Dodd-Frank Act—which created the CFPB and contained the "for cause" provision—was retroactively unconstitutional while the "for cause" provision was in place. *Id.* at 2209 ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President.") (emphasis in original).

In *Lidenbaum*, the court incorrectly concluded that the Supreme Court in *Seila Law* rendered all prior agency decisions unconstitutional. *See Lidenbaum*, 2020 U.S. Dist. LEXIS 201572 at *15. The CFPB was required to re-ratify its prior decisions because *all* of its prior decisions had been made by an unconstitutionally irremovable director. *AAPC*, by contrast, is akin to if all of the CFPB's decisions were made by a constitutionally removable director, except for

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

a small few that were made by an unconstitutionally irremovable director. The decisions made by the latter would need to be re-ratified, but that would not disrupt the decisions made by the former. Nor would the unconstitutionally irremovable director render the entire CFPB unconstitutional.  Thus, when the Supreme Court severs a portion of a law and leaves the rest in place, it only declares the severed portion unconstitutional. It does *not* hold that the remainder of the law was unconstitutional while the severed portion was in place. When the Supreme Court has undone a prior act or conviction, it is because the *entire* law, and not a mere portion, was unconstitutional. When the Supreme Court struck down the narrow government debt collector exception in *AAPC*, it did not hold that the autodialer ban had been unconstitutional while the exception was in place. To ensure this decision was not interpreted otherwise, the Supreme Court explicitly clarified its "decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."  *AAPC*, 140 S. Ct. at 2355 n.12.

Additionally, examining how courts treated this exact issue prior to the issuance of *AAPC* shows that footnote 12's holding is independently correct.  For example, in *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, defendant argued that the TCPA was unconstitutional for the same reasons as those argued by the *AAPC* plaintiffs.  No. 19-20073-CIV, 2019 U.S. Dist. LEXIS 57136, (S.D. Fla. Apr. 3, 2019).  In allowing the suit to go forward, the court stated, "if the amended TCPA were deemed unconstitutional, a finding of severability would cure the constitutional defect and preclude invalidation of the entire statute. **Because Plaintiff's cause of action does not implicate the 2015 amendments, the claim survives whether the amendments are stricken or not**." *Id.* at *13 (emphasis added).  Courts throughout the country applied severance of the government-debt exemption in the same way. *See Sliwa,* No. 2018 U.S. Dist. LEXIS 52509, at *15

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  ("in light of the severability of the Government-Debt Exception — a finding that
2  the anti-robocall provision is unconstitutional would have no effect on Bright
3  House's exposure to liability under the TCPA.").

4       Finally, most courts have rejected the *Creasy* and *Lindenbaum* courts'
5  reading of AAPC.  *See Lacy*, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13,
6  2020) ("But while the Supreme Court invalidated the debt-collection exception, it
7  severed the provision rather than striking down the TCPA's entire robocall
8  restriction."); *Burton*, 2020 WL 4504303, at *1 (D. Neb. Aug. 5, 2020) ("The
9  Supreme Court held last month in *Barr* that one of the exceptions to this general
10 prohibition, for calls made solely to collect a government debt, violated the First
11 Amendment, but that it was severable from the TCPA as a whole—so, the
12 provision on which the plaintiff's claim relies survived."); *Salerno v. Credit One
13 Bank, N.A.*, No. 15-CV-516 (JLS), 2020 WL 4339219, at *3 (W.D.N.Y. July 28,
14 2020) ("The Court need not address this request for a stay because the Supreme
15 Court issued its decision on July 6, 2020 and did not invalidate the TCPA as a
16 whole. Thus, the request for a stay is denied as moot."); *United States v. Miselis*,
17 No. 19-4550, 2020 WL 5015072, at *16 (4th Cir. Aug. 24, 2020) ("More recently,
18 in [*AAPC*], a seven-member majority of the Court (including Justices Breyer,
19 Ginsburg, Kagan, and Sotomayor, who concurred in the judgment with respect to
20 severability) agreed that the government-debt exception to the Telephone
21 Consumer Protection Act's robocall restriction—which the Court found also
22 constituted an invalid time, place, and manner regulation, *see* 140 S. Ct. at 2346—
23 could be excised from the remainder of the statute, even though it consisted of a
24 sentence fragment appended to a single subparagraph."); *Crossley v. Cal.*, No. 20-
25 CV-0284-GPC-JLB, 2020 WL 4747723, at *8 (S.D. Cal. Aug. 17, 2020) ("The
26 [*AAPC*] plaintiffs challenged the TCPA carve out under the First Amendment and
27 argued that it could not be severed from the robocalling ban, thereby rendering the
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  entire ban unconstitutional. The Supreme Court found the carve out provision

2  violated the First Amendment since it impermissibly favored debt-collection

3  speech over other speech and severed it from the remainder of the TCPA.").

4      Of particular interest is the recent case of *Shen v. Tricolor California Auto*

5  *Group, LLC*, No. 20-7419 PA (AGRx) 2020 WL 7705888 (C.D. Cal. Dec. 17,

6  2020). Tricolor, who was being sued for TCPA violations, filed an identical

7  motion to the motion in the instant motion filed by Royal Seas. Judge Anderson

8  observed, just as Plaintiffs describe above, that the cases relied upon by defendant

9  all ignore Justice Kavanaugh's explicit statement in *AAPC* that "the correct result

10 in this case is to sever the 2015 government-debt exception and leave in place the

11 longstanding robocall restriction." *Id*. at *2, citing *AAPC, 140 S. Ct. at 2355*. The

12 *Shen* court declined to ignore a clear and unambiguous directive of the Supreme

13 Court that was embedded within the decision, stating "our decision today does not

14 negate the liability of parties who made robocalls covered by the robocall

15 restriction." *Id*. citing *AAPC,* at n.12. The court was persuaded by the language

16 of the plurality decision, especially in light of the fact that several of the Justices

17 wouldn't have even ruled the TCPA unconstitutional notwithstanding the 2015

18 Bipartisan Budget Act, which indicated that there would be a clear majority of

19 Justices who would disagree with the position of Tricolor (and by extension,

20 Royal Seas). The court went on to observe the existence of the *Duguid v*

21 *Facebook* ruling of the Ninth Circuit (which remains binding law), and which

22 invalidated the government debt exemption and remanded the case for further

23 proceedings.[10]

24  _____

25 [10] The same occurred in *Gallion*, 772 Fed.Appx. 604 (9th Cir. July 8, 2019), a case

26 heard and decided on the same day as *Duguid*. In fact, prior to *AAPC* those

27 District courts across the country which chose to sever the 2015 Amendment

   routinely denied motions to dismiss and permitted the cases to proceed. See *Smith*

28 **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND VACATE ORDERS GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Ultimately, Judge Anderson observed that the analysis of Tricolor (and Royal Seas) was closer to the minority opinions of Thomas and Gorsuch, as well as the fact that a majority of reviewing courts have sides in favor of the position of Shen (and Plaintiffs here).  *Id*. at *3, [11] citing *APPC* at 2355 ("[W]e apply traditional severability principles. And as we have explained, severing the 2015 government debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.").  After all, the tail does not wag the dog.

## III.    CONCLUSION

It cannot be overemphasized: "Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351.  Congressional Amendments are not Trojan Horses, and the tail does not wag the dog.  That is precisely what Defendant seeks to accomplish here and this

---

*v. Truman Rd. Dev.*, LLC, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 269 (D. Del. 2019); *Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096, 1122 (W.D. Mo. 2019); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1060 (W.D. Mo. 2019); *Geraci v. Red Robin Int'l, Inc.,* No. 19-CV-01826-RM-KLM, 2020 WL 2309559, at *9 (D. Colo. Feb. 28, 2020); *Wijesinha*, 2019 WL 3409487, at *6 (S.D. Fla. Apr. 3, 2019); *Katz v. Liberty Power Corp.*, No. 18-cv-10506-ADB, 2019 WL 4645524, at *8 (D. Mass. Sept. 24, 2019); *Parker v. Portfolio Recovery Assocs., LLC*, No. 18-02103, 2019 WL 4149436, at *3 (C.D. Cal. July 11, 2019); *Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019); *Silwa*, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018).

[11] Citing *Abramson v. Federal Ins. Co.*, CV 8:19-2523 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, CV 8:20-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Burton*, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Court should not allow this to occur.  Plaintiffs respectfully request an order denying Defendant's Motion in its entirety.

Dated: January 13, 2021                                    Respectfully submitted,

                                                           KAZEROUNI LAW GROUP, APC

                                              By:   ___/s/ Matthew M. Loker___
                                                    MATTHEW M. LOKER, ESQ.
                                                    ATTORNEY FOR PLAINTIFFS

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626