**GREENSPOON MARDER LLP**
Richard W. Epstein, Esq. (Admitted *Pro Hac Vice*)
richard.epstein@gmlaw.com
Jeffrey A. Backman, Esq. (Admitted *Pro Hac Vice*)
jeffrey.backman@gmlaw.com
200 E. Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Tel: 954.527.2427
Fax: 954.333.4027

Attorneys for Defendant Royal Seas Cruises, Inc.
[additional Defendant's counsel on signatory line]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John McCurley, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>Royal Seas Cruises, Inc.,<br><br>    Defendant.<br>------------------------------------------------<br>Dan DeForest, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>Royal Seas Cruises, Inc.,<br><br>    Defendant. | Case No.: 3:17-cv-00986-BAS-AGS<br><br>**REPLY IN SUPPORT OF DEFENDANT ROYAL SEAS CRUISES, INC.'S MOTION TO DISMISS AND VACATE ORDER GRANTING CLASS CERTIFICATION FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:   **January 27, 2021**<br>Judge: **Hon. Cynthia A. Bashant**<br>Ctrm:  **4B**<br><br>**NO ORAL ARGUMENT**<br>**UNLESS REQUESTED BY COURT** |

Defendant Royal Seas Cruises, Inc.'s ("Royal") Motion to Dismiss is based on the core principle that an unconstitutional law cannot be enforced and the federal courts lack subject-matter jurisdiction to do so. As explained in Royal's Motion, the Supreme Court's recent holding that the Telephone Consumer Protection Act's "robocall restriction with the government-debt exception" – *i.e.*, the version of 47 U.S.C. § 227(b)(1)(A)(iii) in effect during the telephone calls at issue in this case – "is content-based" and fails strict scrutiny means that restriction is null and void as facially unconstitutional content-discrimination in violation of the First Amendment. *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2347 (2020) ("*AAPC*"). When Congress enacted *that* version of § 227(b)(1)(A)(iii), Congress facially and unconstitutionally discriminated against the vast majority of persons subject to the TCPA based on the content of their speech – telephone calls made to collect government debt were exempted from liability but not those about private debt, cruise ship vacations, political campaigns, or *literally* anything else. That content discrimination rendered the "robocall restriction with the government-debt exception" null, void, and unenforceable, and precludes subject-matter jurisdiction over claims based on the invalidated statute.

It is only the Supreme Court's severance of the government-debt exception from the "robocall restriction" that the restriction in that rewritten – and constitutional – form may continue to be applied at all, but only ***prospectively***. As now ***three*** district courts have held,[1] settled principles of law provide that that the Supreme Court's ruling as to the version of § 227(b)(1)(A)(iii) in effect starting November 2, 2015 means that no person can be subject to liability under that law for prior speech during

---

[1] The decisions in *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), and *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), were approvingly cited in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536, *3 (M.D. Fla. Dec. 11, 2020), wherein the district court agreed "federal courts lack subject matter jurisdiction over alleged violations from enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC*."

that period because that law was facially unconstitutional.

Rather than acknowledge that reality and address the relevant issues and legal principles, Plaintiffs engage in over-the-top rhetoric and construct a false narrative that a majority of the Supreme Court agreed with footnote 12 and thus held that liability can be imposed *for speech* **during the period of facial unconstitutionality** on the same discriminatory basis that led to the law's invalidation (with some speakers exempted). Royal is not seeking to "take down" the TCPA, nor is it arguing that President Obama and Congress in 2015 "wheeled out" the amendment to the TCPA "as a [T]rojan horse . . . to render the TCPA unconstitutional." Opp'n at 4. But Congress facially discriminated based upon the content of speech. And such a law is unconstitutional, cannot be enforced, and the courts lack subject-matter jurisdiction to hear claims over speech subject to that law.

## ARGUMENT

### I.    PLAINTIFFS MISCHARACTERIZE *AAPC*

#### A.    The Supreme Court Declared § 227(b)(1)(A)(iii) Unconstitutional

Plaintiffs first contend "the Supreme Court did not hold that the TCPA's entire autodialer provision was unconstitutional; it held that the government-debt exemption was unconstitutional." *Id.* at 9. But the Supreme Court was not considering the government-debt exemption in a vacuum. As the plurality opinion made clear, "[t]he initial First Amendment question is whether ***the robocall restriction, with the government-debt exception***, is content-based. The answer is yes." *AAPC*, 140 S. Ct. at 2346 (emphasis added). The robocall restriction with the government-debt exception is, of course, the version of § 227(b)(1)(A)(iii) in effect from November 2, 2015 until July 6, 2020. The plurality opinion also explains that "***a law*** is content-based if 'a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys,'" and proceeds to observe that "[u]nder ***§ 227(b)(1)(A)(iii)***, the legality of a robocall turns on whether it is 'made solely to collect a debt owed to or guaranteed by the United States.' . . . That is about as

content-based as it gets. Because *the law* favors speech made for collecting government debt over political and other speech, *the law* is a content-based restriction on speech." *Id.* (emphases added) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). The "law" was § 227(b)(1)(A)(iii). Thus, the plurality opinion concluded in its First Amendment section, "the robocall restriction with the government-debt exception is content-based," and it fails strict scrutiny. *Id.* at 2347.[2]

Plaintiffs' argument to the contrary is based upon out of context language taken solely from the plurality opinion's *severability analysis*. Again, the Supreme Court determined in its First Amendment analysis that "***the robocall restriction*** with the government-debt exception is content-based," and that it (the restriction) fails strict scrutiny. *Id.* at 2347 (emphasis added). That finding rendered the entirety of § 227(b)(1)(A)(iii) void as a violation of the First Amendment given the impact of the added government-debt exception.[3] The subsequent language in *AAPC* about not invalidating the entirety of the "robocall restriction" as unconstitutional was solely in deciding whether the restriction could be saved from unconstitutionality *in toto*. Otherwise, there would have been no need to sever to save the restriction.[4]

### B. Footnote 12 Is Not a Holding

Plaintiffs are equally baseless in contending that *seven* justices "explicitly

---

[2] Justice Gorsuch's opinion, which provided the necessary fifth vote on this question to form a holding, likewise makes clear that the "autodialer provision" was before the Supreme Court. *See id.* at 2363-64 ("The only provision before us today . . . concerns robocalls to cell phones, mobile devices, or 'any service for which the called party is charged for the call.' 47 U.S.C. § 227(b)(1)(A)(iii). . . . In my view, the TCPA's rule against cellphone robocalls is a content-based restriction that fails strict scrutiny.").

[3] *See Creasy*, 2020 WL 5761117 at *5 ("[W]hile the Plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis). *See also Hussain*, 2020 WL 7346536 at *3 (similar); *Lindenbaum*, 2020 WL 6361915 at *7 (similar).

[4] Plaintiff's argument that the Supreme Court ruled only that the government-debt exemption was unconstitutional also runs counter to the fact that the First Amendment bars laws "abridging the freedom of speech," (U.S. Const., Amend. I), not a portion of a law permitting speech (such as the government-debt exemption).

3

agreed with . . . Justice Kavanaugh's holding in footnote 12 on how the post-severance TCPA would apply to previous conduct." Opp'n at 10. Only Chief Justice Roberts and Justice Alito joined in the portion of the plurality opinion in which footnote 12 appears. With the exception of Justices Gorsuch and Thomas, *no other justice expressed any view, and certainly not agreement, as to footnote 12*. The opinions of Justices Sotomayor and Breyer stated no more than that they agreed the government-debt exception was severable.[5] Those are hardly agreements that an unconstitutional restriction on speech can still be enforced, on a discriminatory basis, as to prior speech that took place when the facially unconstitutional law was in effect. When there is a "fragmented" Supreme Court ruling such as *AAPC*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation omitted). As neither Justices Sotomayor nor Breyer even discussed the position briefly outlined in footnote 12, one can hardly conclude that position constitutes the narrowest ground upon which *five* Justices agreed.[6]

Plaintiffs' other arguments on this front are equally spurious. The footnote is not "instrumental to the holding of the case because it explains the liability, or lack of liability, for thousands of potential defendants and millions, if not billions, of calls that fall under the TCPA . . . ." Opp'n at 13. "Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations/modifications omitted). As

---

[5] *See AAPC*, 140 S. Ct. at 2357 (Sotomayor, J., concurring) ("I agree that the offending provision is severable."); *Id.* at 2363 (Breyer, J., concurring) ("I agree with Justice KAVANAUGH's conclusion that the provision is severable.").

[6] Plaintiffs engage in intellectual gymnastics to explain why they contend four other justices agreed with footnote 12 when they did not "officially join" in that part of the plurality opinion. *See* Opp'n at 11-12. These justices could have joined in only Part III (the severability analysis) of the plurality opinion, just as Justice Thomas departed from it. The only fair way to interpret their decision not to do so or comment in any way is that they did not express a view on that issue.

4

to the *AAPC* plaintiffs, footnote 12 was not "necessary to resolve the appeal because had the Court's decision 'negate[d] the liability of parties who made robocalls covered by the robocall restriction,' among them the plaintiff-respondent in *AAPC*," that would have resulted in a dismissal for lack of subject-matter jurisdiction. Opp'n at 13-14. There was no claim for liability in *AAPC*. There is nothing in the case records to suggest any potentially violative calls were even made; rather, the plaintiffs were "political and nonprofit organizations that *want* to make political robocalls to cell phones." *AAPC*, 140 S. Ct. at 2343 (emphasis added). Nor did Justice Gorsuch describe footnote 12 as a holding. In fact, he referred to it as a suggestion. *See id.* at 2366. Plaintiffs rely upon his statement about "a holding that shields *only* government-debt collection callers from past liability," (*id.*), but that was obviously stated in the future (unreal) conditional or hypothetical tense.[7]

## II.  SEVERABILITY IS NOT RETROACTIVE

Plaintiffs ultimately address Royal's Motion on the view "that footnote 12 is dicta and that only three Justices agreed with it," (Opp'n at 16), but disregard the constitutional jurisprudence dating back over two hundred years that is the basis of Royal's Motion and the *Creasy*, *Lindenbaum*, and *Hussain* rulings, as well as the fact that severance is prospective only, and does not alter or eliminate the fact that the speech at issue in this case allegedly occurred when § 227(b)(1)(A)(iii) was facially unconstitutional, meaning the Court lacks jurisdiction to enforce that law.[8]

Rather than address these bedrock legal principle, Plaintiffs instead dwell on severability. *See* Opp'n at 16-26. But that misses the point. Royal does not dispute that the Supreme Court severed the government-debt exemption to save the

---

[7] Plaintiffs even invoke avoiding "disrespect[ing] the democratic process" as a reason to find footnote 12 represents a holding, (Opp'n at 15), but that does not make a suggestion a holding. Nor, in any event, was Justice Kavanaugh addressing Justice Gorsuch's criticism about liability for prior speech, and instead he expressed concerns about eliminating the TCPA's robocaller restriction *on a going forward basis*. *AAPC*, 140 S. Ct. at 2356. Again, Royal's Motion has nothing to do with that.

[8] *See*, *e.g.*, *Hussain*, 2020 WL 7346536 at *3; *Lindenbaum*, 2020 WL 6361915 at *7; *Creasy*, 2020 WL 5761117 at *3.

robocaller restriction from invalidation and it can be enforced, in severed form, *prospectively*. But severance does not mean the unconstitutional law never existed, that the severed version can now be enforced retroactively as if the law had never been enacted in unconstitutional form, or that the victims of content discrimination can now be subjected to liability, still in discriminatory fashion, for speech that had been facially and unconstitutionally discriminated against (with government debt collectors remaining exempted). To the contrary, "[i]n a facial challenge . . ., the claimed constitutional violation inheres in the terms of the statute, not its application. . . . [A] successful facial attack means the statute is wholly invalid and cannot be applied *to anyone*." *Ezell v. City of Chicago*, 651 F.3d 684, 698–99 (7th Cir. 2011). *See also*, *e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 74 (1999) (Scalia, J., dissenting) ("When a facial challenge is successful, the law in question is declared to be unenforceable in *all* its applications . . . ."). Thus, if the party asserting the facial challenge is "right, then the [law] was unconstitutional when enacted and violates their [constitutional] rights every day it remains on the books." *Ezell*, 651 F.3d at 698. The same is true here, and thus the iteration of § 227(b)(1)(A)(iii) at issue were unconstitutional when enacted, violated the First Amendment each day they were "on the books," and cannot be enforced.

Plaintiffs contend that "the doctrine of severability . . . salvages both future applications of the law, and past applications of the law," (Opp'n at 17), but offer no support. Plaintiffs erroneously rely upon the principle that a new legal rule of federal law "must be given full retroactive effect in all cases still open on direct review . . . ." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). But, as a recent, considered opinion observes, "that suggestion confuses the *remedy* the panel deemed appropriate in this case with the constitutional *fix* it deemed necessary to allow" the statute to continue in the "future." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 766 (Fed. Cir. 2020) (O'Malley, J., concurring). Thus,

[w]hile the principle of retroactive application requires that we afford

> the same remedy afforded the party before the court to all others still in the appellate pipeline, ***judicial severance is not a 'remedy'; it is a forward-looking judicial fix***. . . . [O]ur curative severance of the statute, does not 'remedy' the harm to Arthrex, whose patent rights were adjudicated under an unconstitutional scheme."

*Id.* at 766-67. The same is true with the harm to Royal from liability for alleged speech under a facially discriminatory and unconstitutional law.[9] And, indeed, the Supreme Court itself has spoken in terms of severance of a statutory provision applying only "prospectively" and "going forward." *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017).

Plaintiffs' suggestion that "the Supreme Court held that the government-debt exemption itself was unconstitutional and, consequently, simply a nullity that had no effect on section 227(b)(1)(A)(iii) of the TCPA," (Opp'n at 9), is a misguided conclusion that only the government-debt exemption was invalidated. Although the *AAPC* plurality opinion did quote from *Frost v. Corp. Commission of Oklahoma*, 278 U.S. 515, 526-27 (1929), that decision makes clear that such language was employed to confirm the severability of the statute, not to pretend an unconstitutional amendment to which the courts lack subject-matter jurisdiction to enforce had never been enacted. *See id.* Although *Frost* and other decisions, such as *Eberle v. People of State of Michigan*, 232 U.S. 700 (1914), were cited in the *AAPC* plurality, the plurality opinion "contained no discussion regarding *Eberle* [or *Frost*] and its effect on the retroactivity of severed statutes. Rather, it cited *Eberle* and other cases from early last century [such as *Frost*] to support the concept that severance of the government-debt exception does not affect the validity of the remainder of the statute." 2020 WL 6361915 at *7. There are two more indications the *AAPC* plurality opinion did not embrace Plaintiffs' "nullity" argument. First, the plurality

---

[9] *See Lindenbaum*, 2020 WL 6361915 at *6 ("[I]n our case, severance of the content-based restriction does not offer a 'remedy' to correct past harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong.").

7

opinion explains that

> when it "invalidates" a law as unconstitutional, the Court of course does not formally repeal the law from the U.S. Code or the Statutes at Large. . . . . The Court's authority on this front "amounts to little more than the negative power to disregard an unconstitutional enactment." *Massachusetts v. Mellon*, [262 U.S. 447, 488 (1923)].

*AAPC*, 140 S. Ct. at 2351 n.8. Courts disregard an unconstitutional law by finding they lack subject-matter jurisdiction to enforce it, not by pretending for any and all purposes that Congress never amended the U.S. Code in an unconstitutional manner.

Second, there is no way to square the view that the 2015 amendment to § 227(b)(1)(A)(iii) never was and never had any effect with footnote 12's suggestion that government debt collectors should not be liable for pre-severance speech because, "in essence, footnote 12 indicates the statute as amended [by Congress in 2015] should be enforced with respect to government-debt collector robocalls made during this period," that is, they continue to remain exempted from liability. *Lindenbaum*, 2020 WL 6361915 at *7 (quoting *AAPC*, 140 S. Ct. at 2355, n.12). But that could only have emanated from the legislation that the *AAPC* Court deemed to be unconstitutional, so it cannot be the nullity Plaintiffs propose. And if severance does not retroactively eliminate the *exemption* from liability, it certainly cannot be used to retroactively impose *liability* as if Congress never enacted a facially unconstitutional law that violated the First Amendment every day it was in force.

In support of their arguments, Plaintiffs unleash string citations to TCPA cases involving *AAPC*, but virtually ***none*** of them addressed the question of retroactive application of severance or the subject-matter jurisdiction arguments raised herein and in *Creasy, Lindenbaum*, and *Hussain*.[10] One exception is *Shen v. Tricolor California Auto Group, LLC*, No. CV 20-7419 PA (AGRX), 2020 WL 7705888

---

[10] Indeed, the judge who authored *Lindenbaum* issued a similar ruling, obviously before considering these particular issues. *See Rogers v. Interstate Nat'l Dealer Servs., Inc.*, No. 1:20 CV 00554, 2020 WL 4582689 (N.D. Ohio Aug. 10, 2020).

8

1 (C.D. Cal. Dec. 17, 2020), which Plaintiffs rely upon extensively. But the reasoning
2 in that case is not persuasive. First, although it acknowledged footnote 12 to be non-
3 binding, it deemed the position "persuasive," but without explaining why or
4 addressing the case law relied upon by Royal. *Id.* at \*4. Second, although it
5 acknowledged only three justices joined in footnote 12, the decision erroneously
6 attributes retroactive application to the actual holding of the severability of the
7 government-debt exception, again without any explanation. *Id.* Third, the court
8 inferred some ruling on this issue by the Ninth Circuit in *Duguid*, but as with the
9 authorities cited by Plaintiffs, there is no indication that a subject-matter jurisdiction
10 challenge on these grounds was ever raised, let alone decided, in that case.

11 Another decision Plaintiffs heavily rely upon – *United States v. Miselis*, 972
12 F.3d 518 (4th Cir. 2020) – in fact supports Royal. In *Miselis*, the Fourth Circuit held
13 that the Anti-Riot Act, 18 U.S.C. §§ 2101-02, was overbroad under the Free Speech
14 Clause of the First Amendment "in *some* of its applications," and proceeded to sever
15 from the law the offending provisions, (*id.* at 525, 541-44), but that is where the
16 similarities end. The Fourth Circuit found defendants' convictions remained intact
17 because they engaged in acts of physical violence, which "have manifestly nothing
18 to do with speech . . . or any other First Amendment activity." *Id.* at 547-48. Thus,
19 *Miselis* did not involve a case where "a speaker [would] be punished for engaging in
20 speech that was restricted in an unconstitutional fashion," (*Creasy*, 2020 WL
21 5761117 at \*3), an analysis that the Supreme Court instructed "[n]ecessarily . . . must
22 consider the facial constitutionality of the ordinance in effect" at the time of the
23 speech. *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972). Moreover, the
24 Fourth Circuit observed that a successful facial challenge like the one in *AAPC* **<u>would</u>**
25 **<u>have</u>** voided the defendants' convictions. *See Miselis*, 972 F.3d at 548 ("[A]nything
26 less than facial invalidation of the statute affords the defendants no relief from their
27 convictions."). Thus, *Miselis* in fact supports Royal's Motion.[11]

28

---

[11] So, too, does *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct.

9

## CONCLUSION

For the foregoing reasons, and based on the argument in the Motion, Royal respectfully requests entry of an Order Court enter an order dismissing all claims for lack of subject-matter jurisdiction and vacating the class certification orders.

DATED: January 20, 2021

Respectfully Submitted,

**GREENSPOON MARDER LLP**

*/s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN (Fla. Bar No. 662501)
Jeffrey.Backman@gmlaw.com
RICHARD W. EPSTEIN (Fla Bar No. 229091)
Richard.Epstein@gmlaw.com
200 E. Broward Blvd, Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954.527.2427
Fax: 954.333.4027
*Admitted Pro Hac Vice*

BRIAN R. CUMMINGS (Fla. Bar No. 25854)
Brian.Cummings@gmlaw.com
401 E. Jackson St., Suite 1825
Tampa, Florida 33602
Tel: 813.769.7020
Fax: 813.426.8582
*Admitted Pro Hac Vice*

---

2183 (2020). Again, Plaintiffs mistakenly consider a severance ruling to maintain part of a law going forward as somehow probative of whether the severed statute applies retroactively, and ignore the fact that the Supreme Court remanded the case to address whether the agency's subject act was validly ratified. *Seila Law*, 140 S. Ct. at 2208. As the *Lindenbaum* court observed, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified." 2020 WL 6361915 at *6 n.1. Plaintiffs attempt to distinguish *Seila Law* and *Anthrex* on the grounds that they do not involve severability and retroactivity, (Opp'n at 18 n.8), but that is plainly wrong.

| | |
|---|---|
| 1 | BLAKE L. OSBORN, ESQ. (CA SBN 271849) |
| 2 | Blake.Osborn@gmlaw.com |
|  | 1875 Century Park East, Suite 1900 |
| 3 | Los Angeles, CA 90067 |
| 4 | Telephone: 323.880.4522 |
|  | Facsimile: 954.771.9264 |
| 5 | |
|  | Attorneys for Defendant *Royal Seas Cruises, Inc*. |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was has been served electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record set forth on the Service List below who are registered to receive CM/ECF notification as reflected on the Service List on this 20th day of January, 2021.

*/s/ Jeffrey A. Backman*
Jeffrey A. Backman, Esq.

## SERVICE LIST

Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
Kevin Lemieux, Esq.
kevin@westcoastlitigation.com
**HYDE & SWIGART**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Abbas Kazerounian, Esq.
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Todd M. Friedman, Esq.
Adrian R. Bacon, Esq.
Tom Wheeler, Esq.
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
(877) 206-4741
tfriedman@toddflaw.com
abacon@toddflaw.com

twheeler@toddflaw.com

*Attorneys for Plaintiffs John McCurley & Dan DeForest*