

**FILED**
Apr 27 2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ AKR  DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 27 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOHN MCCURLEY and DAN DEFOREST, individually and on behalf of all others similarly situated,

    Plaintiffs - Appellants,

v.

ROYAL SEAS CRUISES, INC.,

    Defendant - Appellee.

No. 21-55099

D.C. No. 3:17-cv-00986-BAS-AGS
U.S. District Court for Southern California, San Diego

**MANDATE**

The judgment of this Court, entered April 05, 2022, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Nixon Antonio Callejas Morales
Deputy Clerk
Ninth Circuit Rule 27-7

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 5 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOHN MCCURLEY; DAN DEFOREST, individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> ROYAL SEAS CRUISES, INC., <br><br> Defendant-Appellee. | No.   21-55099 <br><br> D.C. No. 3:17-cv-00986-BAS-AGS <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted March 8, 2022
Pasadena, California

Before: WARDLAW and HURWITZ, Circuit Judges, and ROSENTHAL,[**] District Judge.

Royal Seas Cruises, Inc., hired Prospects DM, Inc., to generate leads and initiate telephone calls to prospective consumers for cruise packages. The issue for

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

decision is whether Royal Seas is liable under the Telephone Consumer Protection Act ("TCPA") for prerecorded voice calls made by Prospects to those, including plaintiffs John McCurley and Dan Deforest, who had not given prior express consent to be called. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041 (9th Cir. 2017) (citing 47 U.S.C. § 227(a)(5); *id.* § 227(b)(1)(A)(iii)) (explaining TCPA violations). The district court granted summary judgment to Royal Seas. We have jurisdiction over the plaintiffs' appeal under 28 U.S.C. § 1291. Reviewing de novo, *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1068 (9th Cir. 2021), we affirm in part and reverse in part.

    **1. *Waiver*.** Our "general rule" is that "an issue may not be raised for the first time on appeal." *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990). Royal Seas argues that the plaintiffs waived their argument that it is vicariously liable for Prospects's TCPA violations because the plaintiffs did not allege vicarious liability in their pleadings. Alternatively, Royal Seas argues that the plaintiffs waived any arguments about actual and apparent authority because they asserted only ratification as the basis for vicarious liability in their motion for summary judgment and in their response to Royal Seas's cross-motion.

    The plaintiffs did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated complaint. To avoid waiver by failing to plead an issue, plaintiffs may "make known during discovery their

2

intention to pursue recovery on the . . . theory omitted from their complaints." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Royal Seas had ample notice of, and opportunity to develop facts about, the actual and apparent authority and the ratification theories the plaintiffs asserted. Notice of these theories came from the plaintiffs' class certification motion filed in July 2018 and the district court's class certification order issued in March 2019, both long before discovery closed in February 2020. The plaintiffs also presented arguments on apparent authority and ratification in their motion for summary judgment. We hold, however, that the plaintiffs did waive an actual authority theory of vicarious liability by failing to assert it either in their pleadings or at summary judgment. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2. (9th Cir. 2009) (per curiam). None of the narrow exceptions to waiver applies. *See Carlson*, 900 F.2d at 1349.

**2. *Nondelegable Duty*.** The plaintiffs argue that Royal Seas had a nondelegable duty under the TCPA to ensure that Prospects had prior express consent for each call it made to solicit potential customers for Royal Seas.[1]

We disagree. The Federal Communications Commission ("FCC"), the agency responsible for implementing the TCPA, instructs that the relationship between a

---

[1] The plaintiffs did not present this argument at summary judgment; however, because it is a pure question of law, we may address it. *Carlson*, 900 F.2d at 1349; *see also In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[W]aiver is a discretionary, not jurisdictional, determination.").

3

seller and a telemarketer should be assessed under federal common law agency principles. *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (May 9, 2013). Our precedent defers to the FCC's interpretation that the TCPA requires vicarious liability, not strict liability. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019). The plaintiffs present no compelling reason why we should change that position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

**3. *Vicarious Liability*.** The plaintiffs also argue that Royal Seas is vicariously liable for Prospects's placements of prerecorded voice calls to individuals without their prior express consent. The plaintiffs rely on apparent authority and ratification.

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* § 4.01(1). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person

4

so consents." *Id.* § 4.01(2).[2] A principal assumes the risk of lack of knowledge and may be found willfully ignorant if "the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.* § 4.06 cmt. d.

The record does not support a finding that Prospects had apparent authority from Royal Seas to call nonconsenting individuals. When Prospects placed calls, it asked an individual who answered "qualifying questions" about products and services that ranged from home improvement to medical equipment to leisure packages, including cruises. Royal Seas approved the scripts used, but no script is in the record. There is no record evidence of whether, or when, between making the phone call and transferring the individual answering to a live person at Royal Seas, Prospects stated that it was calling on behalf of a third party or mentioned "Royal Seas." *Cf. Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940–41 (9th Cir. 2017). There is no basis to find that the person answering a Prospects call would reasonably believe that Prospects was acting on behalf of Royal Seas before the point of the transfer. We affirm the district court's grant of summary judgment in favor of Royal

---

[2] An act is ratifiable "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03. Although the scope of its agency is in dispute, Prospects is at least an agent of Royal Seas for the purpose of generating leads. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018) (because Click Media contracted with AC Referral to generate leads for prospective customers, AC Referral was an agent of Click Media for the purpose of the ratification analysis).

Seas as to apparent authority.

But that does not end the inquiry. Drawing reasonable inferences in the light most favorable to the plaintiffs, *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021), there is a material dispute of fact as to whether Royal Seas ratified Prospects's acts. Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation. Royal Seas knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA. Royal Seas also knew that it received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018. Royal Seas knew that TCPA compliance required each call to be to an individual who had previously "agreed" to be called by Royal Seas by clicking "next" after submitting personal contact information and seeing a consent box on websites such as www.diabeteshealth.info and www.yourautohealthlifeinsurance-.com. Royal Seas knew that the calls Prospects placed to individuals who had allegedly consented by checking forms on the website www.diabeteshealth.info generated 80,081 warm transfers to Royal Seas in 2017. The plaintiffs submitted expert testimony that this number of transfers, which was only a subset of the calls Prospects placed, from this lead-generation website during this period is implausible at best. The expert testimony also addressed several other websites responsible for

generating the 2.1 million transfers, such as www.123FreeTravel.com, and concluded that the volume of traffic to these sites, much less the number of leads from consenting individuals that could be reasonably harvested from them, was very low.

Royal Seas also knew that of the 560 customers whom Prospects warm-transferred and who made purchases from Royal Seas, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to Royal Seas, and 31 percent did not have a matching phone number and last name. The amount of mismatched data in the record cannot all be explained by data-entry errors or family members with different last names. The number for one of the named plaintiffs, John McCurley, for example, was associated with the name "Jose Fernandez." There is evidence that Royal Seas's employees knew of the discrepancies because when they spoke with the transferred customers, because they addressed the customers by the first name that Prospects provided.

These facts, in combination with the evidence of widespread TCPA violations in the cruise industry, would support a finding that Royal Seas knew facts that should have led it to investigate Prospects's work for TCPA violations. *See Henderson*, 918 F.3d at 1076. We reverse the district court's summary judgment in favor of Royal Seas as to ratification.

8

**AFFIRMED in part, REVERSED in part, and REMANDED.** Each party to bear its own costs.